**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **OCEAN SEMICONDUCTOR LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 6:20-cv-1214** |
| **v.** | § | |
| | § | |
| **SILICON LABORATORIES INC.** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT SILICON LABORATORIES INC.' S MOTION TO DISMISS**
<u>**FOR FAILURE TO STATE A CLAIM**</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

III.    LEGAL STANDARD.......................................................................................... 5

    **A.**   Dismissal Under Rule 12(b)(6) ................................................................5

    **B.**   35 U.S.C. 271(g) Requires the Manufacture of a Product, Not Information ...6

IV.     ARGUMENT ...................................................................................................... 7

    **A.**   Ocean's Contention of Infringement by All Silicon Labs Products Does Not Cross the Line Between Possible and Plausible Infringement ........................7

    **B.**   Ocean Has Not Put Silicon Labs on Notice as to Non-Accused Fabs and Unnamed Tools ......................................................................................9

        1.   Allegations as to non-accused fabs should be dismissed .................... 9

        2.   Allegations as to unnamed tools should be dismissed ...................... 10

    **C.**   Ocean's Allegations of Induced Infringement are Insufficient ....................12

        1.   Ocean does not allege Silicon Labs' knowledge of fab processes or equipment used ........................................................................... 12

        2.   Ocean's boilerplate and conclusory assertions are inadequate .......... 13

    **D.**   Boilerplate Allegations of Willful Infringement are Insufficient..................14

    **E.**   Asserted Patents Claiming Generation of Information Cannot Support Infringement Under 271(g).......................................................................16

        1.   '402 patent, Claim 1 .................................................................. 17

        2.   '538 patent, Claim 1 .................................................................. 18

        3.   '305 patent, Claim 1 and '248 patent, Claim 1 ................................ 19

        4.   Dismissal of related indirect infringement allegations....................... 19

    **F.**   System Claims Cannot Support a Cause of Action Under 271(g) .................20

V.      CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)................................13, 14

*American Fruit Growers, Inc. v. Brogdex Co.*,
283 U.S. 1 (1931)...........................................................................................................6, 17, 19

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018) ...........................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................2, 5, 7, 8, 9, 11, 12, 13, 15, 16

*Bayer AG v. Housey Pharm., Inc.*,
340 F.3d 1367 (Fed. Cir. 2003)..................................................................3, 6, 7, 17, 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................5, 7, 8, 10, 11, 12, 15, 16

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2014).................................................................................................12

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
No. 6:07-CV-559, 2009 U.S. Dist. LEXIS 1644 (E.D. Tex. Jan. 12, 2009)............................8

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006).................................................................................................12

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
82 F.3d 1568 (Fed. Cir. 1996)....................................................................................................6

*Estech Sys. v. Regions Fin. Corp.*,
No. 6:20-cv-00322-ADA, 2020 U.S. Dist. LEXIS 200484 (W.D. Tex. Oct. 28,
2020) .................................................................................................................................7, 11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)..................................................................................................................13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)..............................................................................................................16

*Inhale, Inc v. Gravitron, LLC*,
No. 1:18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) .....................14, 15, 16

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
134 S. Ct. 2111 (2014)..............................................................................................................19

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
   No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. Jul. 31, 2018) ..........................................16

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed. Cir. 2007)..........................................................................................11

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
   No. 1:18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) ...................................15

*Momenta Pharm., Inc. v. Teva Pharm. USA Inc.*,
   809 F.3d 610 (Fed. Cir. 2015)..................................................................................6, 7, 17

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019).............................14

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
   No. 5:19-CV-243-H, 2020 WL 5500238 (N.D. Tex. Sept. 11, 2020) ....................................11

*Valinge Innovations AB v. Halstead New England Corp.*,
   No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ......................................14

**Rules and Statutes**

35 U.S.C. § 271(b) ...................................................................................................12, 13, 14, 19

35 U.S.C. § 271(g) .................................................................................................................. *passim*

Federal Rule of Civil Procedure 12 ............................................................................1, 5, 7, 9, 20

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Silicon Laboratories Inc. ("Silicon Labs") moves to dismiss Plaintiff Ocean Semiconductor LLC's ("Ocean") claims for infringement in its Complaint for Patent Infringement ("Complaint").  Dkt. 1.

## I.    INTRODUCTION

Complete dismissal (and at a minimum significant streamlining) is appropriate now in this seven-patent case.  Ocean accuses essentially every Silicon Labs product of infringing each of seven patents, but the Complaint omits key factual allegations needed to plausibly allege such widespread infringement.  Additionally, for four of the asserted patents, Ocean's claims under 35 U.S.C. 271(g) do not fit the narrow requirements of the statute, which concerns importation of "a product which is made by a process patented in the United States."  Silicon Labs should not be made to defend against implausible and legally unsupportable allegations of infringement.

Ocean's Complaint identifies five tools allegedly used by TSMC—a Silicon Labs contract manufacturer—that purportedly practice the methods in Ocean's seven asserted patents.  From here, Ocean makes the factually unsupported leap to concluding that third party TSMC uses at least four of the five tools during the manufacture of all of Silicon Labs' "semiconductor products and devices," *i.e.*, arguably ***every single product*** sold by Silicon Labs.  Compl. at ¶¶ 11, 15, 17, 19.  Indeed, Ocean's Complaint never attempts to plausibly tie TSMC's purported use of the identified tools to the creation and importation of ***any*** actual Silicon Labs product, much less ***all*** of them.  Further, Ocean blanketly alleges that other, unnamed chip manufacturers do likewise, again without any plausible factual allegation connecting the tools to Silicon Labs' products.

Silicon Labs is not the fabricator of ***any*** of the Accused Products, and Ocean makes no such allegation.  Silicon Labs does not own the tools, run the tools, or perform the fabrication process of which Ocean complains.  Indeed, Ocean does not even allege that Silicon Labs had any knowledge of the tools third party TSMC uses to manufacture its products, much less the detailed

operation of such tools sitting overseas.  Rather than asserting its claims against the vendors of tools that allegedly practice the patented methods, Ocean jumps to conclusions two or more levels down the manufacturing and supply chain to accuse a product company (Silicon Labs) of infringement, without facts that plausibly support these inferential leaps.

The Supreme Court's established *Iqbal*/*Twombly* pleading standards obligate a patentee to plead a case that is ***plausible***, not merely ***possible***.  Ocean's Complaint—based on unsupported conclusions instead of plausible facts—falls short.  To survive, Ocean's Complaint must include plausible factual allegations indicating the Accused Products are manufactured with the identified tools, but that is not the case.  By simply assuming infringement of every Silicon Labs product imported into the United States, Ocean crosses the line from a well-pled complaint into unpermitted speculation.  The Federal Rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," such as Ocean.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).  For this reason, respectfully, Ocean's allegations of infringement should be dismissed in their entirety.

Independent of Ocean's failure to plausibly plead its case in its entirety, Ocean's charges of Section 271(g) infringement for at least four[1] of the Asserted Patents are not legally cognizable.  Section 271(g) is a narrow, special-purpose statute that only applies to process claims whose implementation results in the manufacture of a good.  A method claim whose implementation results in the mere generation of information cannot be enforced through a Section 271(g) charge of infringement, particularly where the resulting information is not even alleged to be imported into the United States.  This is the case here, as four asserted patents claim the generation of

---

[1] Mindful of the stage of the case and associated burdens, this motion focuses on the four most egregious patents, but Defendant reserves the right to contend the remaining patents also cannot apply to a claim under Section 271(g).

information with no impact on the physical manufacturing process, let alone the products ultimately accused of infringement.

Specifically, U.S. Patent No. 6,725,402 ('402 patent") concerns the receipt and processing of "operational state data of a processing tool." U.S. Patent No. 8,676,538 ('538 patent") concerns "fault detection." And, U.S. Patent Nos. 6,907,305 ('305 patent") and 6,968,248 ('248 patent") claim "scheduling an action" in response to "detecting an occurrence of a predetermined event." These claims generally cover detection or generation of information about a processing environment, not processes "used *directly* in the manufacture of the product," as the law requires. *See*, *e.g.*, *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1378 (Fed. Cir. 2003) ("[T]he process must be used directly in the manufacture of the product . . ."). For this independent reason, Ocean's infringement allegations for the '402, '538, '305, and '248 patents are insufficient and must be dismissed.

Various other deficiencies in Ocean's Complaint warrant partial dismissal in several respects, and they are detailed more fully below.

## II.   BACKGROUND

Ocean has asserted Silicon Labs' infringement under 35 U.S.C. 271(g) for each of seven patents, U.S. Patents Nos. 6,660,651, 6,907,305, 6,725,402, 6,968,248, 7,080,330, 6,836,691, and 8,676,538 (collectively, the "Asserted Patents").

Ocean's Complaint never alleges that Silicon Labs manufactures the Accused Products or performs any of the claimed methods. Instead, the Complaint notes that Silicon Labs "contracts with third-party semiconductor fabricators or foundries ('SILABS Foundry Partners') that own, operate, or control semiconductor fabrication plants ('fabs')." Complaint at ¶ 8. The only such fab identified in the Complaint is Taiwan Semiconductor Manufacturing Company Ltd. ("TSMC"). *Id.*

Ocean alleges that TSMC uses each of several tools in its fabs: ASML's TWINSCAN system hardware and software; camLine's LineWorks system; Applied Materials' E3 system; PDF Solutions' Exensio system; and ASML's YieldStar metrology and inspection system.  Complaint at ¶¶ 9-20, 73, 93, 113, 133, 153, 174, 194.  These are the only tools explicitly identified in the Complaint as allegedly meeting the limitations of the Asserted Patents' claims, and the only fab explicitly alleged to use these tools is TSMC.  There is not, however, any plausible, non-conclusory facts that tie the use of these tools to the accused products.

A mapping of Ocean's allegations regarding these tools is below:

| Patent | Tool whose use is alleged to practice the patented method(s) | Fab alleged to use tool | Silicon Labs' products alleged to infringe |
|--------|---------------------------------------------------------------|--------------------------|---------------------------------------------|
| 6,660,651 | ASML's TWINSCAN system hardware and software | TSMC | All "semiconductor products . . . and integrated circuits" |
| 6,907,305 | camLine's LineWorks system | TSMC | All "semiconductor products . . . and integrated circuits" |
| 6,725,402 | Applied Materials' E3 system or PDF Solutions' Exensio system | TSMC | All "semiconductor products . . . and integrated circuits" |
| 6,968,248 | camLine's LineWorks system | TSMC | All "semiconductor products . . . and integrated circuits" |
| 7,080,330 | ASML YieldStar metrology and inspection system | TSMC | All "semiconductor products . . . and integrated circuits" |
| 6,836,691 | Applied Materials' E3 system or PDF Solutions' Exensio system | TSMC | All "semiconductor products . . . and integrated circuits" |
| 8,676,538 | Applied Materials' E3 system or PDF Solutions' Exensio system | TSMC | All "semiconductor products . . . and integrated circuits" |

After arguing that various tools that TSMC could use allegedly meet the process claim limitations of the Asserted Patents, the Complaint jumps to the conclusion that four categories of Silicon Labs products infringe the Asserted Patents: "SILABS APC Products," "SILABS Scheduling Products," "SILABS TWINSCAN Products," and "SILABS YieldStar Products."  *Id.* at ¶¶ 11, 15, 17, 19, 73, 93, 113, 133, 153, 174, 194.  Despite enumerating these four separate categories of accused products, presumably to give the illusion of specificity, each category is

*identically and broadly defined* over two pages to include essentially every product sold by Silicon Labs:

> *semiconductor products* and devices, such as wireless products . . ., internet of things products . . ., infrastructure products . . ., broadcast products . . ., access products . . ., microcontrollers . . ., buffers . . ., oscillators . . ., clock generators . . ., jitter attenuators . . ., synchronous ethernet . . ., isolation products . . ., interface products (e.g., ethernet controllers, LC controllers, bridges), timing products (e.g., buffers, clock generators, oscillators, and network synchronizers), sensors (e.g., humidity, magnetic, optical, temperature, and biometric), audio & radio products (e.g., automotive tuners, and radios), power products (e.g., power management ICs, powered drivers, and PSE controllers), TV & video products (e.g., digital demodulators and TV tuners), modem & DAA products (e.g., voice modems), voice products (e.g., codec, proSLICs, and DAA), power over ethernet devices (e.g., power source equipment and powered device ICs)), and similar systems, products, devices, *and integrated circuits* . . .

*Id.* at ¶¶ 11, 15, 17, 19 (collectively "Accused Products") (emphases added; part numbers omitted for brevity). Nowhere does the Complaint allege any facts supporting its bare contention that any of these products is manufactured by TSMC using one or more of the enumerated tools.

## III. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6)

A court may dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Twombly*, 550 U.S. at 556.

**B.  35 U.S.C. 271(g) Requires the Manufacture of a Product, Not Information**

35 U.S.C. 271(g) creates a cause of action for infringement for the importation, sale, or use of a product manufactured according to a patented method, but ***only*** where (1) there is no infringement under Section 271(a); (2) the product produced by the claimed method is not substantially changed before importation; and (3) the product produced according to a claimed process is not a trivial component of something else. *See* 35 U.S.C. 271(g).

In enacting this statute, Congress intended "to close a perceived loophole" that prevented patentees from enforcing their process patents when a product was manufactured overseas and then imported into the United States. *Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1571 (Fed. Cir. 1996). "Congress was concerned solely with physical goods that had undergone manufacture." *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1373 (Fed. Cir. 2003). "Each and every reference [in legislative history] to the provision that became section 271(g) describes it as directed to manufacturing." *Id.* at 1374. For this reason, the Federal Circuit has held "that in order for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured' and that the production of information is not covered." *Id.* at 1377 (quoting 35 U.S.C. 271(g)).

The Federal Circuit has "equated the word 'made' in § 271(g) with 'manufacture.'" *Momenta Pharm., Inc. v. Teva Pharm. USA Inc.*, 809 F.3d 610, 616 (Fed. Cir. 2015) (citing *Bayer*, 340 F.3d at 1373). "[T]he Supreme Court [has] defined the verb form of 'manufacture' as '***the production of articles*** for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery.'" *Bayer*, 340 F.3d at fn.4 (quoting *American Fruit Growers, Inc. v. Brogdex Co.*, 283 U.S. 1, 11 (1931)) (emphasis in original).

Method claims that concern only the testing of a product or intermediate substance do not constitute the manufacture of that product and are not enforceable under Section 271(g). *See Momenta Pharm.*, 809 F.3d at 615 ("[I]it is more consonant with the language of the statute, as well as with this court's precedent, to limit § 271(g) to the actual 'ma[king]' of a product, rather than extend its reach to methods of testing a final product or intermediate substance to ensure that the intended product or substance has in fact been made." (alteration in original)); *id.* at 616 (""[M]a[king]' does not extend to testing to determine whether an already-synthesized drug substance possesses existing qualities or properties." (second alteration in original)).

Similarly, claims that concern the mere generation of information—such as "the identification and characterization of" a product—cannot support a cause of action for infringement under Section 271(g). *See Bayer*, 340 F.3d at 1370, 1377; *id* at 1368 ("[W]e conclude that infringement under 35 U.S.C. § 271(g) is limited to physical goods that were manufactured and does not include information generated by a patented process."). Such claims may be dismissed at the Rule 12(b) stage. *Id.* at 1378 (affirming dismissal at the Rule 12(b) stage where the asserted claim covered the generation of information, not the manufacture of a product).

## IV.   ARGUMENT

### A.   Ocean's Contention of Infringement by All Silicon Labs Products Does Not Cross the Line Between Possible and Plausible Infringement

The Supreme Court draws an important distinction between allegations that are ***plausible***, versus those that are merely ***possible***. *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for ***more than a sheer possibility*** that a defendant has acted unlawfully." (emphasis added)). To satisfy *Iqbal* and *Twombly* in the context of a Section 271(g) assertion, the plaintiff must plausibly demonstrate that the products whose importation, sale, or use are alleged to infringe were manufactured pursuant to the claimed process. *Cf. Estech*

*Sys. v. Regions Fin. Corp.*, No. 6:20-cv-00322-ADA, 2020 U.S. Dist. LEXIS 200484, at *6 (W.D. Tex. Oct. 28, 2020) (noting in the context of Section 271(a) "the pleading standards established by *Twombly* and *Iqbal* require a plausible inference that an accused device meets all of the limitations of the asserted claims."). This is where Ocean's Complaint fails, and dismissal is warranted.

Here, Ocean's Complaint indicates at best a conclusory ***possibility*** of infringement—namely that TSMC allegedly has access to certain tools, and TSMC manufactures products for Silicon Labs. But, the Complaint is devoid of plausible facts suggesting that TSMC actually uses the identified tools to manufacture the Accused Products. *See supra* at II (noting the complaint broadly accuses without limitation, *inter alia*, "semiconductor products and . . . integrated circuits").

Ocean simply concludes, without pleading plausible facts supporting that conclusion, that every Silicon Labs product is manufactured pursuant to the processes in the asserted patents:

> The ***'402 Accused Products*** are manufactured by a process including all of the limitations of at least claim 1 of the '402 patent. ***Each such product*** includes an integrated circuit ***fabricated or manufactured using, for example, the Applied Materials E3 system and/or PDF Solutions' Exensio system***.

Complaint at ¶ 93 (emphases added); *see also id.* at ¶¶ 73, 113, 133, 153, 174, 194 (similar factually unsupported conclusions that each Accused Product is manufactured by TSMC using an enumerated tool). But, conclusory allegations are insufficient to meet Ocean's pleading burden. *Iqbal*, 556 U.S. at 678 (noting "mere conclusory statements, do not suffice").

Ocean's Complaint does not include plausible facts that support the conclusion that ***a single one*** of the Accused Products is manufactured according to ***any*** asserted method, much less ***all*** Silicon Labs' products and ***all*** asserted methods.[2] Ocean has not identified Silicon Labs' product

---

[2] In the related context of preliminary infringement contentions, other courts have similarly held that "[a] party may not blindly accuse every product a defendant produces and expect to narrow its claims at its own convenience." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-CV-559,

documentation detailing characteristics one might anticipate finding in a product manufactured according to the claimed methods.  Nor has Ocean included any "teardown" or other analysis of a particular product to demonstrate it was conceivably manufactured using the tools identified in the Complaint.[3]  Indeed, Ocean has not even attempted to define the characteristics imparted into an end product by the asserted methods or enumerated tools (much less find those characteristics in any Accused Product).

In the end, the pleaded facts of tools that may be available to TSMC are at best "merely consistent" with Ocean's bare conclusion that all of Silicon Labs' products are manufactured using those tools, but that is not sufficient.  *Iqbal*, 556 U.S. at 678.  Respectfully, Ocean's broad infringement allegations should be dismissed as an unsupported and improper attempt to "unlock the doors of discovery . . . with nothing more than conclusions."  *Id.* at 678-679.

## B.     Ocean Has Not Put Silicon Labs on Notice as to Non-Accused Fabs and Unnamed Tools

In addition to warranting full dismissal for the reasons above, various other of Ocean's pleading deficiencies warrant partial dismissal.

### 1.     *Allegations as to non-accused fabs should be dismissed*

Underlying Ocean's infringement allegations is the contention that Silicon Labs works with "third-party semiconductor fabricators or foundries ('SILABS Foundry Partners') that own, operate, or control semiconductor fabrication plants ('fabs') . . . to produce the Accused Products."  But, the only such foundry identified in the Complaint is TSMC.  *See*, *e.g.*, Complaint

---

2009 U.S. Dist. LEXIS 1644, at \*15 (E.D. Tex. Jan. 12, 2009).  The same is true at the Rule 12 stage.

[3] To the extent Ocean contends that its asserted methods are not the type of processes that one would expect to have a discernable impact on the resulting product, that merely underscores Silicon Labs' below contention that several of the Asserted Patents are not appropriate vehicles for a Section 271(g) assertion.

at ¶¶ 8-17, 19.  Indeed, "TSMC" appears in the Complaint at least 47 times.  In contrast, no other fab is ever identified, despite the fact that Silicon Labs' other fabs are a matter of public record—even in the very presentation Ocean relies upon to allege a relationship between Silicon Labs and TSMC.  *See* Complaint at ¶ 8 (citing "Silicon Labs Quality and Operations Overview," at 21).

*Twombly* rejected a pleading standard that "left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery," but that is precisely what Ocean attempts through the Complaint's vague definition of "SILABS Foundry Partners."  550 U.S. at 561 (alteration in original).  Ocean's allegations encompassing non-accused fabs with unknown tools is an even bigger inferential leap than its insufficient allegations as to TSMC described above.  *Supra* at IV.A.  Such allegations amount to nothing more than a fishing expedition, seeking information that is in the possession of unidentified third party fabs.

Having failed to accuse any fab other than TSMC, Ocean's allegations as to unidentified fabs should be dismissed.  *See Twombly*, 550 U.S. at 561, 570.

### 2.      *Allegations as to unnamed tools should be dismissed*

Ocean's allegations as to unspecified tools similarly fails and should be dismissed.  Ocean alleges infringement for Silicon Labs' importation, sale, and use of products manufactured using ASML's TWINSCAN system; camLine's LineWorks system; Applied Materials' E3 system; PDF Solutions' Exensio system; and ASML's YieldStar metrology and inspection system.  Complaint at ¶¶ 9-20, 73, 93, 113, 133, 153, 174, 194.  But, Ocean does not stop there.  Ocean proceeds to further allege infringement premised upon the use of other, non-identified tools.

For example, Ocean alleges infringement of the '651 patent for the importation of "integrated circuits that are designed, developed, fabricated, and/or manufactured using the ASML TWINSCAN system ***and/or similar systems (e.g., with similar technical and functional***

*features)*." Complaint at ¶ 73 (emphasis added). No purported "similar system" is ever identified.

Indeed, Ocean's Complaint is replete with such instances of vaguely pled infringement:

- "*other similar* proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., *with similar technical and functional features*)" Complaint at ¶¶ 13, 133; *see also id.* at ¶¶ 15, 16 (similar);

- "*other* in-house or third-party advanced/automation process control system and platform hardware and/or software (e.g., *with similar technical and functional features*)" Complaint at ¶ 9;

- "and/or *similar* systems (e.g., *with similar technical and functional features*)" Complaint at ¶¶ 73, 83, 93, 96, 103, 153, 174, 177, 184, 194, 197, 204; and

- "or *similar* systems (e.g., *with similar technical and functional features*)" Complaint at ¶¶ 116, 123, 136, 143.

If Ocean is aware of any such "other" or "similar systems," it must identify them now so that Silicon Labs may mount a defense against these allegations. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (noting a patentee must "plead facts sufficient to place the alleged infringer on notice as to what he must defend." (citing *Twombly*, 550 U.S. at 570, n.10)); *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018) (notice pleading standard not met where patentee alleged infringement "by use of one or more of the machines at least at the Bristol Plant"). This is particularly true where, as here, Ocean alleges infringement based on a *third party's* use of tools in an overseas fab, as opposed any action by Silicon Labs that it may be able to reasonably investigate.

This Court has found that the *Twombly* and *Iqbal* line of cases "require[s] a patent infringement Plaintiff to identify an accused product by name in most cases such that the Defendant is on notice of what specific conduct is alleged to constitute infringement." *Estech*, 2020 U.S. Dist. LEXIS 200484, at *6 (citing *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2020 WL 5500238, at *3 (N.D. Tex. Sept. 11, 2020)). Where, as here, the claims of the Asserted Patents are allegedly embodied in the tools used to manufacture the Accused

Products, rather than the products themselves, *Iqbal* and *Twombly* require the identification of such tools "by name."  Because Ocean's general allegations regarding unspecified tools fail to place Silicon Labs on notice of what is alleged to infringe, Ocean's general allegations should be dismissed.  *See Twombly*, 550 U.S. at 561, 570.

### C.    Ocean's Allegations of Induced Infringement are Insufficient

Ocean alleges induced infringement under 35 U.S.C. § 271(b) for all Asserted Patents. Complaint at ¶¶ 79, 99, 119, 139, 160, 180, 200.  To state a claim of inducement sufficient to withstand a motion to dismiss, Ocean must plead facts that plausibly support an inference that the accused inducer "specifically intended [another] to infringe the [patent] and knew that the [induced] acts constituted infringement."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2014); *see also DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).  Here, Ocean's Complaint—relying largely on boilerplate assertions—includes no plausible facts suggesting Silicon Labs (1) knowingly induced others to infringe, nor that Silicon Labs (2) possessed the requisite a specific intent to induce such infringement.

### 1.    Ocean does not allege Silicon Labs' knowledge of fab processes or equipment used

Induced infringement requires a corresponding act of direct infringement by another. Regardless of whether the alleged direct infringement of Ocean's method claims arises under Section 271(a) or 271(g), the act of direct infringement is tied to the process steps allegedly used to manufacture the Accused Products (either in the U.S. or abroad).  However, importantly, Ocean never contends that Silicon Labs has knowledge of the tools and methods TSMC (or any other fab) uses to fabricate the Accused Products.

If Silicon Labs does not know the processes and tools used to manufacture its products, Silicon Labs could not have possibly known the alleged induced acts would constitute infringement. And, where Silicon Labs is without knowledge of any underlying infringement, it cannot be said to have knowingly induced others' infringement, nor to have possessed the specific intent to do so. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[I]nduced infringement under §271(b) requires knowledge that the induced acts constitute patent infringement."). This alone requires dismissal of Ocean's inducement allegations.

2.   *Ocean's boilerplate and conclusory assertions are inadequate*

Separately, Ocean's inducement allegations should be dismissed because they rely on conclusory, boilerplate accusations with no facts that plausibly demonstrate knowledge of the underlying infringement, nor any specific intent to induce such infringement. *See Iqbal*, 556 U.S. at 678; *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at *5 (W.D. Tex. Apr. 30, 2014) ("[U]nsubstantiated assertions do not adequately support the more demanding specific intent requirement for a finding of induced infringement."); *id.*, at *6 ("[T]he Court is unable to draw reasonable interferences of a viable induced infringement claim based on the conclusory and speculative facts in the complaint.").

As support for its induced infringement claims, Ocean states that Silicon Labs "actively promotes the sale, use, and importation" of Accused Products in documents, on webpages, and in trade shows; sells products to third parties; and provides technical and sales support. Complaint at ¶¶ 80-82, 100-102, 120-122, 140-142, 161-163, 181-183, 201-203. Nowhere in these general assertions does Ocean identify a single statement or action that establishes Silicon Labs knowingly and with specific intent induced infringement. *Affinity Labs of Tex.*, 2014 WL 12551207, at *5 ("Plaintiff does not specify how the marketing and selling activities of [the alleged infringer] actually induced third-parties to infringe"). Ocean's "[g]eneralized allegations" based on

"marketing and sales tactics" are insufficient to plead a cause of induced infringement.  *Id.*  For example, there is nothing about advertising an end product that somehow bolsters a contention that a Silicon Labs knows anything about a "fault code" allegedly used by a tool in an overseas fab.

Elsewhere in the Complaint, Ocean provides boilerplate conclusions and speculation that Silicon Labs induces infringement by encouraging third party importers and manufacturers to infringe.  Complaint at ¶¶ 85-86, 105-106, 125-126, 145-146, 166-167, 186-187, 206-207.  Within those paragraphs, however, Ocean never alleges that Silicon Labs "knew that the [third parties'] acts constituted infringement," as is required to adequately plead induced infringement.  *Inhale, Inc v. Gravitron, LLC*, No. 1:18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (citation and quotation marks omitted); *see also Affinity Labs of Tex.*, 2014 WL 12551207, at *5.  Ocean's Section 271(b) allegations are silent on whether Silicon Labs knew that any third-party action infringes.  For that additional reason, Ocean's induced infringement allegations fail.

Because Ocean does not plead facts sufficient to support its induced infringement claims, respectfully, Ocean's inducement claims should be dismissed.

### D.      Boilerplate Allegations of Willful Infringement are Insufficient

Ocean fails to adequately plead willfulness.  To state a claim for willful infringement, "a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent."  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (quoting *Valinge Innovations AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)).

Regarding willfulness, Ocean alleges the following for each of the asserted patents:

> SILABS has therefore infringed the [] patent knowingly, ***willfully***, ***deliberately***, and in disregard of Plaintiff's patent rights since at least [October 16, 2020 or November 25, 2020], at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.

Complaint at ¶¶ 89, 109, 129, 149, 170, 190, 210 (emphasis added). As to the knowledge elements of willful infringement, Ocean also alleges:

> [a]t least as of [October 16, 2020 or November 25, 2020], Ocean Semiconductor placed SILABS on actual notice of the [] patent and actual notice that its actions constituted and continued to constitute infringement of the [] patent. SILABS has had actual knowledge of the [] patent and its own infringement of the [] patent since at least that time.

*Id.* ¶¶ 72, 92, 112, 132, 152, 173, 193.

Such boilerplate allegations of willfulness are inadequate, as a "threadbare recital of the elements of willful infringement, supported by mere conclusory statements, does not suffice." *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1:18-CV-309-LY, 2018 WL 8261315, at *3 (W.D. Tex. Nov. 30, 2018) (internal citation and alterations omitted) (quoting *Iqbal*, 556 U.S. at 678.). Ocean's allegations merely state legal conclusions without providing any supporting facts— including even the simple step of attaching the correspondence or other alleged acts of notice. *See, e.g.*, *Inhale*, 2018 WL 7324886, at *3 (allegations relating to accused infringer's knowledge were based on "legal conclusion[s] couched as . . . factual allegations" and did not state a claim for willful infringement (quoting *Twombly*, 550 U.S. at 555) (alterations in original)). For example, as noted above, Ocean never alleges Silicon Labs has knowledge of the processes and tools used to manufacture the Accused Products. *See supra* at IV.C.1. Without this, Ocean cannot plausibly allege Silicon Labs knew its conduct amounted to infringement of the patent, as is required to plead willfulness.

A second, independent failure urges dismissal:  Ocean does not plead the egregious conduct required to support a finding of enhanced damages based on willfulness.  To support enhanced damages, a patent holder must describe conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Inhale*, 2018 WL 7324886, at *3–4 (dismissing claims for willful infringement) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016)).  Ocean's Complaint falls short of that standard.

Nowhere does Ocean allege any egregious conduct by Silicon Labs.  While Ocean asserts that Silicon Labs acted "willfully" and "deliberately" (Complaint at ¶¶ 89, 109, 129, 149, 170, 190, 210), Ocean provides no facts whatsoever to support those allegations.  Nor does Ocean suggest this case is anything but "the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willful infringement."  *M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5–6 (S.D. Tex. Jul. 31, 2018) (dismissing claim for willful infringement) (citing *Halo*, 136 S. Ct. 1923, 1935 (2016)).  There is nothing about an Austin semiconductor company buying chips from a well-known fab that rises to the level of being a "pirate."  Nor does Ocean even attempt to factually explain how that would be possible.

For both reasons described above, dismissal of Ocean's willful infringement claims is warranted.

### E.    Asserted Patents Claiming Generation of Information Cannot Support Infringement Under 271(g)

Beyond Ocean's failings under *Iqbal* and *Twombly*, for four of the Asserted Patents, Ocean's allegations are simply not legally cognizable.  For these patents—the '402, '538, '305, and '248 patents[4]—Ocean's infringement allegations stem from the performance of methods that

---

[4] The complete claim language of the claims asserted in the Complaint from each of these four patents is included in Exhibit A.

lie far outside the bounds of what the Federal Circuit has said may be captured under Section 271(g). Section 271(g) is a narrow, special purpose infringement statute designed to, under very limited circumstances not met here, close a loophole that permitted the importation of products manufactured abroad using a process patented in the United States.

Infringement under this section requires that the practiced method results in the manufacture of an actual product. *See Bayer*, 340 F.3d at 1370; *id* at 1368 ("[W]e conclude that infringement under 35 U.S.C. § 271(g) is limited to physical goods that were manufactured and does not include information generated by a patented process."). But, for four patents, Ocean's asserted claims concern only the generation of intangible information, with no material impact on any manufactured product. Moreover, Ocean does not allege that the information generated by these methods itself is ever imported into the United States or reflected in any manufactured product. These allegations stretch Section 271(g) far beyond what Congress and the Courts intended and should be dismissed. *Id.* at 1373 ("Congress was concerned solely with physical goods that had undergone manufacture.")

The Federal Circuit has "equated the word 'made' in § 271(g) with 'manufacture,'" which entails "'***the production of articles*** for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery.'" *See Momenta Pharm.*, 809 F.3d at 616; *Bayer*, 340 F.3d at 1371, fn.4 (quoting *American Fruit Growers*, 283 U.S. at 11) (emphasis in original).

     *1.   '402 patent, Claim 1*

Ocean's Complaint concedes that "the '402 patent describes systems and methods for ***shutting down*** a process tool or ***halting a manufacturing process*** in the presence of a manufacturing fault." Complaint at ¶ 43. A method concerning the cessation of manufacturing is

the very opposite of actually manufacturing a product, as is required for infringement under Section 271(g).  Ocean's concession is confirmed by the claim language.

Specifically, asserted Claim 1 from the '402 patent concerns the receipt of "operational state data of a processing tool," sending that data "to a fault detection unit," using the state data to "determin[e] if a fault condition exists," if so, "performing a predetermined action on the processing tool," which includes "sending a signal . . . reflective of the predetermined action," and "sending an alarm signal indicative of the fault condition."  The only thing produced via the execution of Claim 1 is *information*, namely that a "fault condition exists" in a "processing tool." A claim to the generation of information, such as the detection and indication of a fault condition, is not the type of claim the Federal Circuit has said is intended to be covered under Section 271(g). *Bayer*, 340 F.3d at 1368, 1370.  Accordingly, the '402 patent cannot properly be asserted under Section 271(g), as it concerns the generation of information and "halting a manufacturing process," which is antithetical to the manufacture of a product.

### 2.      '538 patent, Claim 1

Asserted Claim 1 from the '538 patent concerns "performing . . . a fault detection analysis," "determining . . . a relationship of a parameter relating to said fault detection analysis to a detected fault," "adjusting . . . a weighting of said parameter," and "performing . . . the fault detection analysis . . . using said adjusted weighting."  That is, the '538 patent concerns adjusting a parameter used in fault detection, and using the adjusted parameter for fault detection.  As with the '402 patent, the only thing produced via the execution of Claim 1 is *information*, namely an adjusted fault detection process and potential detection of a fault.  None of the steps of '538 patent Claim 1 can fairly be said to be the manufacture of a physical good—*i.e.* "'***the production of articles*** for use from raw or prepared materials by ***giving to these materials new forms, qualities,***

*properties, or combinations*." *Bayer*, 340 F.3d at fn.4 (quoting *American Fruit Growers*, 283 U.S. at 11) (emphases added).

### 3.    *'305 patent, Claim 1 and '248 patent, Claim 1[5]*

Claims 1 of the '305 and '248 patents concern "scheduling in an automated manufacturing environment" by "detecting an occurrence of a predetermined event," "notifying a software scheduling agent of the occurrence," and "reactively scheduling an action" in response.  The only thing produced by these claims is a schedule for some future unspecified action—*i.e.*, mere information.  Notably, nothing within these claims actually describes taking any action, much less an action that constitutes the manufacture of a physical good.  *Bayer*, 340 F.3d at 1368.

Because none of the claims asserted from the '402, '538, '305, and '248 patents includes any step whose performance results in manufacture of a physical good, the claims asserted in these patents cannot support a cause of action for infringement under Section 271(g), and respectfully, Silicon Labs requests dismissal with prejudice of Counts II, III, IV, and VII.

### 4.    *Dismissal of related indirect infringement allegations*

As detailed above, Ocean's allegations of Section 271(g) infringement for the '402, '538, '305, and '248 patents are insufficient and should be dismissed.  Ocean's allegations of induced infringement under Section 271(b) should similarly be dismissed for these patents, as there can be no predicate act of direct infringement under Section 271(g) for the reasons explained above. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) ("[I]nducement liability may arise 'if, but only if, [there is] direct infringement.'" (citation omitted, second alteration in original)).  Where there is no act of direct infringement, there can be no indirect infringement. *Id.*

---

[5] Claims 1 of the '305 and '248 patents differ in respects that are insubstantial in the context of the instant analysis, and they are addressed together.

### F.      System Claims Cannot Support a Cause of Action Under 271(g)

One of the claims alleged to be infringed in Ocean's Complaint is not a process claim at all, but instead is a system claim.   Specifically, Paragraph 73 of the Complaint alleges: "On information and belief, SILABS has directly infringed and continues to infringe at least claim 1 of the '651 patent. . .The '651 Accused Products are ***manufactured by a process*** including all of the limitations of at least claim 1 of the '651 patent."  Complaint at ¶ 73 (emphasis added).  But, claim 1 of the '651 patent is a system claim covering "[a] process tool" that cannot reasonably be said to concern "a product which is made by a ***process*** patented in the United States."  *See* 35 U.S.C. 271(g) (emphasis added).  Counsel for Ocean is apparently willing to remove claim 1 of the '651 patent from its Complaint, but no amendment has occurred as of the time of this filing.  As such, Silicon Labs also requests dismissal of paragraph 73 in the Complaint, as well as any other allegations of Section 271(g) infringement that arise under an asserted system claim.

### V.      CONCLUSION

For the foregoing reasons, Silicon Labs respectfully requests that the Court grant its motion and dismiss Plaintiff's claims for infringement under Rule 12(b)(6), including with prejudice as to Counts II, III, IV, and VII, which are not legally cognizable.

March 11, 2021                            Respectfully submitted,

                                         By:     /s/ *Marc B. Collier*

                                         Marc B. Collier (SBN 00792418)
                                         marc.collier@nortonrosefulbright.com
                                         Eric C. Green (SBN 24069824)
                                         eric.green@nortonrosefulbright.com
                                         **NORTON ROSE FULBRIGHT US LLP**
                                         98 San Jacinto Boulevard, Suite 1100
                                         Austin, Texas 78701
                                         Tel:     (512) 474-5201
                                         Fax:     (512) 536-4598

                                         Richard S. Zembek (SBN 00797726)
                                         richard.zembek@nortonrosefulbright.com
                                         **NORTON ROSE FULBRIGHT US LLP**
                                         1301 McKinney, Suite 5100
                                         Houston, Texas 77010-3095
                                         Tel: (713) 651-5151
                                         Fax: (713) 651-5246

                                         **COUNSEL FOR DEFENDANT SILICON
                                         LABORATORIES INC.**

101941765.2

**CERTIFICATE OF SERVICE**

I certify that on March 11, 2021, I electronically filed the foregoing with the Clerk of Court using

the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Eric C. Green*
Eric C. Green