# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| Ocean Semiconductor LLC,<br><br>              Plaintiff<br><br>v.<br><br>Silicon Laboratories Inc.,<br><br>              Defendant. | Civil Action No.: 6:20-cv-1214<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |

**PLAINTIFF OCEAN SEMICONDUCTOR LLC'S SUR-REPLY
TO DEFENDANT SILICON LABORATORIES INC.'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

                                            /s/ *Alex Chan*
                                            Timothy Devlin
                                            tdevlin@devlinlawfirm.com
                                            Henrik D. Parker
                                            hparker@devlinlawfirm.com
                                            Alex Chan (State Bar No. 24108051)
                                            achan@devlinlawfirm.com
                                            DEVLIN LAW FIRM LLC
                                            1526 Gilpin Avenue
                                            Wilmington, Delaware 19806
                                            Telephone: (302) 449-9010
                                            Facsimile: (302) 353-4251

DATED:       April 8, 2021

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 1

   A.   Silicon Labs Self-Made, Heightened Pleading Standard Conflicts with the *Iqbal*/*Twombly* Standard and This Court's Precedent ....................................... 1

   B.   Ocean Has Placed Silicon Labs on Notice of the Accused Third-Party Foundries and Tools, Which Is More Than What *Iqbal*/*Twombly* Require ........................... 4

   C.   Ocean Asserts Knowledge and Specific Intent by Showing that Silicon Labs Contracts with Third-Party Importers to Infringe the Asserted Patents ........................... 5

   D.   Silicon Labs Ignores This Court's Specific Ruling that Egregiousness Is Not Required to Plead Willfulness as Well as Other Alleged Facts ....................................... 6

   E.   The 402, 538, 305, and 248 Patents Are All Directed to the Manufacture of Products and *Momenta* Does Not Exclude Them From 271(g) Infringement .............................. 8

      1.   *Momenta* Does Not Apply to the '402 Patent ............................................... 8

      2.   *Momenta* Does Not Apply to the '538 Patent ............................................... 9

      3.   *Momenta* Does Not Apply to the '305 and '248 Patents ........................................ 9

   F.   Silicon Labs Has Offered No Cogent Reason for Seeking Dismissal of Paragraph 73 of the Complaint Given What It Encompasses ................................................................. 10

   G.   Silicon Labs Concedes that, in All Events, Fact Issues Preclude Dismissal and that, at Worst, Leave to Amend Should Be Granted Rather Than Dismissal .......................... 10

III. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. (2009) ................................................................................................................ 2, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. (2007) ...................................................................................................................... 2

*Erickson v. Pardus*,
    551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d (2007) ......................................................... 4

*EWS Holdings, Inc. v. Roku, Inc.*,
    C.A. No. 19-00044-ADA, 2019 U.S. Dist. LEXIS 233422 (W.D. Tex. May 13, 2019) ............ 2

*Frac Shack, Inc. v. Afd Petroleum Tex. Inc.*,
    No. 7:19-cv-00026-ADA, 2019 U.S. Dist. LEXIS 141114 (W.D. Tex. Jun. 13, 2019) ............. 6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. (2016) ..................................................................................................................... 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 Fed. Cir. 2012) ........................................................................................... 6, 10

*Janssen Pharma., N.V. v. Mylan Pharms. Inc.*, No. 15-760-SLRSRF, 2016 U.S. Dist. LEXIS
    192881 (D. Del. Oct. 18, 2016) ........................................................................................... 3, 4

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013). ........................................................................................... 2, 4

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
    No. 17-313, 2018-MSG, 2018 U.S. Dist. LEXIS 22392 (D. Del. Feb. 12, 2018) ..................... 3

*M & C Innovations, LLC v. Igloo Prods.*, C.A. No. 4:17-CV-2372, 2018 U.S. Dist. LEXIS
    152075 (S.D. Tex. July 31, 2018) ............................................................................................ 7

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
    472 F. Supp. 3d (E.D. Mich. 2020) .......................................................................................... 7

*Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*,
    809 F.3d 610 (Fed. Cir. 2015) ............................................................................................. 1, 8

*Muhammad v. Dallas Cnty. Cmly. Supervision & Corrs. Dep't*,
    479 F.3d 377 (5th Cir. 2007) ................................................................................................... 3

*Parity Networks, LLC v. Cisco Sys*.
   C.A. No. 6:19-cv-00207-ADA, 2019 U.S. Dist. LEXIS 144094 (W.D. Tex. Jul. 26, 2019) ..... 7

*Plano Encryption Techs. v. Alkami Tech.*,
   No. 2:16-cv-1032-JRG, 2017 U.S. Dist. LEXIS 221765 (E.D. Tex. Sept. 22, 2017 ................. 7

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
   No. 2018-1614 (lead case), 2019 U.S. App. LEXIS 37411 (Fed. Cir. 2019) ............................. 5

*Univ. of Mass. Med. Sch. v. L'Oréal S.A.*,
   C.A. No. 17-868-CFC-SRF, 2018 U.S. Dist. LEXIS 192832 (D. Del. Nov. 13, 2018) ............. 5

**Statutes**

35 U.S.C. § 271(g) ............................................................................................................. 3, 4, 6, 8

## I. INTRODUCTION

Silicon Labs' Reply fails to adequately rebut any of Ocean's Opposition positions while raising new, but ultimately immaterial, arguments. Silicon Labs argues the semantics of "possible" versus "plausible" and wrongly describes Ocean's cited cases but ignores that Ocean is entitled to ***all*** reasonable inferences. As to induced infringement, Silicon Labs' misplaced "plausibility" argument cannot alter that Ocean's Complaint establishes knowledge and specific intent. Worse still, Silicon Labs entirely ignores precedent from ***this court*** that "egregiousness" is not required to be pled willfulness. Finally, Silicon Labs mistakenly seeks to rely on *Momenta*, when that case involved a testing process performed on samples of intermediate products that were destroyed in the testing process and thus never themselves used to make the products that were actually imported. Silicon Labs' Motion should be denied.

## II. ARGUMENT

### A. Silicon Labs Self-Made, Heightened Pleading Standard Conflicts with the *Iqbal/Twombly* Standard and This Court's Precedent

In its Opposition, Ocean offered evidence from the Complaint directly linking two TSMC fabrication facilities and five manufacturing tools to more than 165 Silicon Labs products (*see* Dkt. 16 at 4-7)—evidence that Silicon Labs completely ignored in its Opening Brief. In reply, Silicon Labs tries a different tack, now arguing that Ocean has not "plausibly" shown that the Silicon Labs products manufactured at the two TSMC fabs (namely, Fabs 3 and 10) are also manufactured in other TSMC fabs (such as Fab 12) using the same tools. (*See* Dkt. 17 at 5.) This new argument once again misses the mark. As Silicon Labs itself recognizes, TSMC's Fab 12 is identified in the Complaint as the facility responsible for manufacturing the accused products using PDF Solutions' Exensio manufacturing tool. (*Id.* at 2.) That is not the case for Fabs 3 and 10; instead, Ocean has identified those two fab locations as used to fabricate the

1

accused products using ASML's TWINSCAN manufacturing tool. (*see* Dkt. 16 at 5.) Silicon Labs complains that each facility has "differing capabilities and tools" (Dkt. 17 at 2, n.2), but never contests that TSMC uses the manufacturing tools at its facilities.

Moreover, which fab location manufactures which Silicon Lab products is immaterial to the determination of whether Ocean has pled plausible facts indicating that the accused products are manufactured by the patented methods. Indeed, this line of argument further highlights Silicon Labs' fundamental misunderstanding of the law. Under the *Iqbal/Twombly* standard, the Court should "draw the **reasonable inference** that the defendant is liable." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).[1] Ocean is entitled to the reasonable inference (to the extent that Ocean's identified evidence has not already confirmed it) that the accused products are manufactured in each of TSMC's fabs based on the irrefutable evidence that some of TSMC's fabs are used to manufacture the accused products. Coupled with the fact that TSMC has purchased the offending tools and manufactured products at Silicon Labs' direction and through Silicon Labs' qualification process, the "inference" that the offending tools are used by TSMC to manufacture the accused products is more than reasonable. This is all that the pleading standard requires. *K-Tech Telecomms.*, 714 F.3d at 1283.

As this Court has made clear, dismissal under Rule 12(b)(6) is only proper if a plaintiff "would not be entitled to relief **under any set of facts or any possible theory** that [it] could prove consistent with the allegations in the complaint." *EWS Holdings, Inc. v. Roku, Inc.*, C.A. No. 19-00044-ADA, 2019 U.S. Dist. LEXIS 233422, at *3 (W.D. Tex. May 13, 2019) (quoting *Muhammad v. Dallas Cnty. Cmly. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir.

---

[1] Unless otherwise noted, all emphasis in this brief is added.

2007)).  Because Silicon Labs admits that the facts and possible theory exist ("Ocean's Complaint indicates at most a *possibility* of infringement"; *see* Dkt. 17 at 2), it has failed to show that Ocean is not entitled to relief.

Silicon Labs' effort to distinguish *Kyowa* and *Janssen* (Dkt. 17 at 3-4) misses the salient point of the cases altogether.  The courts there are clear about the § 271(g) pleading standard—a plaintiff "need *not* allege facts that the offending process was practiced for a product manufactured outside the United States . . . ." and "the fact that a third party engages in the infringing process is irrelevant under § 271(g)."  *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018-MSG, 2018 U.S. Dist. LEXIS 22392, at *24 (D. Del. Feb. 12, 2018); *Janssen Pharma., N.V. v. Mylan Pharms. Inc.*, No. 15-760-SLRSRF, 2016 U.S. Dist. LEXIS 192881, at *40 (D. Del. Oct. 18, 2016).

The *Kyowa* court did not carve out an exception to the pleading standard for products manufactured outside, versus inside, the United States, as Silicon Labs implies.  (Dkt. 17 at 3.)  Indeed, who manufactured the accused products and by what means are not relevant to the inquiry of importation, sale, or use.  Under 271(g), *no* facts need be alleged with respect to the offending processes (such as those practiced by Silicon Labs' contract manufacturers using the infringing manufacturing tools) for products manufactured outside the United States (such as those manufactured by Silicon Labs' contract manufacturers) as long as Ocean has shown that the accused products are/were made by a patented process and that they are/were imported.

Silicon Labs' argument that *Janssen* "says nothing of what is required to properly plead Section 271(g) infringement" (Dkt. 17 at 7) is similarly unavailing.  As an initial matter, *Janssen* was cited as support that "[a]ll that is required [to plead under Section 271(g)] is that any party utilizes the patented process to manufacture products and eventually imported such products into the United States." (Dkt. 16 at 6.)  Ocean has done so and more.  Pointing to comments made by the

3

court in *Janssen*, Silicon Labs also argues that Section 271(g) should not be construed broadly, but those *Janssen* comments are made in the context of applying Section 271(g) to methods of "testing," which are not applicable here. Nowhere does *Janssen* (or any precedent) support Silicon Labs' heightened pleading standard requiring a plaintiff to go beyond the requirements of *Iqbal* and *Twombly*.

Tellingly, faced with these facts alleged in the Complaint, Silicon Labs attempts to dodge liability by ignoring that the asserted facts are only possible, but are not plausible. Its arguments are inconsistent with Supreme Court and Federal Circuit law that "specific facts are not necessary" and that "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *K-Tech Telecomms.*, 714 F.3d at 1283 (citing *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (*per curiam*), quoting *Twombly*, 550 U.S. at 555). They are also inconsistent with the voluminous information and evidence set forth in the Complaint.

### B. Ocean Has Placed Silicon Labs on Notice of the Accused Third-Party Foundries and Tools, Which Is More Than What *Iqbal*/*Twombly* Require

In its Reply, Silicon Labs attempts to sow confusion by asserting in a conclusory fashion that it does not have "fair notice as to unnamed fabs, using unnamed tools, to make unnamed products." (Dkt. 17 at 5.) In doing so, Silicon Labs fails to cite a ***single*** case supporting the notion that a plaintiff must identify all fabs, tools, and products at the pleading stage.

It is indisputable that Silicon Labs has notice as to what it must defend; instead, it erroneously claims "the only way the Complaint seeks to demonstrate practice of the patented methods is through the tools alleged to implement the methods." (Dkt. 17 at 6.) But Section 271(g) focuses on "[a] product which is made by a patented process . . .," not the tools that perform that patented process. Indeed, "[a]lthough § 271(g) may involve a form of direct

liability, that liability does not arise from *practicing* a patented process abroad," and thus, which third parties manufactured the accused products and what tools were used for manufacturing are irrelevant to the analysis. *See Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 2018-1614 (lead case), 2019 U.S. App. LEXIS 37411, at *31, 33 (Fed. Cir. 2019) ("Rather, the focus is only on acts with respect to *products* resulting from the patented process") (emphasis original).

Silicon Labs does not, and indeed cannot, genuinely dispute that there are other foundries with which Silicon Labs contracts (including foundries that are only known to Silicon Labs) to manufacture the accused products using the offending tools. For example, the Complaint identifies "Silicon Labs Quality and Operations Overview," a corporate overview presentation which states that Silicon Labs contracts with TSMC, SMIC, and "*others*" for integrated circuit fabrication. (*See* Dkt. 1 at ¶ 8; Chan Decl. Ex. 3 at 2.) This evidence establishes that Silicon Labs has actual knowledge of other "unnamed" and unpublished fabricators which are responsive to Ocean's allegations—knowledge as to which Ocean is not privy.

As a final failure, Silicon Labs completely ignores the relevant portion of *Univ. of Mass. Med. Sch.*, where the court there found that the defendant "should easily be able to ascertain the identity of the [Unnamed] Accused Products." *Univ. of Mass. Med. Sch. v. L'Oréal S.A.*, C.A. No. 17-868-CFC-SRF, 2018 U.S. Dist. LEXIS 192832, at *13 (D. Del. Nov. 13, 2018).

### C.  Ocean Asserts Knowledge and Specific Intent by Showing that Silicon Labs Contracts with Third-Party Importers to Infringe the Asserted Patents

While complaining that Ocean's Opposition "only discusses 'knowledge' as opposed to the required 'specific intent'" (Dkt. 17 at 6.), Silicon Labs ignores an entire paragraph dedicated to allegations that Silicon Labs:

> encouraged [third-party importers] to infringe the Asserted Patents via importation under § 271(g), including 'ordering or instructing' them to import the accused products, 'providing directions and other materials' to them to enable such importation, and 'conditioning the receipt of benefits (included but not

5

limited to payment)' to them on such importation.

(Dkt. 16 at 11.) The same paragraph also cites portions of the Complaint alleging inducement based on Silicon Labs' encouragement of infringement by third-party manufacturers. (*Id.* at 11.) This is far from "attorney argument" and is therefore not "amended by [Ocean's] briefs."

Silicon Labs' "implausibility" argument regarding its knowledge of "fault code" is also unavailing. First, Silicon Labs does not deny knowledge of the asserted patents. Furthermore, nothing in *In re Bill of Lading* requires a plaintiff to allege a defendant's knowledge of the completion of each individual step in an infringing process by a third party *to allege inducement of § 271(g) infringement*. Rather, the inferences raised by the plaintiff there were found both "reasonable and plausible" when the complaint there was "considered as a whole, and the facts [were] considered in the context of the technology disclosed in the [patent in suit] and the industry to which Appellees sell and tout their products . . . ." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 Fed. Cir. 2012). Here, the inferences that Silicon Labs had knowledge of the patents and specifically intended (and continues to intend) for its foundry partners, manufacturers, and importers to infringe under § 271(g) is both reasonable and plausible when viewed in light of all of the facts alleged in the Complaint.

D. **Silicon Labs Ignores This Court's Specific Ruling that Egregiousness Is Not Required to Plead Willfulness as Well as Other Alleged Facts**

Silicon Labs' continued assertion that pleading willful infringement requires a showing of egregiousness is baffling, particularly in light of this Court's own precedent. Indeed, Silicon Labs does not address *Frac Shack* cited by Ocean—a decision written by *this Court* finding that a pleading of egregiousness is not required at this stage. *Frac Shack, Inc. v. Afd Petroleum Tex. Inc.*, No. 7:19-cv-00026-ADA, 2019 U.S. Dist. LEXIS 141114 (W.D. Tex. Jun. 13, 2019). Instead, Silicon Labs cites to wholly inapplicable case law such as Justice Breyer's concurrence

6

in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) and the opinion in *Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377 (E.D. Mich. 2020). Similarly, Silicon Labs' reason for citing to *M & C Innovations* is unclear, as that case does not even discuss egregiousness. *M & C Innovations, LLC v. Igloo Prods.*, C.A. No. 4:17-CV-2372, 2018 U.S. Dist. LEXIS 152075, at *7-9 (S.D. Tex. July 31, 2018) (discussing the knowledge component of pleading pre-suit willfulness, but not egregiousness).

Silicon Labs attempts to distract from these inadequacies by raising new arguments as to Ocean's notice letters. Silicon Labs' rhetorical question—"what are these unnamed 'systems' or 'tools' allegedly covered by the patents?"—is unconvincing because Silicon Labs never raised the question when it first received the notice letters. Indeed, ***Silicon Labs failed to respond to the notice letters at all***. Nor has Silicon Labs ever disputed, in either its Opening Brief or its Reply, that the notice letters, which communicate a charge of infringement of the Asserted Patents by specific products, sufficiently serve as actual notice under Section 287.

Notably, Silicon Labs does not cite to a single case supporting its argument that the notice letters are inadequate, thereby necessarily conceding that the cases cited by Ocean are controlling, including *Parity Networks, LLC v. Cisco Sys*. C.A. No. 6:19-cv-00207-ADA, 2019 U.S. Dist. LEXIS 144094, at *9 (W.D. Tex. Jul. 26, 2019) (notice letters are sufficient to show knowledge, and "to plausibly show that, after acquiring that knowledge, Defendant infringed the patent and knew, or should have known, that its conduct amounted to infringement of the patent"). Silicon Labs also ignores, and thus concedes, that Ocean's Complaint assertions that Silicon Labs has continued to infringe since receiving the notice letters are sufficient to survive a Rule 12 motion. (*See* Dkt. 16 at 13-14, citing *Plano Encryption Techs. v. Alkami Tech.*, No. 2:16-cv-1032-JRG, 2017 U.S. Dist. LEXIS 221765, at *19 (E.D. Tex. Sept. 22, 2017).

### E. The 402, 538, 305, and 248 Patents Are All Directed to the Manufacture of Products and *Momenta* Does Not Exclude Them From 271(g) Infringement

Silicon Labs attempts to shoehorn four of the seven asserted patents accused under § 271(g) into a zone of exclusion that it argues is dictated by *Momenta*, but *Momenta*'s holding does not support such an argument. Instead, that case involved a ***testing*** process that was performed on samples of intermediate products that destroyed the products on which the tests were performed. *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 616-17 (Fed. Cir. 2015). As a result, there could never be any subsequent importation of any product on which the claimed method had been performed.

Unlike in *Momenta*, the patented methods recited in the '402, '538, '305 and '248 are performed ***during manufacturing*** and on ***all wafers***, and so the same wafers that are imported were themselves made using the patented methods. This alone distinguishes *Momenta*. Silicon Labs also mischaracterizes Ocean's position in asserting that Ocean argues that section 271(g) encompasses "claims that merely generate information." (Dkt. 17 at 1.) As set forth in the Complaint as discussed throughout Ocean's briefing, the claims involve the manufacture of physical products.

#### 1. *Momenta* Does Not Apply to the '402 Patent

Contrary to Silicon Labs' false claim that the patented process "is a type of 'quality control' equivalent to the method of *Momenta*" (Dkt. 17 at 9), the invention of the '402 patent is directed to methods and systems for manufacturing physical products (e.g., silicon wafers) by controlling processing tools (e.g., steppers) within a factory automation system. Silicon Labs never addresses why a "predetermined action on a processing tool," as method claim 1 recites, is not performed during manufacture of the physical products. In fact, it cannot be legitimately disputed that the claimed methods directly affect the manufacturing processes and, thus, the

8

manufacturing of the wafers. The relationship between the patented process and the accused products is more than sufficient to withstand a motion to dismiss.

Silicon Labs wrongly argues that "the open-ended nature of 'process tool' in the patent's specification leaves no doubt that Claim 1 does not result in the manufacture of any particular physical article." (Dkt. 17 at 9.) In fact, the portion of the specification Silicon Labs cites ("the processing tool 105 . . . could include other types of manufacturing equipment for *producing* a variety of different types of commercial products") confirms what Ocean has argued all along— that the '402 process results in the making of physical products, whether they be semiconductors or other products requiring a similar level of process integrity. (Dkt. 1-3 at 2:51-57.)

### 2. *Momenta* Does Not Apply to the '538 Patent

In the same vein, the '538 patent involves the performance of certain actions *while* a wafer is being processed, *not afterward*. (see Dkt. 16 at 15-16.) Silicon Labs attempts to deflect from this key distinction by arguing that Ocean's pleadings rely on "non-asserted claims and the patent specification" (Dkt. 17 at 10), but that is simply not true. Nothing in the Complaint limits Silicon Labs' infringement to a single claim. (*See* Dkt. 1 at ¶ 194) (Silicon Labs "has directly infringed and continues to infringe *at least* claim 1 of the '538 patent.")

Moreover, Silicon Labs cites no authority for its proposition that Ocean's reliance on multiple claims and the specification is improper when determining the applicability of Section 271(g). Further, Silicon Labs' contention that the '538 patent's relationship to manufacture of a semiconductor wafer is "ill-defined [and] ancillary" is contradicted by the '538 patent itself, which discloses the performance of a subsequent process step that is "*based upon*" the parameter weighting process of the '538 patent. (Dkt. 1-7 at 11:7-9; *see also* Dkt. 16 at 17.)

### 3. *Momenta* Does Not Apply to the '305 and '248 Patents

Both the '305 and '248 patents cover the scheduling of semiconductor product fabrication

9

processes—scheduling that is an integral part of semiconductor manufacturing.  Without scheduling, no manufacturing could take place, including, for example, which semiconductor tools are used and when, what processing recipes are deployed and at what rate, and where the wafers would be transported and how.  Silicon Labs' argument that the '305 and '248 patents "merely relate to setting a schedule" and "only result in the generation of information" (Dkt. 17 at 10) is a flat mischaracterization of the method actually claimed by the patents.  As the extensive citations from both patents in Ocean's Opposition reveal, scheduling methods dictate not only *when* a manufacturing action occurs but *how* that action should be taken, all during the process of manufacturing physical products.

### F. Silicon Labs Has Offered No Cogent Reason for Seeking Dismissal of Paragraph 73 of the Complaint Given What It Encompasses

Silicon Labs' assertion that "only claim 19 is asserted because that is the claim that Ocean charted" ignores the universal, widely-understood rule that a plaintiff need not "prove all aspects of its claims" at the pleading stage, much less provide a chart for each claim asserted.  *In re Bill of Lading*, 681 F.3d at 1341.  Tellingly, Silicon Labs ignores the other allegations of Paragraph 73—such as the doctrine of equivalents allegations—that separately preclude dismissal of that part of the Complaint.

### G. Silicon Labs Concedes that, in All Events, Fact Issues Preclude Dismissal and that, at Worst, Leave to Amend Should Be Granted Rather Than Dismissal

Silicon Labs entirely fails to address the final two sections of Ocean's Opposition (*see* Dkt. 16 at 20).  As such, Silicon Labs concedes that, beyond all of the other flaws in its Motion, fact issues would preclude dismissal and that, at worst, the Court should grant leave to amend the Complaint rather than dismissing the Complaint outright.

### III. CONCLUSION

For all of the reasons stated above, Silicon Labs' Motion to Dismiss should be denied.

Dated:  April 8, 2021

                                      */s/ Alex Chan*
                                      Timothy Devlin
                                      tdevlin@devlinlawfirm.com
                                      Henrik D. Parker
                                      hparker@devlinlawfirm.com
                                      Alex Chan (State Bar No. 24108051)
                                      achan@devlinlawfirm.com
                                      **DEVLIN LAW FIRM LLC**
                                      1526 Gilpin Avenue
                                      Wilmington, DE 19806
                                      Telephone:  (302) 449-9010
                                      Facsimile:  (302) 353-4251

                                      *Attorneys for Plaintiff*
                                      OCEAN SEMICONDUCTOR LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 8, 2021.

                                          */s/ Alex Chan*
                                          Alex Chan

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| Ocean Semiconductor LLC, <br><br> Plaintiff <br><br> v. <br><br> Silicon Laboratories Inc., <br><br> Defendant. | Civil Action No.: 6:20-cv-1214 <br><br> JURY TRIAL DEMANDED <br><br> PATENT CASE |

**DECLARATION OF ALEX CHAN IN SUPPORT OF PLAINTIFF OCEAN SEMICONDUCTOR LLC'S OPPOSITION TO DEFENDANT SILICON LABORATORIES INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

I, Alex Chan, Esq., declare as follows:

1. I am a partner at the Devlin Law Firm LLC. I am currently in good standing and licensed to practice in the State of Texas and a member of the bar of this Court.

2. I am counsel of record for Plaintiff Ocean Semiconductor LLC, ("Ocean") in this action, and make this Declaration in support of Ocean's contemporarily-filed Opposition to Defendant Silicon Laboratories Inc.'s ("Silicon Labs") Motion to Dismiss for Failure to State a Claim. The facts set forth herein are true to my personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

3. Attached as Exhibit 1 to this Declaration is a true and correct copy of Silicon Labs' "Process Change Notice #1011021" ("Notice") publicly announcing that a Taiwan Semiconductor Manufacturing Company Ltd. ("TSMC") fabrication facility (called "Fab10") has been contracted as a "Fabrication site for Silicon Labs MCU products," which, according to that

1

same notice, is "an additional Fabrication site for Silicon Labs MCU products currently being fabricated in TSMC's Fab3 site."  This Notice suggests that Silicon Labs communicated with TSMC, tested the accused products, and along the way, gained knowledge about the fabrication processes adopted and tools used by TSMC to make the products in announcing the "successful qualification" of TSMC.

4.  Attached as Exhibit 2 to this Declaration is a true and correct copy of an email from counsel for Ocean to counsel for SiLabs dated March 10, 2021 showing that counsel for Silicon Labs knew that claim 1 is not being asserted under Section 271(g), as confirmed by counsel for Ocean, but nevertheless fabricated an excuse in order to seek an impermissible extension to file its answer beyond the maximum 45 days permitted by this Court.

5.  Attached as Exhibit 3 to this Declaration is a true and correct copy of select pages from the "Silicon Labs Quality and Operations Overview," showing that Silicon Labs has actual knowledge of other "unnamed" and unpublished fabricators which are responsive to Ocean's allegations.  Further, this demonstrates knowledge to which Ocean is no privy based on the secretive nature of this information.

I declare under penalty of perjury under the laws of the United States that to the best of my knowledge and recollection the foregoing is true and correct.
Executed this 8th day of April, 2021.

*/s/ Alex Chan*
Alex Chan