**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| OCEAN SEMICONDUCTOR LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 6:20-cv-1214 |
| | § | |
| SILICON LABORATORIES INC. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT SILICON LABORATORIES INC.'S
OPPOSED MOTION FOR INTRA-DISTRICT TRANSFER
<u>TO THE AUSTIN DIVISION OF THE WESTERN DISTRICT OF TEXAS</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     DESCRIPTION OF THE CASE ...................................................................... 1

III.    STATEMENT OF THE LAW ........................................................................... 3

IV.     THE TRANSFER ANALYSIS FAVORS THE AUSTIN DIVISION.............................. 5

        A.      These Actions Could Have Been Brought in the Austin Division............................... 5

        B.      The Private Interest Factors Favor Transfer .................................................... 5

                1.      Relative Ease of Access to Sources of Proof Strongly Favors Transfer................. 5

                2.      Convenience and Cost for Willing Witnesses Strongly Favors Transfer ............... 7

                3.      Other Practical Factors Favor Transfer........................................................ 8

                4.      Availability of Compulsory Process Is Neutral .................................................. 9

        C.      The Public Interest Factors Favor Transfer ..................................................... 9

                1.      Local Interest in Adjudicating Local Disputes Favors Transfer.......................... 10

                2.      Court Congestion, Familiarity With the Law, and Avoidance of Conflicts Factors
                        Are Neutral....................................................................................... 10

V.      CONCLUSION............................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Data Scape, Ltd. v. Dell Techs., Inc.*,
    No. 6:19-cv-129-ADA, Dkt. 44 (W.D. Tex. June 7, 2019) ...............................................4, 5, 9

*Freshub, Inc. v. Amazon.com Inc.*,
    No. 6:19-cv-388-ADA, Dkt. 29 (W.D. Tex. Sept. 9, 2019) ......................................................4

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)........................................................................................3, 5, 7

*McCloud v. McClinton Energy Grp., L.L.C.*,
    No. 5:14-cv-620-XR, 2014 WL 6388417 (W.D. Tex. Nov. 14, 2014).....................................7

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*,
    No. 1:14-cv-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014)......................4, 5, 8, 9

*In re Nintendo, Co., Ltd*,
    589 F.3d 1194 (Fed. Cir. 2009)........................................................................................4, 5, 7

*Ocean Semiconductor LLC v. Renesas Elecs. Corp.*,
    No. 6:20-cv-1213-ADA, Dkt. 39 (W.D. Tex. July 9, 2021).........................................1, 2, 3, 6

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ...............................................................................................4, 7

*In re Toa Techs., Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) .........................................................................................5

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)........................................................................................3, 4, 10

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................................4, 7, 10

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008)............................................................................................4, 8, 9

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009)................................................................................................8

**Rules and Statutes**

28 U.S.C. § 1400(b) ......................................................................................................................5

28 U.S.C. § 1404(a) ..............................................................................................................1, 3, 4, 5

Federal Rule of Civil Procedure 45 .............................................................................................9

Pursuant to 28 U.S.C. § 1404(a), Silicon Laboratories Inc. ("Silicon Labs") moves the Court to transfer this case from the Waco Division to the Austin Division of the Western District of Texas.

## I.    INTRODUCTION

Ocean Semiconductor LLC ("Ocean") filed this case in the Waco Division of the Western District of Texas accusing Silicon Labs of patent infringement.  Dkt. 1 ("Compl.") ¶ 4. Neither Ocean nor Silicon Labs has offices in this division.  Silicon Labs is headquartered in Austin, less than half a mile from the Austin courthouse.  *See id*. ¶ 3.  The Austin Division is a clearly more convenient forum for this lawsuit.  The Austin Division is more convenient in terms of likely witnesses, and Austin itself has a strong local interest in the resolution of this dispute. The Waco Division, in contrast, appears to have no connection to this lawsuit, including no related places of business, no likely witnesses, and no local interest.

This case belongs in Austin and Silicon Labs respectfully requests that the Court transfer it there pursuant to 28 U.S.C. § 1404(a).  In a related case, Ocean concedes that transferring that case to Austin makes sense if this Court retains control.  *See* Ocean's Opposition to Renesas's Motion to Transfer Venue, *Ocean Semiconductor LLC v. Renesas Elecs. Corp.*, No. 6:20-cv-1213-ADA, Dkt. 39 at 14 (W.D. Tex. July 9, 2021) ("Ocean's Renesas Response") ("[I]t would be highly inefficient to transfer this action to Austin *unless* this Court continued to preside over the action." (emphasis in original)).  Silicon Labs would not oppose this Court retaining oversight over this case after transfer.

## II.    DESCRIPTION OF THE CASE

Ocean asserts that Silicon Labs infringes seven patents by importing, using, selling, and/or offering for sale integrated circuits that are manufactured by Silicon Labs' foundry

partner, Taiwan Semiconductor Manufacturing Company Ltd. ("TSMC"), using the following tools: ASML's TWINSCAN system, ASML's YieldStar metrology and inspection system, Applied Materials' E3 system, PDF Solutions' Exensio system, and camLine's LineWorks system.  Compl. ¶¶ 73, 93, 113, 133, 153, 174, 194.  Ocean asserted infringement of at least the same seven patents through use of the same five tools in six other cases (Case Nos. 6:20-1210, 6:20-1211, 6:20-1212, 6:20-1213, 6:20-1215, and 6:20-1216) against disparate defendants (MediaTek Inc., NVIDIA Corp., NXP USA, Inc., Renesas Electronics Corp., STMicroelectronics, Inc., and Western Digital Technologies, Inc.) in the Waco Division.  Silicon Labs anticipates some or all of these Defendants will similarly seek transfer to the Austin Division of the Western District of Texas in the coming days or weeks.  *See, e.g., Ocean Semiconductor LLC v. STMicroelectronics, Inc.*, No. 6:20-cv-1215, Dkt. 25 at 3 (W.D. Tex. May 4, 2021) (indicating a future motion for transfer to Austin Division); *Ocean Semiconductor LLC v. MediaTek Inc.*, No. 6:20-cv-1210, Dkt. 17 at 3 (W.D. Tex. May 4, 2021) (same)*; Ocean Semiconductor LLC v. Renesas Elecs.*, Dkt. 36 at 7 (alternatively seeking transfer to Austin Division); *Ocean Semiconductor LLC v. Western Digital Techs. Inc.*, No. 6:20-cv-1216, Dkt. 25 at 3 (W.D. Tex. May 5, 2021) (generally indicating a future motion to transfer).

Since its founding in 1996, Silicon Labs has had a principal place of business in Austin.  Decl. of Jalin Wu ("Ex. 1") at ¶ 3.  Silicon Labs presently has 560 employees in Austin, including employees that interact with TSMC.  Ex. 1 at ¶ 4; Decl. of Thomas Fowler  ("Ex. 2") at ¶ 4.  Silicon Labs maintains records in Austin.  Ex. 2 at ¶ 3.  Conversely, Silicon Labs has no facilities, no relevant employees and maintains no records in the Waco Division.  Ex. 1 at ¶¶ 5, 6.  Moreover, as acknowledged by Ocean, TSMC operates a design center in Austin.  Ex. 3 at 1; Ocean's Renesas Response at 8.

The original assignee of the asserted patents was Advanced Micro Devices ("AMD"), which opened its Austin campus in 1979 as the company's first U.S. chip manufacturing facility outside of Silicon Valley.  Ex. 4 at 4; Ocean's Renesas Response at 8.  As acknowledged by Ocean, five of the seven asserted patents were originally assigned to AMD in Austin, and the majority of the inventors are Austin-based.  Ocean's Renesas Response at 13 ("First, based on the faces of the patents, six of the patented inventions were invented in this District at a company (AMD) that continues to have a very large local presence . . . Eight of the named inventors on the patents resulting from those inventions continue to reside in this District.").

AMD assigned the asserted patents to Fullbrite Capital Partners LLC ("Fullbrite"), a Michigan limited liability company that is headquartered in Michigan.  Ex. 5.  Fullbrite then assigned the asserted patents to Ocean, a Delaware limited liability company.  *Id.*

The accused tool suppliers include Applied Materials, which has had an Austin presence since 1992 (Ex. 7 at 1); AMSL that has an office in Austin (Ex. 6 at 10); PDF Solutions that is headquartered in California and has a Dallas office (Ex. 9 at 2, 4); and camLine with a U.S. location in Georgia (Ex. 8).  *See* Ocean's Renesas Response at 8.

## III.  <u>STATEMENT OF THE LAW</u>

Section 1404(a) provides that a district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a).  Fifth Circuit law, as applied by the Federal Circuit, governs the transfer analysis.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (applying Fifth Circuit law to transfer analysis); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (same).  Plaintiff's venue choice is not a factor to be considered in this analysis: "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor

in the § 1404(a) analysis." *TS Tech*, 551 F.3d at 1320.

The initial inquiry when analyzing a case's eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, the convenience determination turns on assessing four private interest and four public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315; *In re Nintendo, Co., Ltd*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *TS Tech*, 551 F.3d at 1319. The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315.

Section 1404(a) "appl[ies] as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). The Western District of Texas has repeatedly affirmed this principle. Here, all "of the relevant connections in this case" are to Austin rather than to Waco, requiring transfer to Austin under Section 1404. *See Freshub, Inc. v. Amazon.com Inc.*, No. 6:19-cv-388-ADA, Dkt. 29 at 1 (W.D. Tex. Sept. 9, 2019); *Data Scape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-129-ADA, Dkt. 44 at 2 (W.D. Tex. June 7, 2019); *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-cv-464-LY, 2014 WL 12479284, at *1 (W.D. Tex. Aug. 12, 2014) (granting intra-district transfer).

## IV.   THE TRANSFER ANALYSIS FAVORS THE AUSTIN DIVISION

In this case, this action could have been brought in the Austin Division; four of the § 1404(a) factors favor transfer to Austin; the remainder are neutral; and not a single relevant factor favors Ocean's chosen venue.  Accordingly, transfer to the Austin Division is appropriate. *See Mimedx*, 2014 WL 12479284, at *2–3 (ordering transfer where four factors favored transfer, four were neutral, and none favored plaintiff's chosen venue); *Data Scape*, Dkt. 44 at 3–6 (three factors favored transfer, two were neutral, and none weighed against transfer).

### A.   These Actions Could Have Been Brought in the Austin Division

The venue statute for patent litigation provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Because Silicon Labs has a principal place of business in Austin as accused in the Complaint (Compl. ¶ 3), Ocean's infringement claims could have been brought in the Austin Division.  Therefore, the initial inquiry is satisfied.

### B.   The Private Interest Factors Favor Transfer

No party to this action has any connection to the Waco Division.  All relevant documents and witnesses in the Western District of Texas are in Austin.  Accordingly, access to sources of proof, cost of attendance for willing witnesses, and other practical issues all favor transfer.

#### 1.   Relative Ease of Access to Sources of Proof Strongly Favors Transfer

Access to sources of proof is easier in the Austin Division as compared to the Waco Division.  Evidence in a patent case typically comes from the accused infringer.[1]  *See Nintendo*,

---

[1] Physical location of documents remains a factor despite advances in electronic data technologies.  *In re Genentech*, 566 F.3d at 1345; *In re Toa Techs., Inc.*, 543 F. App'x 1006,

589 F.3d at 1199.  Here, the parties possessing technical documents are predominately Silicon Labs, AMD/inventors, TSMC, and accused tool suppliers.

Silicon Labs and its relevant documents and employees, including engineers, are located in Austin, only blocks away from the Austin courthouse, and it has no relevant operations, personnel, or documents in the Waco Division.  Ex. 1 at ¶¶ 3, 4, 5, 6.  Potential relevant witnesses located in Austin include:

- Thomas Fowler (Central Research & Development);
- Wenjie Zhang (Central Research & Development);
- Sandeep Kumar (Operations);
- Mark Mauldin (Finance);
- Kathy Haggar (Business Operations); and
- Support staff for the foregoing.

Ex. 2 at ¶ 6.

Technical documentation and witnesses relating to the accused tools are predominately in the tool suppliers' control, and documents and witnesses relating to the use of the tools are in the control of TSMC.  *See id.* at ¶¶ 4, 5.  Specifically, none of the accused tool suppliers or TSMC provide Silicon Labs with the detailed technical information, schematics, or source code underlying the functionalities accused by Ocean.  *Id.* at ¶ 5.  None of the tool suppliers have locations in the Waco Division, and at least two of the four suppliers have Austin locations— Applied Materials and ASML.  Exs. 6 at 10, 7 at 1.  Moreover, the original assignee of five of the seven asserted patents is AMD's Austin facility and as such, the majority of the named inventors are also local to Austin.  *See* Ex. 4 at 4; *see also* Ocean's Renesas Response at 8, 13.

---

1008–09 (Fed. Cir. 2013) (that "digital information is 'effectively stored everywhere . . . does not negate the significance of having trial closer to where [the relevant witnesses] physical documents and employee notebooks are located" because "[t]he critical inquiry 'is relative ease of access, not absolute ease of access'").

It would be inefficient and an inconvenience to the parties and third parties to force Silicon Labs to defend itself in the Waco Division regarding technology that Silicon Labs neither designed nor developed, particularly where litigating Ocean's claims will require access to sources of proof outside Silicon Labs' custody or control and outside of the Waco division. *See McCloud v. McClinton Energy Grp., L.L.C.*, No. 5:14-cv-620-XR, 2014 WL 6388417, at *3 (W.D. Tex. Nov. 14, 2014) (granting intra-district transfer even though not "not 'all' the evidence" was in the transferee district, but "certainly the bulk of it is" and plaintiff "point[ed] to no evidence in . . . or within the [transferor division]"); *see also Radmax*, 720 F.3d at 288 (pertinent question is "relative ease of access" not "absolute ease of access"). Accordingly, this private interest factor weighs heavily in favor of transfer.

### 2.   Convenience and Cost for Willing Witnesses Strongly Favors Transfer

The convenience and cost of witness attendance is "the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343. The question is not whether "*all* of the witnesses" reside in the transferee forum, but whether a "substantial number" are there. *Id.* at 1345. When a substantial number of party and non-party witnesses live in the transferee forum, while few live in the plaintiff's chosen forum, transfer should be ordered. *See id.* at 1342–45; *Nintendo*, 589 F.3d at 1198 ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). The court properly considers party and non-party witnesses when analyzing this factor. *See Volkswagen I*, 371 F.3d at 204.

As an initial matter, no witness with relevant knowledge is located in the Waco Division. Ex. 1 at ¶¶ 5, 6. Neither the plaintiff, defendant, named inventors, original assignees, accused

tool suppliers, nor foundry are located there.  *See* Exs. 6–9.  As mentioned above, Silicon Labs'
key witnesses in the case reside in the Austin area.  Ex. 2 at ¶ 6.  For the witnesses located in
Austin, travel to Waco—approximately 100 miles—would be burdensome and inconvenient, add
travel time, force them to be away from work and families, and impose additional expense.  *See*
*Mimedx*, 2014 WL 12479284, at *2 (eighty-mile driving distance between Austin and San
Antonio weighed in favor of transfer from one division to the other).  These burdens are
unnecessary when this district has a courthouse in Austin.

For those witnesses who are not based in Austin, traveling to Austin is significantly more
convenient than traveling to Waco.  From most locations, witnesses can fly directly to Austin,
but would have to connect to Waco or drive there from Dallas or Austin.

For the above reasons, this factor also strongly favors transfer.

3.    Other Practical Factors Favor Transfer

Other practical factors relate to the ease, expense, and expediency of trial.  *Volkswagen*
*II*, 545 F.3d at 315.  Particularly, the existence of duplicative suits involving the same or similar
issues may create practical difficulties that will weigh heavily in favor of or against transfer.  *In*
*re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") ("[T]he
existence of multiple lawsuits involving the same issues is a paramount consideration when
determining whether a transfer is in the interest of justice.").  Here, some or all of the defendants
in the related actions also will (or have already) seek intra-district transfer to the Austin Division.
*See supra* at Section II.

Silicon Labs has not yet answered the complaint, and this Court has only recently entered
a scheduling order (Dkt. 31).  Thus, transferring this case to the Austin Division does not pose a
risk of any meaningful delay, especially when the Court can continue to control this case once

- 8 -

transferred.  *See Mimedx*, 2014 WL 12479284, at *2 (finding transfer favorable because the court had not yet entered a scheduling order); *cf. Data Scape*, Dkt. 44 (granting intra-district transfer even after defendant filed an answer and counterclaims).  Indeed, transfer to the Austin Division increases convenience to the parties because it focuses the litigation where evidence and the majority of relevant Texas witnesses reside.  *See* Ex. 1 at ¶¶ 3, 4; Ex. 2 at ¶¶ 4, 6; Exs. 3, 4, 5, 6, 7.  The added convenience of a trial in Austin instead of Waco would result in a more efficient, more cost-effective, and easier resolution of this dispute.  *See, e.g., Mimedx*, 2014 WL 12479284 at *2.  Accordingly, this private interest factor also favors transfer.

4. <u>Availability of Compulsory Process Is Neutral</u>

This factor addresses the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *Volkswagen II*, 545 F.3d at 316.  A district court's subpoena power is governed by Federal Rule of Civil Procedure 45.  Specifically, a district court can command a person to attend a deposition or trial within 100 miles of where they live or work, or statewide if they are a party witness.  Fed. R. Civ. P. 45(c)(1)(A), 45(c)(1)(B)(i).  And, for purposes of trial attendance, a district court has subpoena power over non-party residents of the state in which the district court sits as long as their attendance would not result in "substantial expense."  Fed. R. Civ. P. 45(c)(1)(B)(ii).  Here, the compulsory subpoena power for unwilling third-party witnesses is the same for both the Austin and Waco Divisions.  Thus, this factor is neutral.

C. **The Public Interest Factors Favor Transfer**

The public interest factors also favor transfer to the Austin Division.  Considerations of local interest strongly favor transfer because, unlike Waco, Austin has a strong connection to these cases.  The remaining factors such as court congestion and familiarity with the law are

neutral.  Therefore, on balance, the public interest factors weigh in favor of transfer.

### 1.    Local Interest in Adjudicating Local Disputes Favors Transfer

The Austin Division has a much stronger local interest in this litigation than does the Waco Division.  This factor weighs in favor of transfer because of the factual connection that this action has to the transferee venue and the lack of connection to the Waco Division.  *Volkswagen I*, 371 F.3d at 206 ("jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation").  Silicon Labs is one of Austin's large corporate residents and has conducted business in Austin for over 20 years.  Ex. 1 at ¶¶ 3, 4.  Over 30% of Silicon Labs' worldwide employees are in Austin.  *Id.* at ¶ 4.  Austin also has a significant local interest in the original assignee, AMD, which has a substantial Austin presence.  Exs. 4, 5.  As there are no meaningful ties to the Waco Division but strong ties to the Austin Division, Austin has a greater local interest in this suit and this factor weighs in favor of transfer.

### 2.    Court Congestion, Familiarity With the Law, and Avoidance of Conflicts Factors Are Neutral

The remaining public interest factors are neutral given that federal patent law will apply to this case and this Court can retain the case on its docket with the pretrial proceedings and trial taking place in the Austin Division.  *See TS Tech*, 551 F.3d at 1320–21 (finding that the transferee and transferor courts were both "capable of applying patent law to infringement claims").  Alternatively, this Court could transfer the case to U.S. District Court Judges Pitman or Yeakel in the Austin Division, both of whom have substantial experience trying patent disputes.  Exs. 10, 11 (detailing Judges Yeakel's and Pitman's experience with patent litigation).

## V.    **CONCLUSION**

Silicon Labs requests that the Court transfer this case to the Austin Division, which is a more convenient forum for the claims in this action to be heard.

August 20, 2021

Respectfully submitted,

By:   /s/ *Marc B. Collier*

Marc B. Collier (SBN 00792418)
marc.collier@nortonrosefulbright.com
Eric C. Green (SBN 24069824)
eric.green@nortonrosefulbright.com
Catherine Garza (SBN 24073318)
Cat.garza@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Tel:   (512) 474-5201
Fax:   (512) 536-4598

Richard S. Zembek (SBN 00797726)
richard.zembek@nortonrosefulbright.com
Darren Smith (SBN 24088433)
Darren.smith@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151
Fax: (713) 651-5246

**COUNSEL FOR DEFENDANT SILICON
LABORATORIES INC.**

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(G), counsel for the parties conferred via email on August 18 and 19, 2021 and the plaintiff is opposed to this motion.

By: */s/ Eric C. Green*
Eric C. Green

## **CERTIFICATE OF SERVICE**

I certify that on August 20, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Eric C. Green*
Eric C. Green