**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Ocean Semiconductor LLC, <br><br>        Plaintiff <br><br>   v. <br><br> MediaTek Inc. and MediaTek USA Inc. ("MediaTek"), <br><br>        Defendants. | Civil Action No.: 6:20-cv-1210-ADA <br><br> JURY TRIAL DEMANDED <br><br> PATENT CASE |
| Ocean Semiconductor LLC, <br><br>        Plaintiff <br><br>   v. <br><br> NVIDIA Corporation, <br><br>        Defendant. | Civil Action No.: 6:20-cv-01211-ADA <br><br> JURY TRIAL DEMANDED <br><br> PATENT CASE |
| Ocean Semiconductor LLC, <br><br>        Plaintiff <br><br>   v. <br><br> NXP USA, Inc. <br><br>        Defendants. | Civil Action No.: 6:20-cv-1212-ADA <br><br> JURY TRIAL DEMANDED <br><br> PATENT CASE |

Ocean Semiconductor LLC,

    Plaintiff

  v.

Renesas Electronics Corporation and Renesas Electronics America, Inc.,

    Defendants.

Civil Action No.: 6:20-cv-1213-ADA

JURY TRIAL DEMANDED

PATENT CASE

Ocean Semiconductor LLC,

    Plaintiff

  v.

Silicon Laboratories Inc.,

    Defendant.

Civil Action No.: 6:20-cv-1214-ADA

JURY TRIAL DEMANDED

PATENT CASE

Ocean Semiconductor LLC,

    Plaintiff

  v.

STMicroelectronics, Inc.,

    Defendant.

Civil Action No.: 6:20-cv-1215-ADA

JURY TRIAL DEMANDED

PATENT CASE

Ocean Semiconductor LLC,

                Plaintiff

      v.

Western Digital Technologies, Inc.

                Defendant.

Civil Action No.: 6:20-cv-1216-ADA

JURY TRIAL DEMANDED

PATENT CASE

## PLAINTIFF OCEAN SEMICONDUCTOR LLC'S
## SUR-REPLY CLAIM CONSTRUCTION BRIEF

November 19, 2021

Timothy Devlin
tdevlin@devlinlawfirm.com
Henrik D. Parker
hparker@devlinlawfirm.com
Alex Chan (State Bar No. 24108051)
achan@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff*
*Ocean Semiconductor LLC*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     OTHER THAN "SAID PROCESS CHAMBER," NONE OF THE CHALLENGED
TERMS REQUIRE CONSTRUCTION ...................................................................... 1

        A.    "ultra thin resist layer[s]" ('097 patent) ................................................. 1

        B.    "pneumatic cylinder" ('651 Patent) ........................................................ 4

              1.   The Inventor's Intent Is Unequivocally Clear— Pneumatic Cylinders "May
              Be Any Type" That Provides "Pneumatic, Hydraulic, Electromagnetic or
              Mechanical" Function ............................................................................... 4

              2.   Both Parties' Experts Have Debunked Defendants' Theory That Pneumatic
              Cylinders Require Pneumatic Force ........................................................ 5

        C.    "said process chamber" ('651 Patent) ..................................................... 7

              1.   Defendants' New Arguments Should Be Rejected as Waived ...................... 7

              2.   Defendants Ignore Surrounding Claim Language and Impermissibly Isolate
              One of Several Embodiments in Trying to Legitimatize Their Arguments ........... 7

        D.    "software scheduling agent" ('305/'248 Patents) ................................... 8

              1.   The Phrase "Of Particular Interest" Does Not Disclaim Any Meanings of
              "Software Scheduling Agent" .................................................................... 9

              2.   Disclaimer Based on File History ............................................................. 10

        E.    "concurrently measuring" ('330 Patent) .............................................. 10

        F.    The Disputed '538 Patent Terms Are Not Indefinite ............................... 12

              1.   "significant fault" (claim 5) .................................................................... 14

              2.   "determining in said computer whether said parameter is a significant factor"
              (claim 7) ............................................................................................... 14

III.    CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Benefit of Creditors), LLC v. VeriFone, Inc.*,
   807 F.3d 1346 (Fed. Cir. 2015)...................................................................................... 3

*Forest Labs., LLC v. Sigmapharm Labs., LLC*,
   918 F. 933 (Fed. Cir. 2019)............................................................................................ 9

*Geotag, Inc. v. AT&T Mobility, LLC*,
   2014 U.S. Dist. LEXIS 78420 (N.D. Tex. June 10, 2014) ....................................... 13

*ICU Med., Inc. v. Rymed Techs., Inc.*,
   673 F. Supp. 2d 228 (D. Del. 2009)............................................................................ 13

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014)................................................................................... 13

*Ocean Semiconductor LLC v. MediaTek Inc., et al.*,
   No. 6:20-cv-01210-ADA (W.D. Tex.)........................................................................ 1

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003)................................................................................... 10

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015)..................................................................................... 9

*Power-One, Inc. v. Artesyn Techs., Inc.*,
   599 F.3d 1343 (Fed. Cir. 2010)................................................................................... 13

*SciMed Life Sys. v. Advanced Cardiovascular*,
   242 F.3d 1337 (Fed. Cir. 2001)..................................................................................... 9

*Vitronics Corp. v. Conceptronic*,
   90 F.3d 1576 (Fed. Cir. 1996)..................................................................................... 10

## I.    INTRODUCTION

Rather than respond to Ocean's actual positions on the merits, Defendants' Reply frequently resorts to mischaracterizing those positions to create inappropriate straw men.  When the evidence and arguments are properly viewed, other than one term containing a drafting error, none of the disputed terms needs construction as each is sufficiently clear and definite and should be given its plain and ordinary meaning.  Defendants' proposed constructions and indefiniteness contentions are misplaced and should be rejected.

## II.    OTHER THAN "SAID PROCESS CHAMBER," NONE OF THE CHALLENGED TERMS REQUIRE CONSTRUCTION

### A.    "ultra thin resist layer[s]" ('097 patent)

Defendants' multiple misdirections and mischaracterizations as to this term cannot overcome three conclusive points:  (a) the '097 specification explicitly defines what the patent means by "ultra thin"; (b) the Federal Circuit has repeatedly found that an independent claim *can* have the same scope as a claim that depends from it and that the doctrine of claim differentiation is not absolute;[1] and (c) when the intrinsic evidence is clear—as it is here—there is no need to consider extrinsic evidence.

In particular, contrary to Defendants' misleading description of it as "an example" and "one example of a UTR thickness" (Dkt. 43 at 1-2),[2] the explicit language in the specification at 1:43-45—"a resist coating having *an UTR thickness is considered to be* resist films of less than 0.25 $\mu$m (2500 Å) in thickness"—"sets out *a definition* of what constitutes an ultra thin resist." (Dkt. 42-2 (Maltiel Decl.) at ¶ 45.)  While Defendants seek to confuse the situation by contending (without any support) that the use of the language "is considered to be" within that

---

[1] Unless otherwise indicated, emphasis in this Brief has been added.
[2] Unless otherwise noted, docket citations are to the docket of the action against coordinated Defendant MediaTek (*Ocean Semiconductor LLC v. MediaTek Inc., et al.*, No. 6:20-cv-01210-ADA (W.D. Tex.)).

definition creates ambiguity, Ocean's expert (the only expert questioned about this language) was ***not*** confused about the sentence's import and meaning and was clear that a POSITA would have no difficulty understanding this sentence as a definition.  (Ex. E at 201:2-14 ("when you read that sentence in the context of one of ordinary skill in the art, was the sentence clear to you as to what the patent was intending to convey to one of ordinary skill in the art?  A.  Yes.  Yeah, it was clear. It was clear talking about UTR thickness to be a resist film that is less than 2500 angstrom in thickness"); 180:12-22; 179:12-18.)[3]

Moreover, while Defendants imply that there is ambiguity about the meaning of "ultra thin" simply because "the patent leaves unaddressed the range of thicknesses between the 'standard' thickness" and the defined UTR thickness (Dkt. 43 at 2), that thickness range is irrelevant since any thickness within that range is outside the explicitly given definition of a UTR thickness.  For purposes of the claims at issue, a POSITA would not care about the thicknesses that exceed 2500 Å because the claims do ***not*** deal with them.

In this regard, as even Defendants' own expert admits, "the only thickness associated with UTR layer in the description of the embodiments of the invention is 'less than 2500 Å'." (Dkt. 40-1 at ¶ 51.)  There simply is no ambiguity.  (Ex. E at 168:17-23 ("Q.  So in your view, based on the specification, any time the patent refers to an ultra-thin resist layer, would a person of ordinary skill in the art understand that to be a resist layer with a thickness of less than 2500 angstroms?  A.  Yes.").)

Defendants are disingenuously inaccurate when contending that "Ocean does not contest that the claims. . . are ambiguous."  (Dkt. 43 at 1.)  Ocean has always contended that: (a) the inventor specifically defined what was meant by "ultra thin"; (b) both the specification ***and the***

---

[3] Citations to Exhibits herein are to the Exhibits attached to the co-filed Declaration of Henrik D. Parker in Support of Plaintiff Ocean Semiconductor LLC's Sur-Reply Claim Construction Brief.

*claims* are clear and unambiguous in this regard; and (c) both claim 1 and claim 4 are limited to ultra thin resist layers that are less than 2500 Å thick.  Expert Maltiel, when questioned on deposition, agreed with all of these points.  (*See* Ex. E at 182:5-9 ("Q.  So is it your testimony that the inventors were really careful to ensure that they defined ultra-thin resist as something less than 2500 angstrom?  A.  Yes."); 146:7-14 ("Q.  Is it your opinion that the intrinsic evidence of the '097 patent defines the phrase 'ultra-thin resist'?  A.  Yes.  Q.  Is it your opinion that the specification of the '097 patent is unambiguous on that point?  A.  Yes."); 175:25-176:5 ("Q.  Is it your testimony, Mr. Maltiel, that claims 1 and claims 4 both require an ultra-thin resist that has less than 2500 angstroms of thickness?  A.  Yes, based on the specifications.").)

In view of this clarity, Defendants' continued arguments about what extrinsic evidence may show are simply inapposite.  In essence, Defendants rely on the contrived idea that claim differentiation somehow creates ambiguity by requiring that claims 1 and 4 have different scopes such that the Court must look to the extrinsic evidence.  That, however, is ***not*** the law.  As discussed in Ocean's Responsive Brief (Dkt. 42 at 4-6), the Federal Circuit on multiple occasions has determined that dependent claims may have the same scope as the independent claim from which they depend.

Notably, Defendants' only effort to distinguish the Federal Circuit's *Retractable Techs.* opinion is to assert that it does not apply because the '097 patent here is allegedly ambiguous as to the meaning of "ultra thin."  (Dkt. 43 at 2.)  As that is demonstrably untrue, the rationale of *Retractable Techs.* remains wholly applicable.  (Moreover, Defendants never address the similar decision in *CardSoft (assignment for the Benefit of Creditors), LLC v. VeriFone, Inc.*, 807 F.3d 1346, 1352 (Fed. Cir. 2015).

Finally, Defendants' effort to put a black hat on Ocean for how it cited Dr. Spanos fails on simple examination of the testimony.  While Defendants (Dkt. 43 at 3) characterize Ocean as

asserting that Dr. Spanos "stated that the law always requires applying the law of claim differentiation," what Ocean actually said was that he admitted that his opinion was "based on the belief" that is should always be applied.  (Dkt. 42 at 7.)  On deposition, when asked if the doctrine should "always be followed," Dr. Spanos explicitly stated "my common sense understanding is yes, it should be."  (Ex. F at 104:15-18.)  Ocean did *not* contort this statement, and the clear import of this testimony is that Dr. Spanos' opinion was based upon following the doctrine of claim differentiation, which was legally erroneous.

Finally, despite Defendants' attempt to diffuse its import (Dkt. 43 at 3), it cannot be disputed that a patent that Dr. Spanos cited to as identifying an upper limit to "ultra thin resist" thickness ***has the exact language as in the '097 patent providing an explicit definition for that thickness.***  (*Compare* '097 patent, 1:39-45 to Dkt. 40-20 at 1:39-45.)

## B. "pneumatic cylinder" ('651 Patent)

### 1. The Inventor's Intent Is Unequivocally Clear— Pneumatic Cylinders "May Be Any Type" That Provides "Pneumatic, Hydraulic, Electromagnetic or Mechanical" Function

Defendants' contention that Ocean's construction would somehow "read out both 'pneumatic' and 'cylinder'" flatly contradicts the intrinsic record and even their own expert's testimony.  As Defendants recognize, the specification unequivocally states that "[t]he pneumatic cylinders 46 may be any type of pneumatic cylinders useful for performing the function of adjusting the surface 42 of the wafer stage 40."  (Dkt. 43 at 4 quoting '651 patent, 6:13-15.) There would be no legitimate reason for the inventor to make such a statement if the intent was to limit pneumatic cylinders to providing ***only*** pneumatic functions (as all pneumatic cylinders would provide pneumatic forces under Defendants' hypothesis).

To ascertain the inventor's intent, the Court needs to look no further than the preceding paragraph also quoted by Defendants: "A mechanism useful in adjusting the position of the

4

wafer stage 40 may be comprised of any of a variety of devices, such as pneumatic, hydraulic, electromagnetic or mechanical systems." (*Id.* quoting '651 patent, 5:65-6:1.) When these two paragraphs are read together, there is no reasonable dispute that the inventor pointed to the use of "pneumatic, hydraulic, electromagnetic or mechanical" function in describing the "type" of pneumatic cylinders—pneumatic cylinders may be any type that provides pneumatic, hydraulic, electromagnetic, *or* mechanical function.

### 2. Both Parties' Experts Have Debunked Defendants' Theory That Pneumatic Cylinders Require Pneumatic Force

Defendants' theory that pneumatic cylinders require a pneumatic force has been debunked by both parties' experts. (*See, e.g.,* Ex. E at 47:13-24 ("Q: . . . In order to be called a pneumatic cylinder, is it correct that there needs to be at least some type of pneumatic force or pressure involved in that device? . . . A: Not necessarily. Not necessarily. Because if you look -- he described what kind of device it could be. And this device is operated by -- that was pneumatic, hydraulic, electromagnetic or mechanical."); (Ex. F at 29:22-30:11 (testifying pneumatic cylinders do not require *only* air or gas; *see also id.* at 43:12-18 (testifying pneumatic cylinders as providing electromagnetic force); 43:20-25 and 44:6-11 (mechanical force); 46:22-25 (hydraulic force)).

Defendants' contention that Ocean's construction would read out "pneumatic" is false because ***the component used for driving the "pneumatic force" (e.g., shaft 49) is used in providing hydraulic, electromagnetic or mechanical function***—a point conceded by Dr. Spanos. (*Id.* at 30:12-18 (pneumatic); 30:19-21 (mechanical); 43:3-5 (hydraulic); 43:12-18 (electromagnetic)).

Also, the fact that the inventor pointed to the use of "pneumatic" in the phrase "pneumatic, hydraulic, electromagnetic or mechanical" reinforces that pneumatic cylinders, in some embodiments, provide only pneumatic functions. But nothing in the intrinsic record (and

5

Defendants have not pointed to any disclaimer or disavowal in the prosecution history) would unnecessarily limit this term to ***only*** pneumatic.  Tellingly, ***not once do Defendants deny that pneumatic cylinders also provide hydraulic, electromagnetic and/or mechanical functions.*** They cannot as such an interpretation would mean that pneumatic cylinders do not provide "mechanical" functions, which would be absurd since pneumatic cylinders are mechanical in nature—a point that Dr. Spanos also conceded.  (*Id.* at 42:18-43:2 ("Q: . . . I think we talked about the shaft 49 and the valve 61.  Those are mechanical parts; right?  A: Yeah. People would describe them as mechanical, correct.  Q: . . . Those mechanical parts are used by pneumatic cylinders; correct? A: Sure. Cylinders are made of parts and people could call those mechanical parts.").)

Defendants' argument that "moving all cylinders together results in stage raising or lowering" (Dkt. 43 at 6-7) should similarly be rejected because their proposed construction ***still excludes an embodiment in which a pneumatic cylinder facilitates tilting***—a scenario nowhere supported by the intrinsic record.

As to Ocean's shaft/rod distinction, Defendants continue to ignore the confusion that would ensue if their construction is adopted because there is no dispute that a shaft is ***not*** necessarily a rod, a point conceded by Dr. Spanos.  (Ex. F at 31:3-5.)  Compounding this issue is the fact that Defendants' proposed construction requires ***two different interpretations*** to ascertain its scope, and violates the general claim construction rule that two different words should be presumed to carry two different meanings.

Finally, Defendants also erroneously contend that Ocean's construction would exclude other "actuator types" such as "rack and pinion" recited in claim 76, which depends on claim 72.  (Dkt. 43 at 5.)  In fact, claim 72 does not recite ***any*** pneumatic cylinders.  Further, it is unclear how Ocean's "construction would create two claims with the same scope" as Defendants have

not shown that pneumatic cylinders are rack and pinions.  Quite to the contrary, the specification readily distinguishes them by stating the "process tool may be comprised of a plurality of pneumatic cylinders *or* rack and pinion combinations."  ('651 patent, 3:13-16.)

### C.    "said process chamber" ('651 Patent)

#### 1.    Defendants' New Arguments Should Be Rejected as Waived

Defendants *never once* argued in their opening brief that "there are three possible meanings," or that "[i]t is unclear where the subsequent process operation happens."  (Dkt. 40 at 17-18.)  These arguments are untimely and, therefore, waived.

#### 2.    Defendants Ignore Surrounding Claim Language and Impermissibly Isolate One of Several Embodiments in Trying to Legitimatize Their Arguments

In attempting to support their indefiniteness argument, Defendants spend much of their Reply effort as to this claim term pointing to the disclosure of performing a process operation within a tool's process chamber.  (Dkt. 43 at 8.)  But that is only one of several disclosed embodiments.  As the specification readily makes clear, "***many, if not all, such tools have a process chamber***, where processing operations will be performed."  ('651 patent, 5:15-16; *see also* Dkt. 42-2 at 73:3-14 ("Q: · A process chamber is contained within the process tool, is that correct? A: It could be. A: When you say -- when you say contained, can you explain what you refer to? Q: Found within the process tool. A: It could be a portion of the process tool, but it could be the process tool itself. It depends on a specific.").)

Thus, the specification offers two embodiments: in one, process tools have a process chamber; in another, they do not.  Defendants couch their argument as a "reasonable debate" as to whether "the wafer stage could be in either the tool or chamber" (Dkt. 43 at 8) but, in doing so, they conflate between claim breadth and claim scope since whether or not a processor tool has a process chamber is a matter of claim breadth.  It is axiomatic that a broad claim is not

indefinite merely because it encompasses a wide scope of subject matter, provided that the scope is clear.  Here, nothing limits claim 31 to one of the two disclosed embodiments.

Defendants' attorney argument that "[i]t is unclear if (i) 'a process tool' in the first claimed step could be 'a process chamber'" (*id.* at 8) is fabricated out of thin air because ***the first two claim limitations explicitly recite "a process operation in a process tool" and "said process operation performed in said process tool."***  There is nothing "unclear" about what these limitations actually recite.  Defendants' contention might have merit ***if*** they could show that the claimed invention is limited to a single embodiment.  But they cannot as this would contradict the intrinsic record, which discloses at least two embodiments.  A construction that reads out any embodiment is rarely correct.

Defendants' final contention—that the first two claim limitations of claim 31 do "not mention a wafer stage at all" (*id.*)—is a non sequitur because the phrase "in said process chamber" refers to the process operation being performed (as supported by the first two claim limitations), not where the "wafer stage" is located.

Defendants have not proffered any expert opinion as to what ***those skilled in the art*** would understand about the scope of claim 31, whereas Ocean's expert has specifically opined on this issue.  (Dkt. 42-2 at ¶ 75.)  As such, ***Defendants' attorney arguments should be given no weight*** as to what the phrase "in said process chamber" should mean.

### D.      "software scheduling agent" ('305/'248 Patents)

Defendants have offered no response to Ocean's argument that their proposed construction would require software scheduling agents to schedule, initiate ***and*** execute activities when there are multiple disclosures indicating that an agent is ***not required*** to perform each of these functions.  (Dkt. 42 at 20-23.)  As such, Defendants concede that, at least in this respect, their proposed construction is contradicted by the intrinsic record of the '305 and '248 patents.

8

**1.      The Phrase "Of Particular Interest" Does Not Disclaim Any Meanings of "Software Scheduling Agent"**

After disparaging Ocean's arguments as purportedly based on "magic words" (Dkt. 43 at 12), Defendants do exactly what they complain about in trying to persuade the Court to give weight to their own special words: "of particular interest."  However, this phrase only signals to a POSITA that a given feature is "of interest," and Defendants have not identified anything in the intrinsic record suggesting that it was meant to "define the present invention as a whole."[4]  (*Id.* at 10.)  On the contrary, the phrase suggests no intent to limit the scope of the claims, as opposed to "'the present invention includes. . .' or 'the present invention is. . .' or 'all embodiments of the present invention are. . . .'"  *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015).  Defendants admit as much when they argue that the phrase "of particular interest to the present invention" "comes remarkably close" to disclaiming alternative definitions.  (Dkt. 43 at 13.)  This is insufficient to meet the "exacting" standard established by the Federal Circuit.  *Pacing Techs.*, 778 F.3d at 1024.[5]

Defendants' attempt (Dkt. 43 at 13-14) to assign significance to the fact that the phrase "of particular interest" is preceded by other statements that particular aspects of the scheduling agent (none of which are relevant to the proposed construction) do not limit or are not material to

---

[4] Nor do Defendants explain why a phrase allegedly intended to "define the present invention as a whole" refers only to software scheduling agents and conspicuously omits other elements that appear in the claims, such as publishers and listeners.

[5] *SciMed* and *Forest Labs*, both repeatedly invoked by Defendants, are distinguishable on their facts.  In *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F. 933 (Fed. Cir. 2019), the court construed a claim to include "buccal or sublingual administration" where the specification stated that "[t]he invention relates to a sublingual or buccal pharmaceutical composition" and the patent was titled "Sublingual or Buccal Pharmaceutical Composition."  In *SciMed Life Sys. v. Advanced Cardiovascular*, 242 F.3d 1337, 1340-44 (Fed. Cir. 2001), the court limited claims to "catheters with coaxial lumens" based on multiple statements in the specification, including that "the structure containing coaxial lumens . . . is "the basic sleeve structure for all embodiments of the present invention."  Defendants here, on the other hand, have not pointed (and cannot point) to any such unequivocal language in the written description of the '305 and '248 patents.

the invention is similarly unavailing.  Defendants ignore that there is one paragraph separates those statements from the phrase "of particular interest."  The intervening paragraph contains further description of the software scheduling agent, none of which is characterized as non-limiting or immaterial.  ('305 patent, 6:38-60.)  Thus, Defendants' juxtaposition of disparate phrases with the purportedly defining features "of particular interest to the present invention" is without significance for their proposed construction.

### 2.  Disclaimer Based on File History

Defendants' prosecution history argument ignores the significant distance between the allegedly disclaiming prosecution statements and the scope of Defendants' proposed construction.  The fact that a scheduling agent ***represents*** a given manufacturing domain entity does not necessarily mean that it initiates, schedules, or executes ***solely*** for that manufacturing domain entity.  (*See* Dkt. 42 at 31.)  Defendants offer no response on this point.  While Defendants may look to the file histories to support a proposed construction, they cannot seek a construction that would limit the claims beyond what even the alleged disclaiming statements would permit.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003).

In addition, as set forth at length in Ocean's Response (Dkt. 42 at 32), the specification indicates that an individual scheduling agent can schedule for multiple lots, and also prompt scheduling actions for a different manufacturing domain entity.  These sections of the specification are "highly relevant to the claim construction analysis"—and all weigh against adopting Defendants' proposed construction.  *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

### E.  "concurrently measuring" ('330 Patent)

Tellingly, Defendants' Reply fails to support their construction requiring that "concurrently measuring" is performed "with a single measuring tool."  (Dkt. 43 at 12-14.)

Rather, Defendants rely on omitting citations to the record and mischaracterizing arguments in co-pending matters.  Given this entire lack of reasonable basis, their proposed construction should be rejected.

Defendants' first tack is to improperly place the burden on Ocean to ***disprove*** Defendants' construction, rather than to persuasively show that the construction is proper.  (Dkt. 43 at 12 ("Neither the patent nor Ocean explains how to simultaneously take two different measurements . . . using more than one tool").)  Ocean has already shown that, while concurrently measuring with a single tool is contemplated in the specification of the '330 patent, it was ***not*** included as a claim limitation.  (Dkt. 42 at 28-30.)  Instead of attempting to address this argument head-on, Defendants rely on the language of claim 19 which ***conspicuously omits Defendants' proposed limitation of a single measuring tool***.  (Dkt. 43 at 12 ("concurrently measuring critical dimensions and overlay in a wafer undergoing the fabrication process").)  Defendants' failure to persuasively support their own construction cannot be overcome simply by inventing a flipped burden of proof requiring Ocean to disprove the same.

Further, embodiments "explain[ing]" concurrent measurement with a single tool do not import a limitation into the claims.  (*Id.* at 12.)  As addressed in Ocean's Response, such embodiments show that a single measuring tool is contemplated, ***but not required***.  (Dkt. 43 at 29.)  Ocean also provided record citations showing that the embodiments merely "allow" a single measuring tool.  (*Id.*)  Thus, Defendants' citationless assertion that "***every*** embodiment in the patent concurrently measures CD and overlay with a single measuring tool" is demonstrably untrue.  (*Id.* at 13; *see also* Dkt. 42 at 30 ("Scatterometry or scanning electron microscope (SEM) techniques can be employed in accordance with one or more aspects of the present invention to concurrently measure critical dimensions and overlay ***at different points in an IC [integrated circuit] fabrication process*** . . . ."; emphasis original).)

11

Defendants also fail to show that the disclosure of a "measurement system" collecting measurements from one or more detecting components or detectors throughout the manufacturing process is limited to a single tool.  (Dkt. 43 at 13; *see also* Dkt. 42 at 28-29.) Specifically, Defendants assert that "a single tool ***can*** include multiple light detectors" and "the claimed grating structure [] '***allows*** these measurements to be taken concurrently with a single measuring tool.'"  (Dkt. 42 at 13.)  Such permissive language is insufficient.  No language cited by Defendants ***requires*** that detectors be in a single measuring tool.

Further, Defendants' assertion that "the asserted claims do not recite a 'measurement system'" (*id.*) ***ignores that the asserted claims also do not recite a single measuring tool***. Defendants' attempt to look to the specification for some disclosures but not others is improper. Defendants simply cannot have it both ways.

Defendants further assert, once again with no record citation, that Ocean—in statements in the co-pending '330 patent IPR—"implies that the '330 patent requires multiple measuring tools."  (*Id.*)  Ocean has ***never*** taken this position and does not do so now.  As explained thoroughly throughout Ocean's briefing (*see, e.g.,* Dkt. 42 at 30-31), the claims of the '330 patent allow for concurrent measurements to be taken with a single tool ***or*** with more than one tool.  The prior art in the IPR Petition is limited to a single tool and is, therefore, distinguishable as it does not allow for the possibility of multiple tools.  (*Id.*)

Defendants' construction should be rejected.

### F.    The Disputed '538 Patent Terms Are Not Indefinite

Defendants double down on their illogical misapplication of the law by asserting that "the law requires" objective boundaries for any term which includes the word "significant."  (Dkt. 43 at 14.)  The Federal Circuit, however, ***does not require objective boundaries for terms so long as a POSA would understand the claim language***.  (See Dkt. 42 at 31-34; *see also Power-One,*

*Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343 (Fed. Cir. 2010) ("To comport with § 112's definiteness requirement, the boundaries of the claim . . . must be discernible to a skilled artisan based on the language of the claim, the specification, and the prosecution history, as well as other knowledge of the relevant field of art").) This holding is repeated time and time again in ***every*** claim construction decision from ***every*** court that has construed a term with the word "significant." (*See* Dkt. 42 at 34-35 (listing cases).)

Defendants ignore this decisive legal point, failing to cite even a single case where a court has found such a term indefinite. (Dkt. 43 at 16.) Indeed, Defendants erroneously argue, while citing to a case already distinguished by Ocean (*see* Dkt. 42 at 33-34, distinguishing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)), that other courts' constructions are not instructive. This is not the law. *See, e.g., Geotag, Inc. v. AT&T Mobility, LLC*, No. 3:13-CV-00169-K, 2014 U.S. Dist. LEXIS 78420, at *3 (N.D. Tex. June 10, 2014) (finding other cases construing similar terms "persuasive authority"); *ICU Med., Inc. v. Rymed Techs., Inc.*, 673 F. Supp. 2d 228, 232 (D. Del. 2009) (same).

Instead, Defendants focus on trying to prop up their inconsistent expert Dr. Spanos (Dkt. 43 at 14) and assert that Dr. Spanos' regular use of the word "significant" in his publications is "irrelevant" because those publications are "a POSITA's unrelated publications." (*Id.* at 15.) First, Defendants offer Dr. Spanos as an ***expert*** in the pertinent art, not a person of ***ordinary*** skill in the art, and his regular use of "significant" is necessarily more compelling. Second, Defendants must concede Dr. Spanos' position is that "***a term of degree like 'significant' may be understood in a certain context.***" (*Id.*) In fact, Dr. Spanos' own testimony makes clear that whether the term "significant" is definite depends on "inferences" (*i.e.*, understandings in a

certain context) and the audience for which his publications are presented.  (*See* Dkt. 42 at 33, citing Ex. A at 62:22-63:7.)[6]

Because objective boundaries are not required for the term "significant," and because both experts agree that the term would be understood by a POSITA in the context of the claims, no term of the '538 patent should be found indefinite.

### 1.    "significant fault" (claim 5)

Defendants' Reply repeats its Opening brief citation to Dr. Spanos' declaration (Dkt. 43 at 16), but Ocean has already discussed how  Dr. Spanos agreed that a POSITA would readily ascertain what an actual fault is.  (Dkt. 42 at 34, citing Ex. A at 84:12-19.)[7]

Defendants continue by misharacertizing and reading out of context the deposition testimony of Mr. Maltiel.  (Dkt. 43 at 16-17.)  When Mr. Maltiel's testimony on the issue is considered as a whole, it is very clear that Mr. Maltiel was actually distinguishing between "significant" faults and "insignificant" faults in the context of the '538 patent.  (*See, e.g.,* Ex. E at 109:2-15 ("Q: So there are faults that don't damage the wafer? A: It's [a] fault . . . But as far as manufacturing semiconductor die, it's not a significant one . . . ."); 111:22-112:2 ("Q: When you say an insignificant fault, doesn't that just mean there was no fault because an acceptable wafer was created? A: No.").

Accordingly, the term "significant fault" should not be found indefinite.

### 2.    "determining in said computer whether said parameter is a significant factor" (claim 7)

Defendants's final volley is to continue to hold firm on their illogical arguments with respect to the words "significant factor."  (Dkt. 43 at 17.)  As discussed at length above,

---

[6] This citation was to the rough transcript, the only one available at the time of the Response.  The formal transcript version of the same testimony can be found in Ex. F at 62:16-24.
[7] This citation was to the rough transcript.  The formal transcript version of the same testimony can be found in Ex. F at 82:15-22.

however, the word "significant" is ***not*** "ambiguous" as used in the context of the '538 patent, and it is wholly logical to distinguish between "significant" factors—those that result in out-of-specification wafers—and "insignificant" factors—those that are there but do not rise to the level of resulting in out-of-specification wafers.

Once again, Defendants quote Mr. Maltiel's deposition testimony out of context.  Mr. Maltiel did ***not*** "admit[ ] that a fault only occurs when the wafer is out of specification."  (*See* Ex. E at 119:21-120:4 ("Q: [I]f the resulting wafer completely passed all requirements of the data sheet specification, there wouldn't actually have been a fault with the tool, correct?  A: Yeah, but this would be nonsignificant fault if it passes.  If it doesn't pass, it will be a significant fault.").

Within the context of the '538 patent, there is nothing ambiguous about the meaning of the term "determining in said computer whether said parameter is a significant factor," and Defendants' manufactured indefiniteness argument should be rejected.

## III.    CONCLUSION

For all of the foregoing reasons, this Court should reject Defendants' proposed constructions, including any indefiniteness arguments, and should decline to further construe the terms other than correcting the drafting error as to "said process chamber."

Dated: November 19, 2021

_/s/ Alex Chan_
Timothy Devlin
tdevlin@devlinlawfirm.com
Henrik D. Parker
hparker@devlinlawfirm.com
Alex Chan (State Bar No. 24108051)
achan@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

_Attorneys for Plaintiff_
_Ocean Semiconductor LLC_

16

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Alex Chan*
Alex Chan