**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Ocean Semiconductor LLC,<br><br>          Plaintiff<br><br>   v.<br><br>MediaTek Inc. and MediaTek USA Inc. ("MediaTek"),<br><br>          Defendants. | Civil Action No.: 6:20-cv-1210-ADA<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |
| Ocean Semiconductor LLC,<br><br>          Plaintiff<br><br>   v.<br><br>NVIDIA Corporation,<br><br>          Defendant. | Civil Action No.: 6:20-cv-01211-ADA<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |
| Ocean Semiconductor LLC,<br><br>          Plaintiff<br><br>   v.<br><br>NXP USA, Inc.<br><br>          Defendants. | Civil Action No.: 6:20-cv-1212-ADA<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |

Ocean Semiconductor LLC,

              Plaintiff

     v.

Renesas Electronics Corporation and Renesas
Electronics America, Inc.,

              Defendants.

Civil Action No.: 6:20-cv-1213-ADA

JURY TRIAL DEMANDED

PATENT CASE

Ocean Semiconductor LLC,

              Plaintiff

     v.

Silicon Laboratories Inc.,

              Defendant.

Civil Action No.: 6:20-cv-1214-ADA

JURY TRIAL DEMANDED

PATENT CASE

Ocean Semiconductor LLC,

              Plaintiff

     v.

STMicroelectronics, Inc.,

              Defendant.

Civil Action No.: 6:20-cv-1215-ADA

JURY TRIAL DEMANDED

PATENT CASE

Ocean Semiconductor LLC,

               Plaintiff

     v.

Western Digital Technologies, Inc.

               Defendant.

Civil Action No.: 6:20-cv-1216-ADA

JURY TRIAL DEMANDED

PATENT CASE

### PLAINTIFF OCEAN SEMICONDUCTOR LLC'S MOTION TO EXTEND TIME TO SERVE FINAL INFRINGEMENT CONTENTIONS

Dated: March 29, 2022

Timothy Devlin
tdevlin@devlinlawfirm.com
Henrik D. Parker
hparker@devlinlawfirm.com
Alex Chan (State Bar No. 24108051)
achan@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff*
*Ocean Semiconductor LLC*

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 1

II.     STATEMENT OF THE RELEVANT FACTS ...................................................... 1

    A.      The Court's Schedule For The Actions.................................................... 1

    B.      Ocean's Diligent Efforts to Obtain Critical Third-Party Discovery ................ 2

        1.      Status of Discovery Sought From TSMC .......................................... 4

        2.      Status of Discovery Sought From ASML ......................................... 6

        3.      Status of Discovery Sought From Applied Materials ...................... 7

        4.      Status of Discovery Sought From KIOXIA ..................................... 7

        5.      Status of Discovery Sought From UMC............................................ 8

        6.      Status of Discovery Sought From camLine ...................................... 8

        7.      Status of Discovery Sought From PDF Solutions............................ 9

    C.      Defendants' Failure to Timely Produce Sought Discovery ............................ 10

III.    ARGUMENT .......................................................................................................... 12

    A.      Third-Party Discovery Is Central to the Infringement Contentions and Ocean Should Be Allowed Sufficient Time to Review Such Discovery Before Serving Final Infringement Contentions ..................................... 12

    B.      Ocean Should Be Given a Reasonable Amount of Time to Review, Analyze, and Incorporate New Evidence Contained in Defendants' Recently-Produced Documents ............................................................................................. 16

    C.      The Discovery that Had Been Produced to Date Indicates that Additional Systems May Infringe But More Discovery Is Needed to Confirm................ 16

    D.      Defendants Will Not Be Prejudiced by the Requested Extension .................. 17

IV.     CONCLUSION ...................................................................................................... 18

## I.  INTRODUCTION

Plaintiff Ocean Semiconductor, LLC ("Ocean") hereby moves this Court to extend the deadline for Ocean to serve its final infringement contentions ("FICs") on the named defendants in each of the seven above-captioned actions (collectively "Defendants") from the current deadline of March 30, 2022, to May 27, 2022, due to a combination of: (a) the ongoing difficulty in obtaining critical third party discovery from numerous third parties (including several foreign entities); and (b) the Defendants' delay in providing sought discovery.  In conjunction with extending the deadline for the FICs, Ocean is amenable to extending Defendants' analogous deadline for serving their final invalidity contentions by the same period.

The sought extension still leaves almost six weeks thereafter before the currently-scheduled close of fact discovery on July 6, 2022, and, thus, does not prejudice the Defendants.

Ocean sought Defendants' agreement to this extension but the Defendants have rejected Ocean's proposal.

## II.  STATEMENT OF THE RELEVANT FACTS

### A.  The Court's Schedule For The Actions

On December 31, 2020, Ocean filed Complaints in each of the above-captioned actions alleging infringement of seven patents common among all seven actions—U.S. Patents Nos. 6,660,651, 6,907,305, 6,725,402, 6,968,248, 7,080,330, 6,836,691, and 8,676,538—as well as one additional one; namely, U.S. Patents No. 6,420,097, that is asserted only in two of the actions (collectively, the "Asserted Patents").  (Dkt. 1.)[1]  Each patent pertains to the manufacture of, *inter alia*, semiconductor devices.

---

[1] Unless otherwise noted, all docket citations in this Motion are to the docket in *Ocean Semiconductor LLC v. MediaTek Inc. and MediaTek USA Inc.*, C.A. No. 6:20-cv-1210-ADA (WDTX) but each such citation has analogous docket entries in each of the other six captioned actions.

On July 14, 2021, the Parties filed a Joint Motion for Entry of Scheduling Order.  (Dkt. 31.)  Therein, the Parties informed the Court that, despite meet and confers between Ocean and Defendants in all seven co-pending actions, the Parties were unable to agree on a pre-trial schedule.  (*Id.* at 1.)  At that time, Ocean maintained the position that the Court's default schedule in the Court's Order Governing Proceedings ("OGP") should govern and could later be modified if "unusual events and/or complexity necessitate revising the schedule to allow more time for particular pre-trial activities, or to accommodate witnesses or the Court's own schedule. . . ."  (*Id.* at 5.)  The Court ultimately entered Ocean's proffered Scheduling Order (Dkt. 32).

On January 25, 2022, Ocean and all of the Defendants jointly filed a Notice of Amended Scheduling Order to Extend Final Infringement and Invalidity Contentions making of record their agreement to extend the deadlines for both FICs and final invalidity contentions from the original date of February 2, 2022, to March 30, 2022.  (Dkt. 53.)

In accordance with the Court's entered Scheduling Order, fact discovery is currently set to close on July 6, 2022.  (Dkt. 32 at 3.)

## B.    Ocean's Diligent Efforts to Obtain Critical Third-Party Discovery

Defendants' products, such as semiconductor devices and integrated circuits (collectively the "Infringing Instrumentalities") infringe the Asserted Patents *inter alia* because they are/were manufactured by third party foundries using certain semiconductor manufacturing equipment and tools that perform the patented methods during manufacturing or fabrication of the Infringing Instrumentalities (the "Accused Tools").  These Accused Tools include, for example, those designed, developed, and/or manufactured by third-party equipment manufacturers.  Defendants work with, or direct, the foundries to manufacture the Infringing Instrumentalities using these Accused Tools.

Consequently, discovery from not only the Defendants, but also from both the third-party foundry/manufacturers and the third-party equipment manufacturers is central to the issues of each of the Actions.  Moreover, the process of designing, developing, and manufacturing semiconductor chips, including the fabrication capabilities and know-how, is highly secretive. Due to global (and often fierce) competition in the semiconductor industry, semiconductor foundries go to great lengths to protect their confidential information from their competitors and the general public.  The resulting scarcity of available information forced Ocean initially to rely heavily on a limited set of publicly available information, and that public information is insufficient to fully confirm or gauge the extent and scope of how the Infringing Instrumentalities are/were designed, developed, and/or manufactured.

Against this backdrop, and in accordance with the Court's standard procedures as set out in the OGP and the Scheduling Order, fact discovery in these actions opened on December 9, 2021, the day after this Court's *Markman* Hearing.  (Dkt. 32 at 2.)  Shortly thereafter, Ocean served third-party subpoenas in each of the seven actions on multiple entities whose technology and activities are integral to the asserted infringement in the actions.  (Declaration of Henrik D. Parker In Support of Plaintiff Ocean Semiconductor LLC's Motion to Extend Time to Serve Final Infringement Contentions ("Parker Decl.") at ¶¶4, 6, 10, 16, 22, 28, 32-33, 38, and 46.)[2]  In particular, Ocean served sets of subpoenas on:

- ■ The relevant third-party foundries:
    - o Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC") and TSMC North America ("TSMC NA");

---

[2] Citations to Exhibits in this Motion refer to the Exhibits attached to this co-filed Parker Declaration.

> - United Microelectronics Corp. ("UMC") and UMC Group (USA) ("UMC USA"); and
>
> - KIOXIA America, Inc. ("KIOXIA"); and
>
> ■ The relevant third-party toolmakers:
>
> - Applied Materials Inc. ("AMAT");
>
> - ASML US, LLC and ASML US, LP (collectively "ASML");
>
> - PDF Solutions, Inc.; and
>
> - camLine USA Inc. ("camLine").

Notably, several of these third parties (e.g., TSMC, UMC, and KIOXIA's foundry entity) are foreign companies.

After the various subpoenas were served, Ocean began communications with counsel for these third-parties regarding their acceptance of service of the subpoenas, the setting of document production deadlines, the scope of production, and the logistics of setting deposition scheduling once documents had been fully produced.  (Parker Decl. at ¶¶7-10, 19-20, 25, 29, 35, 44, 48, and 50-51.)

### 1.    Status of Discovery Sought From TSMC

As one example, on December 16, 2021, Ocean contacted Philip Sheng of Davis Polk & Wardwell LLP ("DPW"), counsel for TSMC and TSMC NA, via email to confirm whether Mr. Sheng would accept service on behalf of his clients—and particularly of Taiwan-based TSMC— of the subpoenas served on TSMC and TSMC NA.  After more than a dozen email and telephonic communications spanning nearly three weeks (as detailed in Exhibit 1), Ocean and DPW on behalf of TSMC and TSMC NA agreed that: (1) DPW would accept service of the subpoena directed to TSMC, thereby avoiding the need to go through the time-consuming and complicated procedures usually necessary to obtain discovery of a Taiwanese company; (2) the

subpoena served on TSMC NA would be withdrawn; (3) TSMC would provide written objections by January 18, 2022; (4) TSMC would make a good faith, initial production between January 18, 2022 and January 25, 2022, followed by a rolling production that will be substantially complete by March 8, 2022; and (5) TSMC would provide a corporate witness for deposition on, or before, March 18, 2022, subject to any objections.  (Parker Decl. at ¶8.)  This agreement included the representation from DPW that "TSMC NA does not have any responsive documents that would be non-duplicative of any responsive documents produced by TSMC. . . ." (*Id.* at ¶9.)[3]

Over the course of the next eight weeks, Ocean continued to communicate with TSMC and to conduct various meet and confers in an effort to get TSMC to produce all of the information to which Ocean is entitled.  (*Id.* at ¶10.)  When it appeared that TSMC was not producing all that it should, Ocean was forced to file a Motion to Compel against TSMC in the District of Delaware (where the subpoenas had been served) along with an accompanying Motion to Expedite (together "the TSMC Motions") on February 25, 2022.  (*Id.* at ¶11.)  The TSMC Motions seek, *inter alia*, documents and testimony related to TSMC's:

      a.  manufacturing of the accused products;

      b.  sales, purchases, importation, and royalties related to the accused products;

      c.  indemnification agreements with Defendants and with tool manufacturers whose manufacturing tools perform the infringing methods and processes, and its knowledge of Ocean's asserted patents; and

---

[3] On January 26, 2022, Ocean served amended subpoenas on TSMC reflecting the parties' agreed date of production and deposition.  TSMC rejected service of the amended subpoenas because the place of compliance had changed to Austin, Texas, even though TSMC-NA resides there.  The parties were unable to reach a resolution on this issue.  (*Id.* at ¶10.)

    d.   use of the manufacturing tools to perform the infringing methods and

           processes.

(*Id.*; *see also* Exhibits 2 and 3.)

        At the time that the TSMC Motions were filed, TSMC had produced only 48 pages of

documents.  On March 3 and March 9, 2022, TSMC produced additional documents, bringing its

total production to only 2025 pages.  (*Id.* at ¶13.)  The TSMC Motions were both fully briefed as

of March 18, 2022, but no hearing has been held on either of them yet and neither has been

decided by the District of Delaware judge.  (*Id.* at ¶14.)  As a result of this outstanding dispute

concerning document production, no deposition of TSMC has been scheduled or taken.  (*Id.* at

¶15.)

### 2.      Status of Discovery Sought From ASML

        On January 25, 2022, ASML served Objections and Responses to the sets of subpoenas

served on it by Ocean.  (*Id.* at ¶18.)  Since the service of the subpoenas in December, Ocean has

had perhaps dozens of communications with counsel for ASML (several in conjunction with

counsel for all of the Defendants) to meet and confer about ASML's objections and in an effort

to work out an arrangement whereby ASML, N.L.—the foreign entity that is most

knowledgeable about ASML Accused Tools but who is not subject to this Court's subpoena

power—will voluntarily produce substantial documentation and appropriate witnesses.  (*Id.* at

¶¶19-20; *see also* Exhibit 4.)

        While ASML/ASML, N.L. has produced 7,532 pages of documents, Ocean still does not

have documents/information related to or describing the wafer stage aspect of the ASML

TWINSCAN systems and how those wafer stages operate.  (*Id.* at ¶21.)  Further, as a result of

the incomplete/tardy document production to date, no deposition has been scheduled or taken of

ASML.  (*Id.*)

### 3.      Status of Discovery Sought From Applied Materials

On December 23, 2021, Ocean served a set of subpoenas (one in each of the Actions) on

AMAT.  (*Id.* at ¶28.)  Since that time, counsel for Ocean has had numerous communications with

counsel for AMAT in an effort to obtain a reasonable scope of production.  (*Id.* at ¶29.)  While

AMAT has produced 50,881 pages, what it has not produced so far is any documentation tying

the specific AMAT tools to the Defendant customers or to the foundries despite Ocean's

diligence.  (*Id.* at ¶30.)  While Ocean has tried to work with this third party, it appears that,

unless AMAT becomes more forthcoming, Ocean will need to file a motion to compel.  (*Id.*)

As a result of the ongoing disputes with AMAT about the proper scope of its production,

no deposition has been scheduled or taken of AMAT.  (*Id.* at ¶31.)

### 4.      Status of Discovery Sought From KIOXIA

On December 30, 2021, Ocean served a set of subpoenas (one in each of the Actions) on

KIOXIA.  (*Id.* at ¶32.)  After KIOXIA filed Motions to Quash each of those subpoenas in the

Northern District of California (where they had been served) in mid-January, Ocean withdrew its

original subpoenas to KIOXIA and served a new set of subpoenas on KIOXIA on January 19,

2022, that addressed various procedural concerns that had been raised by KIOXIA.  (*Id.* at ¶33.)

KIOXIA served objections to these revised subpoenas on February 16, 2022.  (*Id.* at ¶34.)

Since service of the revised subpoenas, counsel for Ocean has had numerous

communications with counsel for KIOXIA in an effort to obtain a reasonable scope of

production but has been wholly unsuccessful.  (*Id.* at ¶35.)  To further support its efforts, Ocean

filed a Motion for Issuance of Letters Rogatory from this Court on March 4, 2022, in each of the

seven actions directed to the Japanese KIOXIA.  That Motion was granted on March 11, 2022.

(*See, e.g., id.* at ¶36; Dkt. 62.)

As of today, despite Ocean's diligence, no KIOXIA entity has produced a single document to Ocean and, consequently, no deposition has been scheduled or taken. (Parker Decl. at ¶37.) As with other third parties, it appears that Ocean will be forced to file a motion to compel to this Court to obtain any production from any KIOXIA entity.

### 5.    Status of Discovery Sought From UMC

On December 21, 2021, Ocean served a set of subpoenas (one in each of the Actions) on UMC Group (USA). On January 17, 2022, Ocean served a similar set of subpoenas on the Taiwanese entity UMC in Taiwan via Federal Express. (*Id.* at ¶22.)

During the course of multiple communications with counsel for UMC Group (USA) and UMC, UMC has stated that it will not produce a list of products that it manufactures for each (or any) of the Defendants. (*Id.* at ¶25.) Given UMC's recalcitrance, on February 16, 2022, Ocean filed a Motion for Issuance of Letters Rogatory from this Court in each of the seven actions directed to UMC and the Motion was granted on February 23, 2022. (*See, e.g., id.* at ¶26; Dkt. 58.)

As of today, despite Ocean's efforts, neither UMC Group (USA) nor UMC has produced a single document and no deposition has been scheduled or taken of either of them. (Parker Decl. at ¶27.)

### 6.    Status of Discovery Sought From camLine

On January 19, 2022, Ocean served a set of subpoenas (one in each of the Actions) on camLine. (*Id.* at ¶38.) On February 14, 2022, in response to the set of subpoenas served on it, camLine filed a set of Motions for Protective Order (one for each of the seven Actions) in the Northern District of Georgia. The motions were fully briefed as of February 28, 2022, and ultimately were consolidated before Magistrate Judge Larkins on March 8, 2022. (*Id.* at ¶40.)

One of the principal issues underlying the motion briefing is the extent to which camLine can access the files of its sister company, camLine GmbH.  (*Id.* at ¶41.)  Obtaining discovery directly from camLine GmbH (which is headquartered in Germany and is a signatory to the Hague Convention) would be difficult, if not impossible.  (*Id.* at ¶39.)

Magistrate Judge Larkins conducted a video hearing on the motions on March 15, 2022. At the conclusion of the hearing, the Magistrate Judge stated that he would not issue a ruling for a couple of weeks in the hopes that camLine and Ocean could work out an agreement in light of the views that he shared with the parties during the hearing.  In particular, he stated that the test that he would likely apply was whether or not camLine had the "practical ability" to access the files of camLine GmbH.  (*Id.* at ¶¶42-43.)

Since that hearing, camLine and Ocean have met and conferred and are continuing to work towards a compromise as to what discovery camLine will produce.  Ocean is optimistic that it may be able to obtain sufficient discovery to meet its needs but, as of today, no camLine entity has produced a single document and no deposition of a camLine entity has been scheduled or taken.  (*Id.* at ¶¶44-45.)

### 7.    Status of Discovery Sought From PDF Solutions

On January 19, 2022, Ocean served a set of subpoenas (one in each of the Actions) on PDF Solutions, and PDF Solutions served objections thereto on February 25, 2022.  (*Id.* at ¶¶46-47.)  Since service of the subpoenas, and particularly since service of PDF Solutions' objections, counsel for Ocean has had numerous communications with counsel for PDF Solutions in an effort to resolve disputes and to obtain a reasonable scope of production but, so far, Ocean has had no success.  (*Id.* at ¶48.)  Thus, although PDF Solutions has produced 6,476 pages of production, it has not produced certain documentation that Ocean believes is necessary for its evidentiary case.  (*Id.* at ¶49.)  Most recently, the parties had a meet and confer teleconference on

March 14, 2022, where counsel for PDF Solutions committed to circle back with his client about further possible production, confirming the intention to produce further production on March 28, 2022.  (*Id.* at ¶¶50-51.)

As a result of the ongoing disputes about the proper scope of production, no deposition has been scheduled or taken of PDF Solutions.  (*Id.* at ¶52.)

### C.    Defendants' Failure to Timely Produce Sought Discovery

At the same time that Ocean was seeking discovery from a lengthy list of third-party equipment manufacturers and foundries (as detailed above), Ocean was also seeking discovery from each of the Defendants.  On December 23, 2021, Ocean served sets of Requests For Production on each of the Defendants.  (*Id.* at ¶¶53, 56, 58, 60, 63, 66, and 69; *see, e.g.,* Exh. 5.)

Beyond certain invalidity-related production served at the time of Defendants' Preliminary Invalidity Contentions in August, 2021, and the forwarding of discovery received from third parties apparently related to alleged invalidity issues in response to third party subpoenas served by the Defendants, Defendants' production until just the last couple of weeks was minimal and/or incomplete as to critical aspects.

**MediaTek:**  MediaTek has produced no more than 408 pages.  That production, amongst other shortcomings, did nothing to tie specific products to specific foundries or foundry processes.  (*Id.* at ¶¶54-55.)

**NVIDIA:**  While NVIDIA produced close to 60,000 pages last August, that production was generic in nature, i.e., brochures and the like that did nothing to tie specific products to specific foundries or foundry processes.  An additional roughly 31,000 pages, which still did nothing to tie specific products to specific foundries or foundry processes, were only produced just this month.  (*Id.* at ¶57.)

**NXP:**  Beyond a limited production of a few thousand pages served at the time of Defendants' Preliminary Invalidity Contentions in August, 2021, NXP produced approximately 23,000 pages in late January.  As with other Defendants, none of this production ties specific products to specific foundries or foundry processes.  (*Id.* at ¶59.)

**Renesas:**  Beyond a limited production of about 500 pages served at the time of Defendants' Preliminary Invalidity Contentions in August, 2021, Renesas did not produce any additional documents until less than two weeks ago on March 18, 2022, when it produced a mere 3,557 pages of documents.  (*Id.* at ¶61.)  Once again, amongst other shortcomings, and while Ocean has not yet had the opportunity to fully analyze the new production, it is believed that none of this production ties specific products to specific foundries or foundry processes.  (*Id.* at ¶62.)

**Silicon Labs:**  Beyond certain invalidity-related production served at the time of Defendants' Preliminary Invalidity Contentions in August, 2021, and the forwarding of discovery received from third parties in response to third party subpoenas, Silicon Labs did not produce any documents until just last week when it produced over 10,700 pages of documents on March 22, 2022.  (*Id.* at ¶64.)  Given the volume of production produced by the Defendants within the last two weeks, Ocean has not yet had the opportunity to fully analyze the new production, but it is believed that none of this new production provides any information that ties specific products to specific foundries or foundry processes.  (*Id.* at ¶65.)

**STMicro:**  Beyond certain invalidity-related production and generic technical documentation served at the time of Defendants' Preliminary Invalidity Contentions in August, 2021, STMicro did not produce any further documents until March 15, 2022, when it produced just over 3,500 pages.  Even later, STMicro produced a little over 13,000 additional pages only on March 17, 2022, and an additional roughly 9,500 pages within the last week on March 24,

2022.  (*Id.* at ¶67.)  Given the volume of production produced by the Defendants within the last two weeks—particularly that STMicro itself has produced roughly 26,000 pages—Ocean has not yet had the opportunity to fully analyze the new production, but it is believed that (apart from a couple of agreements between STMicro entities and camLine GmbH) none of this new production provides any information that ties specific products to specific foundries or foundry processes.  (*Id.* at ¶68.)

**Western Digital:**  Beyond certain invalidity-related production served at the time of Defendants' Preliminary Invalidity Contentions in August, 2021, and the forwarding of discovery received from third parties in response to third party subpoenas, Western Digital has produced a mere 106 pages, and even that small amount was not produced until just last week on March 22, 2022.  (*Id.* at ¶70.)  Clearly, Western Digital has been withholding substantial discovery to which Ocean is entitled.

## III.   ARGUMENT

Based on the above-established facts, and the discussion below, the complexities of the third-party discovery in this matter and the failure of Defendants to be properly forthcoming in their discovery production necessitate an extension of the FICs deadline.  Defendants will not be prejudiced by such an extension and, even if there was some minor prejudice, it would be at least in significant part due to their own delay.

### A.   Third-Party Discovery Is Central to the Infringement Contentions and Ocean Should Be Allowed Sufficient Time to Review Such Discovery Before Serving Final Infringement Contentions

As mentioned above, the Actions are unusual as compared to typical patent infringement actions in that a significant portion of the evidence/discovery that is central to the infringement issues is possessed by third-parties.  Defendants make, sell, and/or import the accused products, but those accused products involve manufacturing processes and methods that directly implicate

the third-party foundries such as TSMC, UMC, and KIOXIA, and third-party equipment manufacturers that include ASML, AMAT, PDF Solutions, and camLine USA. (*See, e.g.,* Dkt. 1 at ¶¶8-21 laying out the interplay between defendant MediaTek and the third parties.)

   As such, while the Defendants order the products that require the tools be used in an infringing manner, the Defendants likely do not possess complete information on the third-party tools or the foundry manufacturing processes. Rather, information such as the tools used to manufacture certain products is likely possessed by the semiconductor manufacturing foundry companies, including TSMC, UMC, and Kioxia America, while information regarding how those tools function is likely possessed by the equipment manufacturers themselves, including ASML, AMAT, PDF Solutions, and camLine USA.

   Thus, while Ocean was able to develop a reasonable preliminary infringement analysis of tool use based on publicly available information and to present preliminary infringement contentions laying out its theories of infringement, third-party discovery is necessary for Ocean to fully develop its FICs.

   This much is clear from the Complaints. For example, in the Complaints, Ocean names third-party semiconductor manufacturers TSMC and, in some cases, UMC and KIOXIA, as Foundry Partners of the Defendants. (Dkt. 1 at ¶¶ 8-21.) Ocean goes on to assert that, on information and belief, Defendants have a contractual relationship with these Foundry Partners and that these Foundry Partners use the Accused Tools including AMAT's E3 system. (*Id.* at ¶¶ 9-10.) As the Defendants are not necessarily in possession of information such as which Accused Tools are used at the fabrication facilities of the Foundry Partners, third-party discovery is vital to confirm the publicly available information.

   The above circumstances prompted Ocean to promptly serve over 49 third-party subpoenas across the Actions within the first six weeks of fact discovery.

Ocean worked to expedite the third-party discovery by, where possible, approaching counsel for the third-parties to confirm whether counsel would accept service of the subpoenas and establish reasonable production and deposition timelines.  These communications served two purposes.  First, because these entities are not parties to the above captioned actions, their time and limitations must be reasonably accommodated.  By establishing production timelines, the third-parties would be able to gather their resources in a timely manner while not imposing an undue burden on normal business operations.  This is particularly true of the foreign entities, including TSMC and UMC, which may not be familiar with the particularities of U.S. law and discovery.

Second, since many of these third-parties are foreign entities, a requirement that Ocean proceed through formal foreign discovery procedures would have been time-consuming and certainly more burdensome than the procedures that Ocean proposed to the various third parties. For example, to formally serve discovery on TSMC and UMC in Taiwan, Ocean would have been required to serve letters rogatory.  This procedure would have wasted significant judicial resources by both the Court and the Parties as well as having taken a substantial amount of time, which is why Ocean initially sought to avoid seeking such Letters Rogatory.

Unfortunately, most of the third parties have fought tooth and nail to avoid providing appropriate discovery—unnecessarily dragging out the process and/or flat-out refusing to meet their obligations.  For example, UMC has yet to provide a single document.  (Parker Decl. at ¶27.)  CamLine filed as-yet-unresolved Motions to Quash and has not produced a single document.  (Parker Decl. at ¶¶40-45.)  KIOXIA filed initial Motions to Quash as to the initial subpoenas and—after Ocean withdrew those initial subpoenas and served new ones that specifically addressed the concerns that KIOXIA had raised in those Motions to Quash—has since stonewalled Ocean entirely and has not produced a single document.  (*Id.* at ¶¶33-37.)

14

Similarly, while TSMC had agreed to a reasonable, although somewhat lengthy, production schedule, it has since failed to produce all to which Ocean is entitled and Ocean was forced to file an as-yet-unresolved Motion to Compel in the District of Delaware. (*Id.* at ¶¶11-14; Exhs. 2-3.)

Other third parties, such as ASML, AMAT, and PDF Solutions have—after a significant amount of haggling over many weeks—been somewhat forthcoming in producing certain documents but they have still failed to produce all of the discovery that Ocean has sought and that Ocean needs to prepare comprehensive FICs. (*Id.* at ¶¶21, 30, and 49-51.) After these third parties have stretched out the process over the course of several months, Ocean is now left with likely having to file additional motions to compel as to one or more of these third parties.

In summary, despite its best efforts, Ocean has yet to receive all that it is entitled to from even a single one of the seven third parties. Since it would not make sense from an efficiency standpoint and from the viewpoint of minimizing the burden on the third parties to schedule or take any depositions of these third parties before Ocean has received that third party's full document production, Ocean has yet to take a single third-party deposition.

The somewhat unique circumstances of the present actions—the anomaly where substantial critical information is in the hands of multiple third parties rather than of the named Defendants—are precisely the "unusual events" and "complexit[ies]" that Ocean had discussed in its early statement to the Court in the Joint Request for Scheduling Order. (Dkt. 31 at 5.)

At that time, months before fact discovery was to open, it was unknown the extent to which the third parties would delay and/or seek extended response schedules. Now that it is clear that Ocean is being fought on every front, the deadline for FICs should be extended so that Ocean may continue to obtain the necessary discovery so that its FICs will be as comprehensive as possible.

**B.     Ocean Should Be Given a Reasonable Amount of Time to Review, Analyze, and Incorporate New Evidence Contained in Defendants' Recently-Produced Documents**

As detailed in the fact sections above, on the order of 54,000 pages of documents have been produced across the third parties since February 25.  On top of that, over 71,000 new pages have been produced by various Defendants just this month—***including more than 40,000 pages in the last eleven days.***  Given that Ocean timely served its discovery requests over three months ago, it is unreasonable for Ocean to be expected to review and analyze more than 125,000 pages for possible inclusion in its FICs on such a tight timetable.  In particular, Defendants' delay in production should not act to the prejudice of Ocean.

Allowing Ocean until May 27 to undertake these task as well as to collect further evidence from both Defendants and the third parties is wholly appropriate.

**C.     The Discovery that Had Been Produced to Date Indicates that Additional Systems May Infringe But More Discovery Is Needed to Confirm**

In both its Complaints against the Defendants and the various claim charts within its Preliminary Infringement Contentions, Ocean described a lengthy list of specific accused instrumentalities, but it was also clear to explicitly include "similar systems, products, devices, and integrated circuits" within the scope of accused instrumentalities.  (Parker Decl. at ¶71.)

Based on the documentation that Ocean has received to date as to which Ocean has had a reasonable time period to analyze, it appears that there may be additional systems used by the foundries to produce products for the Defendants that infringe one or more of the various asserted patents.  (*Id.* at ¶72.)  (In order to maintain this Motion public, these specific new systems that may infringe are detailed only in the accompanying Parker Declaration, which is being filed under seal, at ¶73.)  At this point, however, without the complete discovery detailed in prior sections *supra* and the necessary follow-up depositions, Ocean cannot be certain whether

or not these additional systems actually meet all of the claim elements of the asserted claims and, thus, infringe.

Because it would be inappropriate for Ocean to include such new systems absent having a proper basis—a basis that can only be fully reached by gaining additional, already-requested discovery—this is yet another reason why the FICs deadline should be extended.  Ocean should have the reasonable opportunity to determine whether or not any or all of these additional systems do actually infringe within the confines of its Complaint and, if so, to prepare comprehensive contentions thereon.

### D.      Defendants Will Not Be Prejudiced by the Requested Extension

Extending the proposed Final Infringement Contention deadline extension to May 27, 2022, still leaves more than sufficient time for all other Court and party deadlines.  As such, the Defendants will not be prejudiced nor will the trial schedule be otherwise impacted.  In particular, there will still be almost six weeks after that May 27 deadline before the close of fact discovery on July 6, 2022.  Moreover, as Defendants have already had Ocean's Preliminary Infringement Contentions for over seven months, Defendants can certainly take/receive at least the large majority of any desired discovery before May 27 should they so choose.

Still further, Ocean is agreeable to extending the deadline for Final Invalidity Contentions by the same period.

There is simply no legitimate reason for Defendants to oppose the sought relief.  Indeed, a major reason why an extension is necessary, as discussed above, is the fact that the Defendants have delayed in producing full documentary production to Ocean—in some instances producing virtually nothing and in other instances dumping well over 71,000 new pages on Ocean within the last few weeks.  Defendants can hardly legitimately complain that Ocean needs more time to proffer comprehensive FICs.

## IV.    CONCLUSION

The "unusual events" and "complexit[ies]" of this case—most particularly the recalcitrance of the seven necessary third parties and the Defendants delay in producing proper discovery—necessitate extending the deadline for Final Infringement Contentions until May 27, and such an extension will not prejudice Defendants.  The Court should extend the deadline for Final Infringement Contentions (and the analogous deadline for Final Invalidity Contentions) to May 27, 2022.


Dated: March 29, 2022                      */s/ Henrik D. Parker*
                                            Timothy Devlin
                                            tdevlin@devlinlawfirm.com
                                            Henrik D. Parker
                                            hparker@devlinlawfirm.com
                                            Alex Chan (State Bar No. 24108051)
                                            achan@devlinlawfirm.com
                                            DEVLIN LAW FIRM LLC
                                            1526 Gilpin Avenue
                                            Wilmington, Delaware 19806
                                            Telephone: (302) 449-9010
                                            Facsimile: (302) 353-4251

                                            *Attorneys for Plaintiff*
                                            *Ocean Semiconductor LLC*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on March 24, 2022, I emailed counsel for each of the defendants in the seven captioned actions seeking their agreement to extending the deadline for the final infringement contentions (and final invalidity contentions).  When I had not heard from any of them by mid-day on March 28, 2022, I emailed them again seeking a response.  Counsel stating that they represented the positions of all Defendants responded by email rejecting Ocean's proposed deadline extension.

*/s/ Henrik D. Parker*
Henrik D. Parker

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Henrik D. Parker*
Henrik D. Parker

19