# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

OCEAN SEMICONDUCTOR LLC,

      Movant,

  v.

TAIWAN SEMICONDUCTOR
MANUFACTURING COMPANY, LTD.,

      Respondent.

C.A. No. _____

## OCEAN SEMICONDUCTOR LLC'S MOTION TO COMPEL
## THIRD PARTY DISCOVERY FROM
## TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY, LTD

Dated: February 25, 2022

Timothy Devlin (4241)
tdevlin@devlinlawfirm.com
Joel Glazer (6663)
jglazer@devlinlawfirm.com
Peter Mazur (6732)
pmazur@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Movant Ocean Semiconductor LLC.*

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS .................................................................... 1

II.   PROCEDURAL BACKGROUND ..................................................................................... 2

   A.  Brief Litigation History in this Matter ............................................................................. 2

   B.  Plaintiffs Diligently Sought Discovery From TSMC Without Court Intervention ............. 5

III.  LEGAL STANDARDS ..................................................................................................... 6

IV.   ARGUMENT ................................................................................................................... 7

   A.  TSMC Should Be Compelled To Produce the First Category of Discoverable Information Concerning the Manufacture of Infringing Instrumentalities Using Accused Tools .................. 7

   B.  TSMC Should Be Compelled to Produce the Second Category of Discoverable Information Concerning Sales, Purchases, Importation, and Royalties Related to the Infringing Instrumentalities ..................................................................................................................... 11

   C.  TSMC Should Be Compelled to Produce the Third Category of Discoverable Information Concerning Indemnification Agreements and Knowledge of the Asserted Patents ................. 14

   D.  TSMC Should Be Compelled to Produce the Fourth Category of Discoverable Information Concerning TSMC's Use of the Accused Tools and the Functions of Such Tools.. ................................................................................................................................................. 16

V.    CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)......................................................................... 12

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
    984 F.2d 422 (Fed. Cir. 1993)..................................................................... 7, 11, 16

*Liqwd, Inc. v. L'Oréal USA Inc.*,
    C.A. No. 19-mc-35-JFB-SRF,
    2019 U.S. Dist. LEXIS 30788 (D. Del. Feb. 27, 2019) ........................................... 6

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)................................................................................................. 16

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
    C.A. No. 16-mc-171-RGA,
    2016 U.S. Dist. LEXIS 125084 (D. Del. Sep. 14, 2016) ......................................... 7

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    C.A. No. C 08-80129 SI,
    2008 U.S. Dist. LEXIS 79777 (N.D. Cal. Aug. 18, 2008)...................................... 10

*Visto Corp. v. Smartner Info. Sys.*,
    2007 U.S. Dist. LEXIS 8481,
    2007 WL 218771 (N.D. Cal. Jan. 29, 2007) .......................................................... 10

*W. Penn Allegheny Health Sys. v. UPMC*,
    C.A. No. 2:09-cv-00480-JFC,
    2013 U.S. Dist. LEXIS 197070 (W.D. Pa. Feb. 15, 2013) ..................................... 10

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................. 7

Fed. R. Civ. P. 45 ......................................................................................................... 1, 6

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiff Ocean Semiconductor LLC ("Ocean") brings this Motion to Compel Third Party Discovery ("Motion") to compel Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC") to produce, pursuant to Fed. R. Civ. P. 45, documents and deposition testimony responsive to Ocean's third-party subpoena served on TSMC (the "TSMC Subpoena").  The TSMC Subpoena was served in each of eight actions currently pending in the Eastern District of Texas ("EDTX") and Western District of Texas ("WDTX") involving eight defendants/groups of defendants (collectively "Defendants") whose accused products are/were designed, developed, and/or manufactured by TSMC using infringing manufacturing methods and processes in TSMC's manufacturing facilities.  The TSMC Subpoena covers four categories of documents and deposition topics that are directly related to those defendants' liability, the infringement of the patents asserted there, and the resulting damages, including information related to TSMC's:

1. manufacture of the accused products;

2. sales, purchases, importation, and royalties related to the accused products;

3. indemnification agreements with Defendants and with tool manufacturers whose manufacturing tools perform the infringing methods and processes, and its knowledge of Ocean's asserted patents; and

4. use of the manufacturing tools to perform the infringing methods and processes.

Despite multiple email exchanges and meet and confers, TSMC has only produced 48 pages of documents and has repeatedly refused to supplement this meager production.  TSMC cannot defend its position and Ocean has been forced to file this Motion after TSMC refused to supplement its production during a meet and confer held February 8, 2022.  (*See* Mazur Decl. at ¶ 6.)  The discovery sought is unquestionably relevant to Ocean's patent infringement claims in each of the eight Texas actions and Ocean therefore requests that this Court grant this Motion.

## II. PROCEDURAL BACKGROUND

### A. Brief Litigation History in this Matter

On December 31, 2020, Ocean filed seven actions for patent infringement in WDTX[1] ("WDTX Actions") and another action in EDTX[2] ("EDTX Action"), alleging infringement of seven patents common among all eight actions—U.S. Patents Nos. 6,660,651, 6,907,305, 6,725,402, 6,968,248, 7,080,330, 6,836,691, and 8,676,538—as well as one additional one; namely, U.S. Patents No. 6,420,097, that is asserted only in three of the eight actions (collectively, the "Asserted Patents"). As explained below, each patent pertains to the manufacture of, *inter alia*, semiconductor devices.

The invention of the '651 patent resolves technical problems related to cross-wafer variations or non-uniformity characteristics in semiconductor wafers that are caused by different deposition and etch processes performed during manufacturing. The '651 patent provides a process tool that includes an adjustable wafer stage that allows positioning or re-positioning of the wafer stage, such as raising, lowering, and varying a tilt of the surface of the wafer stage, in order to effectuate the deposition rates of semiconductor materials formed on a wafer.

The inventions of the '305 and '248 patents are, as a whole, directed to a specific improvement to the way computers [in semiconductor manufacturing] operate, and more specifically an improvement in computer functionality. The inventions significantly improve

---

[1] *Ocean Semiconductor LLC v. MediaTek Inc., MediaTek USA, Inc.*, No. 6:20-cv-1210-ADA (W.D. Tex.); *Ocean Semiconductor LLC v. Nvidia Corporation*, No. 6:20-cv-1211-ADA (W.D. Tex.); *Ocean Semiconductor LLC v. NXP USA, Inc.*, No. 6:20-cv-1212-ADA (W.D. Tex.); *Ocean Semiconductor LLC v. Renesas Electronics Corp., Renesas Electronics America, Inc.*, No. 6:20-cv-1213-ADA (W.D. Tex.); *Ocean Semiconductor LLC v. Silicon Laboratories, Inc.*, No. 6:20-cv-1214-ADA (W.D. Tex.); *Ocean Semiconductor LLC v. STMicroelectronics, Inc.*, No. 6:20-cv-1215-ADA (W.D. Tex.); *Ocean Semiconductor LLC v. Western Digital Technologies, Inc.*, No. 6:20-cv-1216-ADA (W.D. Tex.). Each of these actions is pending before Judge Albright who has set a common Scheduling Order for all of them and conducted a joint claim construction process.
[2] *Ocean Semiconductor LLC v. Huawei Device USA, Inc., Huawei Device Co., Ltd., HiSilicon Technologies Co., Ltd.*, No. 4:20-cv-00991-ALM (E.D. Tex.).

computers and equipment in semiconductor manufacturing because they are directed to activities that were not previously done by computers (but by humans, as discussed in detail below).

The invention of the '402 patent aims to resolve semiconductor manufacturing problems in reporting delays and delayed corrections of manufacturing fault conditions in, for example, wafers, integrated circuits, or microprocessors. The '402 patent creates a unique solution by which to accurately identify the source of faults and defects, and to promptly report such faults and defects in order to allow immediate corrective actions to be taken.

The systems and methods of the invention of the '538 patent aim to resolve a manufacturing problem of inaccurate fault detection in semiconductor manufacturing. The '538 patent effectively resolves this problem by dynamically adjusting the weight of tool state parameters in response to a detected fault. When a fault is detected, a manufacturing processing system determines whether the fault is significant. This classification is then used to modify the weight given to a tool parameter. If the fault is a significant one, the weighting of parameters that contributed to the fault is increased.

The '691 patent is directed to resolving the problem of inaccuracies to process control activities that adversely impact the entire line of manufacturing by, for example, adjusting a manufacturing tool erroneously or correcting a recipe that deviated from a process target value (e.g., a target thickness). The invention of the '691 patent overcomes these limitations by conducting process control based on metrology data with faulty data excluded, filtering metrology data based on the purpose for which each set of data was collected, including the removal of outlier data.

The claims of the '330 patent are directed to monitoring and/or controlling a semiconductor fabrication process, and specifically to "concurrently measuring critical dimensions and overlay … and controlling operating parameters to refine the process in response

to the measurements," ('330 patent at 1:7-12). This method overcomes inefficiencies inherent in the prior art, which measured critical dimensions and overlay non-concurrently.

Defendants' products, such as semiconductor devices and integrated circuits (collectively, "Infringing Instrumentalities"), are alleged to infringe the Asserted Patents *inter alia* because they are/were manufactured by TSMC using certain semiconductor manufacturing equipment and tools that perform the patented methods during manufacturing or fabrication of the Infringing Instrumentalities (the "Accused Tools"). These Accused Tools include, for example, those designed, developed, and/or manufactured by third-party equipment manufacturers including, *inter alia*, ASML, N.L. ("ASML"), camLine GmbH ("camLine"), Applied Materials, Inc., and PDF Solutions, Inc. ("Equipment Manufacturers"). (*See, e.g.*, Ex. 7.) Defendants are alleged to work with, or direct, TSMC to manufacture the Infringing Instrumentalities using these Accused Tools.

The same day that the court in the WDTX Actions issued its joint Claim Construction Order on December 9, 2021, fact discovery opened in those Actions and Ocean diligently began its discovery efforts. (*See, e.g.*, Ex. 9.)[3] Discovery from not only the Defendants, but also from the third-party foundry/manufacturers and the third-party Equipment Manufacturers is central to the issues of the Actions. The process of designing, developing, and manufacturing semiconductor chips, including fabrication capabilities and know-hows, is highly secretive. Due to global (and often fierce) competition in the semiconductor industry, semiconductor foundries go to great lengths to protect these trade secrets from their competitors and the general public. The scarcity of this information has forced Ocean so far to rely heavily on publicly available information, which is insufficient to gauge the full extent and scope of how the Infringing Instrumentalities are/were designed, developed, and/or manufactured.

---

[3] The Scheduling Order in the seven WDTX Actions is common among those actions.

4

**B.**   **Plaintiffs Diligently Sought Discovery From TSMC Without Court Intervention**

Since the commencement of fact discovery in mid-December in the WDTX actions, Ocean has served subpoenas on numerous Equipment Manufacturers whose manufacturing tools are used by TSMC to manufacture or fabricate the Infringing Instrumentalities. On December 16, 2021, Ocean also served subpoenas on TSMC and its subsidiary TSMC North America ("TSMC-NA") in each of the eight WDTX and EDTX Actions (*see, e.g.,* Exs. 1 and 2)[4] seeking vital information on TSMC's role in the manufacture of the Infringing Instrumentalities that is central to Ocean's claims and Defendants' defenses.

On or about December 16, 2021, in addition to attempting service of the subpoenas by mail, Ocean contacted TSMC's and TSMC-NA's outside counsel regarding service of process. (*See* Ex. 3.) Counsel for TSMC and TSCM-NA requested a meet and confer to discuss acceptance of service of the subpoenas and the contents thereof. (*Id.* at 10.)

During the resulting meet and confer, the parties stipulated that, in exchange for Ocean withdrawing its subpoenas to TSMC-NA, TSMC would: (a) waive service of the subpoenas to TSMC; (b) be given additional time to January 18, 2022, to serve its responses and objections; (c) produce all responsive documents no later than March 8, 2022; and (d) prepare a corporate witness for deposition on March 18, 2022. (*Id.* at 3-9.)[5]

---

[4] Citations to Exhibits in this brief refer to the Exhibits attached to the co-filed Declaration of Peter Mazur in Support of Ocean Semiconductor LLC's Motion to Compel the Production of Documents from Taiwan Semiconductor Manufacturing Company, Ltd.

[5] On January 26, 2022, Ocean served amended subpoenas on TSMC reflecting the parties' agreed date of production and deposition. TSMC rejected service of the amended subpoenas because the place of compliance has changed to Austin, Texas, even though TSMC-NA resides there. (*Id.* at 1.) The parties were unable to reach a resolution on this issue. (Ex. 4 at 2-5.) For this Motion only, Ocean proceeds on the basis that the original subpoenas govern the parties' disputes. Ocean maintains that the supplemental subpoenas were properly served and reserves the right to file additional motions to compel against TSMC in WDTX.

Following this agreement, TSMC served its objections and responses in each of the eight WDTX/EDTX Actions on January 18, 2022. (*See* Ex. 5.) TSMC also made a production of 33 pages on January 25, 2022 ("First Limited Production") consisting solely of two technical PowerPoint presentations—one from 2014 and another from 2015—and screenshots from an undisclosed website discussing TSMC's technology. (*See* Mazur Decl. at ¶ 4.)

On January 31, TSMC made an additional production of 15 pages ("Second Limited Production") consisting of two documents with one covering an unknown manufacturing tool and another relating to one of the Accused Tools. (*Id.* at ¶ 5.) TSMC's First and Second Limited Productions—the sum total of its production—total a mere 48 pages ***combined***.

Following Ocean's review of TSMC's First and Second Limited Productions, the parties met and conferred twice more to discuss TSMC's production deficiencies on February 3 and February 8. (*See* Ex. 4.) While TSMC represented that it would consider potential supplemental production for certain document requests, Ocean has received nothing more to date other than a single communication nearly two weeks later requesting additional narrowing and clarifications that TSMC had failed to raise in any of the previous meet and confers. (*See* Ex. 11.)

As of the date of this Motion, TSMC has failed to supplement its document production beyond the First and Second Limited Productions or prepare a corporate witness to testify on any of Ocean's deposition topics. The parties are now at an impasse.

## III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 45 addresses third party compliance with a subpoena. *See Liqwd, Inc. v. L'Oréal USA Inc.*, C.A. No. 19-mc-35-JFB-SRF, 2019 U.S. Dist. LEXIS 30788, at *6 (D. Del. Feb. 27, 2019). Fed. R. Civ. P. 45(d)(2)(B)(i) permits a party seeking discovery to "[a]t any time . . . move the court for the district where compliance is required for an order compelling production . . . ." A motion to compel document production may be

transferred to the issuing district where the underlying litigation is pending "if the person subject to the subpoena consents or if the court finds exceptional circumstances." *See* Fed. R. Civ. P. 45(f). Rule 45 serves "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties . . . ." Fed. R. Civ. P. 45, Advisory Committee Notes to 1991 Amendment.

Fed. R. Civ. P. 26(b) sets the scope of discovery for a Rule 45 subpoena and "applies equally to discovery of nonparties." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see also Syngenta Crop Prot., LLC v. Willowood, LLC*, C.A. No. 16-mc-171-RGA, 2016 U.S. Dist. LEXIS 125084, at *5 (D. Del. Sep. 14, 2016) ("Rule 26(b)(1) provides that parties 'may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case'") (*quoting* Fed. R. Civ. P. 26(b)). A subpoenaed non-party's status may be considered in weighing the burdens imposed in the circumstances, however this consideration is offset by the subpoenaing party's "need for the . . . information sought." *Katz*, 984 F.2d at 425.

## IV.    ARGUMENT

The Court should grant Ocean's Motion and compel: (a) production of documents responsive to the following RFPs where TSMC has asserted that it "will not produce documents in response"; and (b) witness testimony for the following Deposition Topics where TSMC has asserted that it "will not provide a witness to testify."

### A.    TSMC Should Be Compelled To Produce the First Category of Discoverable Information Concerning the Manufacture of Infringing Instrumentalities Using Accused Tools

There is a substantial need for Ocean to seek discovery relating to the First Category of Discoverable Information concerning TSMC's agreements or contracts with Defendants relating to the use of the Accused Tools to manufacture the Infringing Instrumentalities. This Category is

covered by the following discovery requests: RFP Nos. 5 (referring back to RFP No. 4 concerning the use of ASML's TWINSCAN and/or YieldStar Accused Tools), 11 (referring back to RFP No. 10 concerning the use of Applied Materials, Inc.'s APC and/or FDC Accused Tools), 18 (referring back to RFP No. 17 concerning the use of PDF Solutions, Inc.'s process control and/or FDC Accused Tools), and 24 (referring back to RFP No. 20 concerning the use of camLine's process control and/or FDC Accused Tools) and Deposition Topics 6 and 8:

> **Request for Production No. 5**—Documents relating to Your agreement or contract with any and all Defendants to fabricate, manufacture, or assemble those systems, devices, components, and/or integrated circuits described in Request for Production No. 4, including, without limitation, master service agreements, partnership agreements, development agreements, contract manufacturing agreements, manufacturing supply agreements, supplier agreements, distribution agreements, manufacturing contract service level agreements, and semiconductor purchase agreements.

> **Request for Production No. 11**—Documents relating to Your agreement or contract with any and all Defendants to fabricate, manufacture, and/or assemble those systems, devices, components, and/or integrated circuits described in Request for Production No. 10, including, without limitation, master service agreements, partnership agreements, development agreements, contract manufacturing agreements, manufacturing supply agreements, supplier agreements, distribution agreements, manufacturing contract service level agreements, and semiconductor purchase agreements.

> **Request for Production No. 18**—Documents relating to Your agreement or contract with any and all Defendants to fabricate, manufacture, and/or assemble those systems, devices, components, and/or integrated circuits described in Request for Production No. 17, including, without limitation, master service agreements, partnership agreements, development agreements, contract manufacturing agreements, manufacturing supply agreements, supplier agreements, distribution agreements, manufacturing contract service level agreements, and semiconductor purchase agreements.

> **Request for Production No. 24**—Documents relating to Your agreement or contract with any and all Defendants to fabricate, manufacture, and/or assemble those systems, devices, components, and/or integrated circuits described in Request for Production No. 20, including, without limitation, master service agreements, partnership agreements, development agreements, contract manufacturing agreements, manufacturing supply agreements, supplier agreements, distribution agreements, manufacturing contract service level agreements, and semiconductor purchase agreements.

**Topic No. 6**—Any making, using, selling, or offers to sell the Infringing Instrumentalities within the United States, or importing into the United States of the Infringing Instrumentalities, including any and all contracts and/or agreements between You and any and all Defendants governing Your making, using, selling, offering to sell, or importation of the Infringing Instrumentalities.

**Topic No. 8**—The means by which You identify each of the Infringing Instrumentalities, including, but not limited to, any internal or external reference or part numbers used to identify such instrumentalities when sold to, or made for, any Defendant.

The issue of whether the Infringing Instrumentalities are manufactured by TSMC and, if so, by the use of which Accused Tool(s), is central to Ocean's infringement allegations in each of the WDTX and EDTX Actions. Without this discovery, it is likely that no infringement liability could be attached to any Defendant. As Ocean states in the Complaints, TSMC is contracted and engaged to manufacture the Infringing Instrumentalities using the Accused Tools to perform each element of the Asserted Claims of the Asserted Patents. (*See, e.g.,* Ex. 7 at ¶¶ 76, 96, 116, 136, 157, 177, and 197.)

While there is publicly available information (e.g., press releases) evidencing TSMC's agreement to manufacture certain products for the Defendants, the availability of the information is severely limited. Without the sought discovery, the extent and scope of these agreements, including which of the Infringing Instrumentalities and/or Accused Tools are implicated by these agreements, remains largely a black hole. In fact, Defendants have made this evidentiary issue a key contention in their motions to dismiss, contending that none of the publicly available information cited by Ocean in the Complaints demonstrates a nexus between the Accused Tools used by TSMC and those actually used to manufacture the Infringing Instrumentalities. (*See, e.g.*, Ex. 8 at 7-9.) As TSMC is in the **sole** possession, custody, and control of information relating to which Accused Tools are employed at its own manufacturing facilities to manufacture which Infringing Instrumentality, Ocean is entitled to discovery of this information.

There is another reason for Ocean to obtain the First Category of Discoverable Information—it provides critical information on whether: (1) Defendants have induced TSMC to infringe under 35 U.S.C. § 271(b) by instructing TSMC to employ any of the Accused Tools, or in the alternative, configure them in an infringing manner during the manufacture of the Infringing Instrumentalities; and (2) TSMC imported the Infringing Instrumentalities into the United States under the direction of Defendants so as to infringe under 35 U.S.C. § 271(g).

Tellingly, TSMC has never once disputed during any of the meet-and-confers that the First Category of Discoverable Information exists, nor that it is irrelevant to Ocean's infringement allegations in the underlying Actions. Rather, TSMC simply wants to avoid its Rule 45 discovery obligations by making a blanket assertion that Ocean's discovery requests for the First Category of Discoverable Information are overbroad and that such documents could be "more easily obtained by way of party discovery from Defendants." (Ex. 6 at 16.) These objections are unavailing because there "is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in [a party's] possession[]." *See W. Penn Allegheny Health Sys. v. UPMC*, C.A. No. 2:09-cv-00480-JFC, 2013 U.S. Dist. LEXIS 197070, at *10-11 (W.D. Pa. Feb. 15, 2013) (*quoting Viacom Int'l, Inc. v. YouTube, Inc.*, C.A. No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, at *3 (N.D. Cal. Aug. 18, 2008)); *see also Visto Corp. v. Smartner Info. Sys.*, 2007 U.S. Dist. LEXIS 8481, 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007) (same).

To be clear, TSMC has never asserted in its discovery responses or during the meet-and-confers that any narrowing of these RFPs would somehow be less burdensome. Even if such productions were burdensome (and they are not), as TSMC is the sole entity with the relevant information on what Accused Tools are used to manufacture which Infringing Instrumentality, the relevance and benefit of this discoverable information far outweighs any conceivable "burden" or "expense" that TSMC would incur while complying with the TSMC Subpoenas.

Because "the burdens imposed" on TSMC to respond to these requests is slight and certainly do not overcome Ocean's "need for the . . . information sought," TSMC should be compelled to produce the First Category of Discoverable Information and a corporate witness to testify as to the produced documents. *Katz*, 984 F.2d at 425.

### B. TSMC Should Be Compelled to Produce the Second Category of Discoverable Information Concerning Sales, Purchases, Importation, and Royalties Related to the Infringing Instrumentalities

Discovery relating to the Second Category of Discoverable Information concerns financial agreements, including purchase or sales orders for certain Accused Tools, sales volumes related to the Infringing Instrumentalities, importation of the Infringing Instrumentalities into the U.S., and royalties paid to any Equipment Manufacturer. The Second Category of Discoverable Information is covered by the following discovery requests:

> **Request for Production No. 2**—Purchase or sales orders, invoices, purchase agreements, sales agreements, and/or supplier agreements relating to any TWINSCAN and/or YieldStar system(s) as described in Request for Production No. 1 between You and ASML.

> **Request for Production No. 8**—Purchase or sales orders, invoices, purchase agreements, sales agreements, and/or supplier agreements relating to any Applied Materials APC and/or FDC hardware, software, systems, components, and/or modules, including the E3 and/or Smart Factory system(s), as described in Request for Production No. 7 between You and Applied Materials.

> **Request for Production No. 31**—Documents sufficient to show the sales volume, revenues, costs of goods sold, gross profits, operating costs, operating profits, and/or net profits directly or indirectly related to the manufacture, fabrication, and/or assembly of systems, devices, components, or integrated circuits, including the Infringing Instrumentalities, that are/were manufactured, fabricated, and/or assembly on behalf of any and all Defendants in connection with Your use, utilization, installation, implementation, and/or deployment of the Manufacturing Equipment from 2014 to the present.

> **Request for Production No. 49**—Documents relating to the importation into the United States and/or offer for sale, sale, or use within the United States of any and all systems, devices, components, and/or integrated circuits that are/were manufactured, fabricated, or assembled by You on behalf of any and all Defendants in connection with the use, utilization, installation, implementation, and/or deployment of the Manufacturing Equipment.

**Request for Production No. 50**—Documents sufficient to show royalties You paid to any Equipment Manufacturers related to the use, utilization, installation, implementation, and/or deployment of the Manufacturing Equipment.

**Topic No. 9**—Revenue, costs and profits that You derive from the manufacture, fabrication, and/or assembly of the Infringing Instrumentalities.

Ocean's substantial need for the Second Category of Discoverable Information cannot reasonably be contested. For example, TSMC's purchase and sale orders related to the Accused Tools provide the one and only reliable measure for how long those tools have been used by TSMC to manufacture the Infringing Instrumentalities—information that *none of the party defendant has* but which is directly relevant to calculating the damages period in the underlying litigation. As an alternative, and in lieu of production of these purchase/sale orders, Ocean suggested that TSMC identify the timeframe and manufacturing facilities in which the Accused Tools were/are deployed. (*See* Ex. 4 at 4 ("the parties agreed that TSMC could identify the timeframe as to when such tools were/are deployed in TSMC's manufacturing facilities.").) TSMC, however, has not accepted this alternative.

Similarly, the importation of semiconductors into the U.S. that TSMC manufactured for Defendants using the Accused Tools, revenues and costs of goods sold in connection with this manufacture, and royalties paid to Equipment Manufacturers are all necessary to determine the extent and scope of Defendants' infringement and the resulting damages. For example, documents related to revenues and costs of goods sold in connection with the Infringing Instrumentalities as well as documents related to royalties paid to Equipment Manufacturers are directly relevant to Ocean's reasonable royalty damages calculation under the factors in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), including the established royalty (e.g., the first factor); the rates paid by TSMC for the use of patents covering the Accused Tools (e.g., the second factor); the established profitability of the Infringing Instrumentalities (e.g., the eighth factor); and the portion of the profit that may be customary in

the semiconductor industry to allow for the use of the claimed or analogous inventions (e.g., the twelve factor).  Whether the Infringing Instrumentalities are imported into the U.S. (a question of liability), including whether such importation is facilitated by TSMC at Defendants' behest, is also a fact directly relevant to Ocean's infringement allegations under 35 U.S.C. § 271(g).

TSMC's justification for withholding the Second Category of Discoverable Information is once again that Ocean's discovery requests are overbroad and that such documents could be "more easily obtained by way of party discovery from Defendants."  (Ex. 6 at 16.)  Setting aside the vagueness of these assertions, they are categorically false.  There is no reasonable basis to believe that Defendants would have any access to TSMC's purchase and sale orders with another third party (*i.e.*, purchase and sale orders between TSMC and Equipment Manufacturers) or royalties paid to such a third party (i.e., any of the Equipment Manufacturers) unless they seek the same discovery from TSMC and/or the Equipment Manufacturers.

Similarly, as Defendants' foundry partner, TSMC is in sole possession of relevant information relating to importation of the Infringing Instrumentalities from Taiwan where TSMC resides (including customs records and bill of ladings).  To the extent that importation of the Infringing Instrumentalities is facilitated directly by Defendants and not TSMC, Ocean agrees that such information might be in the possession, custody, or control of Defendants.  TSMC, however, has made no such representation.  Also, Ocean could not "easily" obtain this discovery from Equipment Manufacturers because they are located abroad and are signatories to the Hague Convention, which would require Ocean to seek foreign judicial and consulate assistance.  For example, ASML is headquartered in the Netherlands (*see* Mazur Decl. at ¶ 7) and camLine is headquartered in Germany (*id.*)—both of whom are members of the Hague Convention.

Because Ocean cannot obtain discovery of this category of information from any other source without undue hardship, including seeking foreign discovery through the Hague

Convention, TSMC should be compelled to respond to RFP Nos. 2, 8, 31, 49 and 50 and

Deposition Topic No. 9.

### C. TSMC Should Be Compelled to Produce the Third Category of Discoverable Information Concerning Indemnification Agreements and Knowledge of the Asserted Patents

Discovery relating to the Third Category of Discoverable Information concerning

agreements or contracts in which TSMC agreed to be indemnified by, or to indemnify, the

Equipment Manufacturers and TSMC's knowledge of the Asserted Patents directly relates to

Defendants' infringement culpability, including whether Defendants are to be indemnified by

TSMC and/or the Equipment Manufacturers if found to infringe the Asserted Patents.  This Third

Category of Discoverable Information is covered by the following RFPs and Deposition Topics:

**Request for Production No. 6**—Documents relating to, or reflecting, any agreement between You and ASML to be indemnified by, or to indemnify, ASML for patent infringement in connection with Your use, utilization, installation, implementation, and/or deployment of ASML's TWINSCAN and/or YieldStar system(s) as described in Request for Production No. 1.

**Request for Production No. 12**—Documents relating to any agreement between You and Applied Materials to be indemnified by, or to indemnify, Applied Materials for patent infringement in connection with Your use, utilization, installation, implementation, and/or deployment of any Applied Materials APC and/or FDC hardware, software, systems, components, and/or modules as described in Request for Production No. 7, including the E3 and/or Smart Factory system(s).

**Request for Production No. 19**—Documents relating to any agreement between You and PDF Solutions to be indemnified by, or to indemnify, PDF Solutions for patent infringement in connection with Your use, utilization, installation, implementation, and/or deployment of any PDF Solutions process control and/or FDC hardware, software, systems, components, and/or modules as described in Request for Production No. 14, including the Exensio platform and modules.

**Request for Production No. 25**—Documents relating to any agreement between You and camLine to be indemnified by, or to indemnify, camLine for patent infringement in connection with Your use, utilization, installation, implementation, and/or deployment of any camLine process control and/or FDC hardware, software, systems, components, and/or modules as described in Request for Production No. 20, including the LineWorks platform and modules.

**Request for Production No. 26**—Documents relating to any agreement between You and equipment suppliers, including ASML, Applied Materials, PDF Solutions, and camLine to indemnify, and/or be indemnified by, any of the Defendants for patent infringement in relation with Your use, utilization, installation, implementation, and/or deployment of:

> 1. ASML's TWINSCAN and/or YieldStar system(s) as described in Request for Production No. 1;
>
> 2. Applied Materials' APC and/or FDC hardware, software, systems, components, and/or modules, including the E3 and/or Smart Factory system(s), as described in Request for Production No. 7;
>
> 3. PDF Solutions' process control and/or FDC hardware, software, systems, components, and/or modules, including the Exensio platform as described in Request for Production No. 14; and
>
> 4. camLine's process control and/or FDC hardware, software, systems, components, and/or modules, including the LineWorks platform as described in Request for Production No. 20.

**Topic No. 7**—Your first awareness of the Asserted Patents.

**Topic No. 11**—Any communications between You and any Equipment Manufacturer or any of the Defendants concerning these Actions, Ocean, the Asserted Patents, or any of the Infringing Instrumentalities.

As with the First Category of Discoverable Information, indemnification agreements between TSMC and Defendants or any Equipment Manufacturers are directly relevant to addressing Defendants' direct and indirect liability for patent infringement when a particular Accused Tool has been used in manufacturing a particular Infringing Instrumentality, or whether TSMC has agreed to hold harmless Defendants and Equipment Manufacturers for TSMC's use of the Accused Tools. Further, as with the First Category, the public availability of agreements evidencing indemnification between TSMC, Defendants, and Equipment Manufacturers is very limited because, most often, such agreements are confidential. As Defendants have no direct access to agreements between TSMC and Equipment Manufacturers, TSMC is again in *sole* possession, custody, and control of information relating to such indemnification, and Ocean is entitled to seek discovery of this information from TSMC.

TSMC has refused to produce documents in response to this Third Category of Discoverable Information on the basis of relevance.  (*See* Ex. 4 at 2-3.)  It is well understood, however, that relevancy is interpreted broadly during the course of discovery.  *See, e.g., Katz*, 984 F.2d at 425 ("Relevancy for the purposes of Rule 26 is broadly construed."); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (construing relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").  As already discussed, indemnification agreements *are* relevant to the issue of whether Defendants are culpable for direct and indirect infringement.  During the February 22 meet-and-confer, TSMC evaded this irrefutable fact by simply stating that TSMC "did not agree with Ocean's position."  (Ex. 4 at 3.)  As of the filing of this Motion, TSMC has failed to identify a single legal authority to support its irrational relevance position, which, as noted above, directly contradicts Supreme Court and Federal Circuit precedent.

TSMC never asserted in its discovery responses to the RFPs seeking the Third Category of Discoverable Information or during the meet-and-confers that any narrowing of such requests would be less burdensome.  As TSMC is the sole entity with the relevant information on indemnification agreements to which it is a party, and because TSMC raised no other objections during the meet-and-confers regarding its failure to produce documents related to this Third Category of Discoverable Information, TSMC should be compelled to produce such documents and a corporate witness to testify to these documents.

**D.     TSMC Should Be Compelled to Produce the Fourth Category of Discoverable Information Concerning TSMC's Use of the Accused Tools and the Functions of Such Tools**

Finally, Ocean has a substantial need for discovery relating to the Fourth Category of Discoverable Information, which would provide key information on how the Accused Tools are

used by TSMC at its manufacturing facilities to manufacture the Infringing Instrumentalities.

The Fourth Category of Discoverable Information is covered by the following RFPs:

**Request for Production No. 13**—Documents relating to the design, development, operation, and/or implementation of any APC and/or FDC hardware, software, systems, components, and/or modules by any entity other than Applied Materials that are/were used, utilized, installed, implemented and/or deployed in Your manufacturing, fabrication, and/or assembly tool, equipment, and/or facility in connection with Your manufacturing, fabrication, and/or assembly of any Infringing Instrumentalities, including any in-house and/or proprietary APC and/or FDC hardware, software, systems, components, and/or modules designed, developed, operated, and/or implemented by You.

**Request for Production No. 32**—Documents sufficient to show any manufacturing equipment, tool, and/or platform used, utilized, installed, implemented, and/or deployed in any of Your manufacturing and/or fabrication facilities that includes an adjustable wafer stage.

**Request for Production No. 33**—Documents relating to identifying, detecting and/or determining whether a manufacturing-related fault exists in Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

**Request for Production No. 34**—Documents sufficient to show any remedial actions taken by You upon identifying, detecting, and/or determining manufacturing-related faults exist in Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

**Request for Production No. 35**—Documents relating to the translation of communications or data connection protocols (e.g., SECS (SEMI equipment communication standard), TCP/IP, OPC (OLE for Process Control), TIBCO, and ODP (optical data profiling)) between Your manufacturing and/or fabrication tool and/or equipment and Your FDC system, platform, and/or framework.

**Request for Production No. 36**—Documents sufficient to show the scheduling of factory events, preventive maintenance ("PMs"), manufacturing tasks and/or qualification tests ("Quals") in connection with Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities, including, without limitation, scheduling of processing for lots and/or wafers, manufacturing and/or fabrication tool and/or equipment, PMs and Quals, and/or manufacturing resources in connection with Your manufacture, fabrication and/or assembly of the Infringing Instrumentalities.

**Request for Production No. 37**—Documents sufficient to show Your manufacturing execution system ("MES") used, utilized, installed, implemented,

and/or deployed at any of Your manufacturing and/or fabrication facilities in connection with Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

**Request for Production No. 38**—Documents sufficient to show manufacturing-related actions taken by You in response to any of Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities being malfunctioned, inoperable, and/or defective during such manufacture, fabrication, and/or assembly.

**Request for Production No. 39**—Documents sufficient to show Your measurement of critical dimension ("CD") and/or overlay in connection with any and all semiconductor wafers used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

**Request for Production No. 40**—Documents sufficient to show the use, implementation, or deployment of any grating or grating structure in connection with any and all semiconductor wafers used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities during Your measurement of CD and/or overlay as described in Request for Production No. 39.

**Request for Production No. 41**—Documents sufficient to show any efforts made by You to mitigate overlay errors and/or bring CDs within acceptable tolerance in connection with any and all semiconductor wafers used for Your manufacture, fabrication, and/or assembly of any and all Infringing instrumentalities.

**Request for Production No. 42**—Documents relating to Your collection of metrology data used in connection with Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities, including processing of such data such as, without limitation, data filtering.

**Request for Production No. 43**—Documents sufficient to show how Your collection of metrology data as described in Request for Production No. 42 is used in connection with Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities, including monitoring semiconductor wafers, modifying operating recipes, and/or controlling Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

**Request for Production No. 44**—Documents sufficient to show how You determine whether a manufacturing-related fault identified, detected, and/or determined to exist in Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities is a false positive or false negative.

**Request for Production No. 45**—Documents sufficient to show how You determine whether a manufacturing-related fault identified, detected, and/or determined to exist in Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities is one that requires You to remediate, rectify, cure, or correct such a fault.

**Request for Production No. 46**—Documents sufficient to show any fault detection analysis performed by You to identify, detect, and/or determine manufacturing-related faults in Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

**Request for Production No. 47**—Documents sufficient to show any adjustment or modification to any fault detection analysis as described in Request for Production No. 46, including any adjustment or modification of any parameters that contribute to the identification, detection, and/or determination as to whether a manufacturing-related fault exists in Your manufacturing and/or fabrication tool and/or equipment used for Your manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

The relevance and essential nature of how TSMC uses the Accused Tools to manufacture the Infringing Instrumentalities at TSMC's manufacturing facilities is indisputable. In order to effectively prove that the Infringing Instrumentalities are manufactured based on the claimed methods, Ocean requires technical evidence from TSMC on its manufacturing processes, including the model and make of its manufacturing tools, and the specific tool function and configuration used for the manufacture of the Infringing Instrumentalities.

Once again, TSMC has never disputed the relevance or importance of this discovery. Rather, TSMC objected to the production of this Fourth Category of Discoverable Information because Ocean allegedly did not "identify specific systems or tools of interest." (Ex. 4 at 3.) This is false. Setting aside that Ocean's RFPs explicitly identify the "specific systems or tools of interest" (e.g., Accused Tools by ASML, camLine, Applied Materials, and PDF Solutions) as discussed in Section IV(A)-(C) *supra* in connection with the First, Second, and Third Category of Information, *all* of the Asserted Claims are method, not system, claims covering manufacturing processes. (*See supra* at Sec. II.B.) To strictly limit Ocean's discovery to a

19

specific system or tool used by TSMC would undoubtedly exclude Ocean from seeking redress of infringement (and damages flowing therefrom) by those products manufactured using unknown or proprietary tools that also use the same infringing processes for manufacturing the Infringing Instrumentalities.

The Fourth Category of Discoverable Information is actually exceedingly narrow because each request is intrinsically tied to TSMC's "manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities" and the focus is on technical "information related to the Defendants named in the subpoena." (*Id.* at 5.) Any manufacturing tools that have not been used to manufacture the Infringing Instrumentalities are not at issue. Indeed, TSMC recognized that these requests are "narrow" (Ex. 4 at 3) and its counsel represented that it would "discuss this potentially *narrowed* position with [their] client." (*Id.* at 4.) Nevertheless, TSMC has issued no response to date.

TSMC's assertion that these RFPs are overbroad is contradictory and insufficient to overcome Ocean's overriding need. Because the Fourth Category of Discoverable Information is central to proving liability, infringement and damages in the underlying actions, TSMC should be compelled to produce any and all responsive documents.

## V.   CONCLUSION

For all the foregoing reasons, Ocean respectfully requests that the Court grant this Motion in its entirety and compel TSMC to produce documents in response to the RFPs discussed herein for use in each of the eight WDTX and EDTX Actions.

Dated:  February 25, 2022                 <u>/s/ Timothy Devlin</u>
                                          Timothy Devlin (4241)
                                          tdevlin@devlinlawfirm.com
                                          Joel Glazer (6663)
                                          jglazer@devlinlawfirm.com
                                          Peter Mazur (6732)
                                          pmazur@devlinlawfirm.com
                                          DEVLIN LAW FIRM LLC
                                          1526 Gilpin Avenue
                                          Wilmington, Delaware 19806
                                          Telephone: (302) 449-9010
                                          Facsimile: (302) 353-4251

                                          *Attorneys for Movant*
                                          OCEAN SEMICONDUCTOR LLC

## CERTIFICATE OF CONFERENCE

Counsel for Ocean has, per D. Del. L.R. 7.1.1, conferred on several occasions with counsel for the Respondent with respect to the relief sought by this Motion.

*/s/ Timothy Devlin*
Timothy Devlin

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Timothy Devlin*
Timothy Devlin