# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Ocean Semiconductor LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 6:20-cv-1210-ADA |
| MediaTek Inc. and MediaTek USA Inc. ("MediaTek"), | DEMAND FOR JURY TRIAL |
| Defendants. | |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS MEDIATEK INC. AND MEDIATEK USA INC. (NOS. 1-42)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Court's Order Governing Proceedings—Patent Case ("OGP"), Plaintiff Ocean Semiconductor LLC ("Ocean" or "Plaintiff"), by and through its attorneys, hereby requests that Defendants MediaTek Inc. and MediaTek USA Inc. ("MediaTek" or "Defendants") produce the following documents and things at 515 Congress Ave #1700, Austin, TX 78701 on such terms as subsequently mutually agreed by the parties and following the Definitions and Instructions within thirty (30) days of service of this request.

**DEFINITIONS**

A.      "Plaintiff," "Ocean Semiconductor," or "Ocean" shall mean Ocean Semiconductor LLC and its predecessors, successors, assigns, parents, subsidiaries and divisions, affiliates, partners, and all past and present directors, officers, employees, agents, and

representatives (including consultants and attorneys) of any of the foregoing, and all persons

acting, or purporting to act, on their behalf.

      B.     "MediaTek," "Defendants," "You," or "Your" shall mean Defendants MediaTek

Inc., MediaTek USA Inc. and all of their corporate locations, and all predecessors, subsidiaries,

parents, and affiliates; and all past or present directors, officers, agents, representatives,

employees, consultants, attorneys, accountants, and any other persons acting or purporting to act

for or on their behalf.

      C.     "Other Defendant" and "Other Defendants" shall mean any and all of the

following entities: Huawei Device USA, Inc., Huawei Device Co., Ltd., HiSilicon Technologies

Co., Ltd., NVIDIA Corporation, NXP USA, Inc., Renesas Electronics Corporation, Renesas

Electronics America, Inc., Silicon Laboratories Inc., STMicroelectronics, Inc., Western Digital

Technologies, Inc., Analog Device, Inc., Infineon Technologies AG, and Infineon Technologies

Americas Corp., as well as all predecessors, successors, assigns, parents, subsidiaries and

divisions, affiliates, partners of any of the foregoing, and all persons acting, or purporting to act,

on behalf of any of the foregoing.

      D.     "TSMC" shall each mean and refer, individually and collectively, to Taiwan

Semiconductor Manufacturing Company, Ltd.; all of its corporate locations, and all

predecessors, successors, assigns, parents, subsidiaries and divisions, affiliates, partners; and all

past and present directors, officers, employees, agents, and representatives (including

accountants, consultants, and attorneys) of any of the foregoing, and all persons acting, or

purporting to act, on its behalf.

      E.     "UMC" shall each mean and refer, individually and collectively, to United

Microelectronics Corp.; all of its corporate locations, and all predecessors, successors, assigns,

parents, subsidiaries and divisions, affiliates, partners; and all past and present directors, officers, employees, agents, and representatives (including accountants, consultants, and attorneys) of any of the foregoing, and all persons acting, or purporting to act, on its behalf.

F.      "Applied Materials" shall mean Applied Materials, Inc., all of its corporate locations, and all predecessors, successors, assigns, parents, subsidiaries and divisions, affiliates, partners, and all past and present directors, officers, employees, agents, and representatives (including accountants, consultants, and attorneys) of any of the foregoing, and all persons acting or purporting to act on its behalf.

G.      "PDF Solutions" shall mean PDF Solutions, Inc., all of its corporate locations, and all predecessors, successors, assigns, parents, subsidiaries and divisions, affiliates, partners, and all past and present directors, officers, employees, agents, and representatives (including accountants, consultants, and attorneys) of any of the foregoing, and all persons acting or purporting to act on its behalf.

H.      "camLine" shall mean camLine GmbH, all of its corporate locations, and all predecessors, successors, assigns, parents, subsidiaries and divisions, affiliates, partners, and all past and present directors, officers, employees, agents, and representatives (including accountants, consultants, and attorneys) of any of the foregoing, and all persons acting or purporting to act on its behalf.

I.      "Action" shall mean the above-captioned case pending before the United States District Court for the Western District of Texas.

J.      "Infringing Instrumentalities" shall mean products include, without limitation, mobile devices (e.g., Helio G, Helio A, Helio P, Helio X, mid-range 4G devices, and Google Mobile Services express devices), tablet products (e.g., MiraVision), internet of things devices

3

(e.g., i500, i350, i300A, i300B, MT3620, MT2625, MT2621, MT2601, MT2523G, MT2523D, MT2511, MT6280, MT2502, MT5931, MT3332, MT 2503, MT3333, MT3303, MT3337, and MT3339), automotive devices (e.g., Autus I20 (MT2712) devices, Autus R10 (MT2706) devices, and Autus T10 (MT2635) devices), networking and broadband devices (e.g., MediaTek T750 MT7688A, MT7628K/N/A, MT7623N/A, MT7622, MT7621A/N, MT7620N/A, RT3662, RT3883, MT7688K, MT5932, MT8167S, MT7686, MT7682, MT7697H/HD, MT7681, MT7687F, MT7697, MT7697D, MT7601E, MT7601U, MT7603E, MT7603U, MT7610E, MT7610U, MT7612E, MT7612U, MT7615, MT7615B, MT7615S, MT7662E, MT7662U, MT7668, RT3062, RT3070, RT3562, RT3573, RT3593, RT5370, RT5572, RT5592, MT3729, MT7601, MT7610, MT7630, RT5372, RT539x, RT8070, RT2870, RT2890, RT309x, RT3290, RT3370, RT3572, RT2070, RT2760, RT2770, RT2790, and RT2860), and home devices (e.g., MT8516 SoM, MT8516, MT8507, MT8502, MediaTek C4X Development Kit for Amazon AVS, MT8516 2-Mic Development Kit for Amazon AVS, MT8516, MT8693, MT8685, MT8581, MT8580, MT8563, MT8553, MT1389/G, MT1389/J, MT1389/Q, S900 (MT9950), MT9613, MT9685, MT9602, MT5592, MT5582, MT5596, MT5597, MT5580, MT5561, MT5505, MT5398, MT5396, MT1959, MT1887, MT1865, MT1862, and MT1398), flash memory and memory controllers (e.g., MT81XX SPI), and WiFi extenders (MTK7621A), television products (e.g., S900 (MT9950)); camera products (e.g., MediaTek Dimensity 900), IoT products (e.g., MT8385; MediaTek i350, i300A (MT8362A), i300B (MT8362B), MT3620 MCU) gaming products (e.g. MediaTek Helio G90 Series, MediaTek Helio G85, MediaTek Helio G80, MediaTek Helio G70, MediaTek Helio G25, MediaTek Helio G35, MediaTek Helio

G95) and similar systems, products, devices, and integrated circuits including, for example, products manufactured at 16nm technology node.[1]

K.      "Asserted Patents" shall mean U.S. Patent Nos. 6,660,651 ("'651 Patent"), 6,907,305 ("'305 Patent"), 6,725,402 ("'402 Patent"), 6,968,248 ("'248 Patent"), 7,080,330 ("'330 Patent"), 6,836,691 ("'691 Patent"), and 8,676,538 ("'538 Patent").

L.      "Advanced Process Control" or "APC" means any computer integrated system or factory automation hardware or software for monitoring and/or controlling processes and tools used in the manufacture, fabrication, assembly and/or production of semiconductor systems, devices, components, and/or integrated circuits.

M.      "Fault Detection and Classification" or "FDC" means any computer integrated hardware or software for the detection and/or classification of manufacturing-related fault events in the manufacture, fabrication, assembly and/or production of semiconductor systems, devices, components, and/or integrated circuits.

N.      "YieldStar" refers to any and all metrology and inspection systems designed, developed, assembled, and/or manufactured by ASML, including without limitation ASML's optical metrology systems (e.g., YieldStar 1385, YieldStar 1375F, YieldStar 375F, YieldStar 380G, YieldStar 375) and E-beam metrology and inspection systems (e.g., HMI eScan 600, HMI eScan 430, HMI eP5, and HMI eScan 1000), as well as all models, versions, and their predecessors (e.g., YieldStar S-250, YieldStar S-200, and YieldStar S-100).

---

[1] It should be understood that the "Infringing Instrumentalities" definition is not intended to be coextensive with the claims of the Asserted Patents but is instead intended to elicit relevant information proportional to the needs of the case, consistent with the limits of discoverable subject matter pursuant to the Federal Rules of Civil Procedure.  Thus, it would be improper for You to withhold otherwise responsive information regarding Your products from these discovery requests on the basis that You allege that the products do not infringe the Asserted Patents.

O.      "TWINSCAN" refers to any and all lithography systems designed, developed, assembled, and/or manufactured by ASML, including ASML's deep ultraviolet (DUV) lithography systems (e.g., NXT:2050i, NXO:2000i, NXT:1980Di, NXT:1970:Ci, NXT:1470, XT:1460K, XT:1060K, XT:860M, and XT:400L) and extreme ultraviolet (EUV) lithography systems (e.g., NXE:3600D and NXE:3400C), as well as lithography systems that utilize more than one wafer table (e.g., AT:1100, AT:750, AT:400, and XT:400L), and their predecessors.

P.      "E3" refers to Applied Materials' E3 framework, platform, hardware, and/or software and all modules of E3 (e.g., E3 FDC, E3 R2R (Run-to-Run Control), E3 SPC (Statistical Process Control)) as well as all models, versions, and their predecessors.

Q.      "Smart Factory" refers to Applied Materials' SmartFactory Productivity Solution framework, platform, hardware and/or software and all modules of SmartFactory (e.g., SmartFactory APF (Advanced Productivity Family) RTD (Real Time Dispatcher), SmartFactory Scheduling (SmartSched), and SmartFactory Activity Manager) as well as all models, versions, and their predecessors.

R.      "LineWorks" refers to camLine's LineWorks framework, platform, hardware and/or software and all modules of LineWorks (e.g., LineWorks MaiMa (Pulse), LineWorks WIP, LineWorks MMS, LineWorks MPM, LineWorks ECoFrame, LineWorks PULSE, LineWorks SPACE, and LineWorks eCAP) as well as all models, versions, and their predecessors.

S.      "Exensio" refers to PDF Solutions' Exensio framework, platform, hardware and/or software and all modules of Exensio (e.g., Exensio Control) as well as all models, versions, and their predecessors.

T.     "ASML Manufacturing Equipment" shall mean individually or collectively any and all of ASML's TWINSCAN, YieldStar, and similar lithography, metrology, and inspection systems designed, developed, assembled, and/or manufactured by ASML (e.g., systems with similar technical and functional features) as well as all associated models, versions, and their predecessors.

U.     "AMAT Manufacturing Equipment" shall mean individually or collectively any and all of Applied Materials' E3, SmartFactory, associated system(s), framework(s), platform(s), hardware, and/or software and modules, and similar APC/FDC and/or factory automation systems designed, developed, assembled, and/or manufactured by Applied Materials (e.g., systems with similar technical and functional features) as well as all associated models, versions, and their predecessors.

V.     "camLine Manufacturing Equipment" shall mean individually or collectively any and all of camLine's LineWorks, associated system(s), framework(s,) platform(s), hardware, and/or software and module(s), and similar products and/or solutions for production automation and manufacturing execution systems that are designed, developed, assembled, and/or manufactured by camLine (e.g., systems with similar technical and functional features) as well as all associated models, versions, and their predecessors.

W.     "PDF Manufacturing Equipment" shall mean individually or collectively any and all of PDF Solutions' Exensio, associated system(s), framework(s,) platform(s), hardware, and/or software and module(s), and similar analytics systems designed, developed, assembled, and/or manufactured by PDF Solutions (e.g., systems with similar technical and functional features) as well as all associated models, versions, and their predecessors.

X.      "Manufacturing Equipment" shall mean individually or collectively any and all of ASML Manufacturing Equipment, AMAT Manufacturing Equipment, camLine Manufacturing Equipment, and PDF Manufacturing Equipment, as well as any and all similar in-house, proprietary, and/or third-party equipment and/or tool (e.g., systems with technical and functional features similar to any ASML Manufacturing Equipment, AMAT Manufacturing Equipment, camLine Manufacturing Equipment, and/or PDF Manufacturing Equipment) designed, developed, assembled, manufactured, used, utilized, installed, implemented, and/or deployed by You for the manufacture, fabrication, and/or assembly of any and all Infringing Instrumentalities.

Y.      "Equipment Manufacturers" shall mean individually or collectively any and all manufacturers of Manufacturing Equipment including, but not limited to, ASML, Applied Materials, camLine, PDF Solutions, and You (to the extent that You designed, developed, and/or manufactured equipment with technical and functional features similar to any Manufacturing Equipment).

Z.      "Third-Party Manufacturers" shall mean individually or collectively any and all third-party manufacturers for any and all Infringing Instrumentalities, including, without limitation, Taiwan Semiconductor Manufacturing Company, Ltd., United Microelectronics Corp., and their parents and/or subsidiaries.

AA.     "Third-Party Importers" shall mean any and all Persons or entity engaged, contracted, retained, instructed, or requested by, or on behalf of, You to enable the importation of any and all MediaTek Infringing Instrumentalities into the United States.

BB.     "MES" shall mean any and all manufacturing execution systems used for monitoring, tracking, and/or documenting the process of manufacturing, fabricating, and/or assembling the Infringing Instrumentalities.

CC.     The terms "sale" and "sold" means the transfer of title to property from one party to another and includes the granting of a license with respect to products containing software or firmware.

DD.     "Prior Art" means any patent, publication, device, or activity that may fall within the scope of 35 U.S.C. §§ 102 and/or 103.

EE.     "Person" shall mean any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys, or other representatives acting on the Person's behalf.

FF.     The term "possession" means all information or documents actually within Your knowledge, possession, custody or control, including any employee, consultant, aide or other representative (including without limitation attorneys and accountants) and any other Person acting or purporting to act on Your behalf or in concert with you, and includes any temporary placing of possession, custody or control in any third party by any of the foregoing Persons.

GG.     "Document" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure and shall include, without limitation, any written, recorded, graphic, or other matter; whether sent or received or made or used internally; however produced or reproduced; and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, files, or printouts; tapes, discs, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, emails, pictures, photographs, slides, films, microfilms, motion pictures; or any other medium); and any other tangible item or thing of readable, recorded, or visual material of whatever nature, including, without limitation, originals, drafts, electronic documents with included metadata; and

9

all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of hand-written notes or annotations, represents a distinct version).

HH.    "Thing" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

II.    "Communication" shall mean any transmission of information in any context or situation by or between two or more persons by any means or medium whatsoever, whether in the form of an original, a draft, or a copy; whether stored in hard copy, electronically or digitally, or on tape; either orally or in writing, including but not limited to, conversations, correspondence, electronic mails, telexes, facsimile transmissions, telecopies, recordings in any medium of oral, written, or typed communications, telephone or message logs, notes or memoranda relating to written or oral communications, and any translations thereof.

JJ.    "Code" shall include source code, binary code, object code, executable code, or any other form of software, firmware, or human or machine-readable code and any documents or other materials contained in any version control system, content management system, revision control systems and/or source code control systems, including changes and/or comments related to such source code, binary code, object code, executable code, or any other form of software, firmware, or human or machine-readable code.

KK.    "Identify" and "Identity" shall each mean:

   a.    as applied to an individual: to state the individual's full name, present or last known address and telephone number, present or last known employer, present or last known business address and telephone number, present and prior employment positions and corresponding dates of such positions, and a description of his or her present employment responsibilities;

b.    as applied to a Person other than a natural person (including but not limited to any business or other entity): to state the Person's full name, place, and date of incorporation or formation, principal place of business or activity, and the identity of the natural persons within that entity having knowledge of the matter with respect to which that entity is named;

c.    as applied to a Document (whether or not any claim of privilege is made in respect thereof): to state the type of Document, the date of creation of the Document, the date of communication of the Document, the names of Identities of the individuals who drafted, authored, or signed the Document or to whom a copy thereof was addressed or sent, a summary of the subject matter of the Document, the number of pages of the Document, the present whereabouts of the Document, including without limitation, all originals and copies, and the name and address of the present or last-known custodian of the Document;

d.    as applied to a Thing (including, without limitation, any products or software manufactured, developed, or sold by Siemens): to state the date that the Thing was first utilized or made available for use in commerce, all versions, parts, or revision numbers or codes, all product names, and all team names or project titles used in connection with the design, development, testing, or engineering of that product or software;

e.    as applied to a process: to state the date that the process was first used, the date that products or goods sold through the process were first sold, all numbers or codes used to refer to the process, including but not limited to,

process revision numbers or codes, all process names, and all team names or project titles used in connection with the design, development, testing, or engineering of that process; or

f.    as applied to a Communication: to state the type of the Communication, the date and the parties to such Communication, and if such Communication has been recorded in documentary form, to identify all Documents recording such Communication.

LL.    The term "Software" shall mean instructions, statements, procedures, modules, objects, libraries, subroutines, or programs written in a programming language, design description language or assembly language, including source code, firmware, or microcode, which includes, without limitation, source files, make files, intermediate output files, header files, resource files, library files, module definition files, map files, object files, linker files, browse information files, and debug files.

MM.    "Information" shall mean information in any form, including but not limited, to, documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to, orally, in writing, or via electronic communication.

NN.    "Describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or Communication, shall mean: (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what was said or done; and (4) to identify each document used or prepared in connection therewith or making any reference thereto.

OO.     "Date" shall mean the exact date, if known, or the close approximation to the exact date as can be specified, including, without limitation, the year, month, week in a month, or part of a month.

PP.     "Relate to," "Related to," "Relating to," or "Concerning" shall mean in whole or in part, constituting, containing, embodying, reflecting, describing, involving, supporting, contradicting, evidencing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

QQ.     As used herein, the singular form of a word is to be interpreted as plural and the plural form of a word shall be interpreted as singular, whichever is appropriate, so as to bring within the scope of these Interrogatories any information or documents that might otherwise be considered beyond their scope.

RR.     Wherever possible or necessary to render a given Interrogatory more inclusive than it otherwise might be, any verb tense should be construed to include other tenses; and any reference to one gender should be construed to include the other.

SS.     Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate and inclusive.

TT.     Except where the context does not permit, the term "including" shall be without limitation.

UU.     Except where the context does not permit, the terms "and" and "or" shall be both conjunctive and disjunctive.

VV.     Except where the context does not permit, the terms "each" and "any" shall mean any and all.

## INSTRUCTIONS

1.      Each request shall be answered pursuant to Fed. R. Civ. P. 26 and 34 and supplemented as required by Fed. R. Civ. P. 26(e).

2.      These requests shall apply to all documents in Your possession, custody, or control at the present time, or coming into Your possession, custody, or control prior to the date of the production. If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in Your possession, custody, or control, You shall so state and shall identify such documents or things and the person who has possession, custody, or control of the documents or things.

3.      If You withhold and/or do not search for any thing, document, or communication on the grounds that You contend they are in the sole possession, custody, or control of a third party, including any Third-Party Manufacturer, Equipment Manufacturer, or Third-Party Importer and/or other partners, subsidiaries, affiliates, branch offices, divisions, departments, bureaus, or agents, You shall so state and shall identify such things, documents, or communications, including by identifying the person or entity that has possession, custody, or control.

4.      If no documents exist that are responsive to a particular request, You are to state in Your response that no responsive documents exist.

5.      If You withhold any document, communication, or portion thereof, in response to any of the requests set forth below on grounds of privilege or any other claim of immunity from discovery, then for each document, communication, or portion thereof withheld, state the following: (a) the type of document (e.g., letter, memorandum, contract, etc.); (b) its title; (c) its

date; (d) its subject matter; (e) the name, address, and employer at the time of preparation of the individual(s) who authored, drafted, or prepared it; (f) the name, address, and employer at the time of dissemination of the individual(s) to whom it was directed, circulated, or copied, or who had access thereto; and (g) the grounds on which the document is being withheld (e.g., "attorney-client privilege," "work product," etc.).

6.      If You contend that a portion of a document contains information that is immune from discovery, then produce the document with the allegedly immune portion redacted therefrom and describe the redacted portion in a privilege log pursuant to the instructions in paragraph 5 above.

7.      These requests seek all responsive documents in their original language, and, if such original language is not English, these requests also seek all English-language translations that may exist for any such documents.

8.      Each document is to be produced along with all drafts, without abbreviation or redaction.

9.      In the event that You object to any request, Your objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection or production of the rest.

10.     In addition to the Instructions in paragraph 9, in the event that You object to any request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad or unduly burdensome and state specifically the extent to which You have narrowed that request for purposes of Your response and the factual basis for Your conclusion.

11.     In addition to the Instructions in paragraph 9, in the event that You object to any request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed by You to such words for purposes of Your response thereto.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to identify all Your products, including the Infringing Instrumentalities, that are/were manufactured, fabricated, and/or assembled by, or on behalf of, You, Third-Party Manufacturer(s), and/or Equipment Manufacturer(s) through the use, utilization, installation, implementation, and/or deployment of any and all Manufacturing Equipment since December 2014, including the identification of all versions and models of any such product.

**REQUEST FOR PRODUCTION NO. 2:**

Documents relating to the use, sale, or offer for sale within the United States, and/or importation into the United States, of each product identified in Request for Production No. 1, since December 2014, including the identification of all versions and models of any such product.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to identify any and all Third-Party Manufacturers contracted, engaged, retained, instructed, or requested by, or on behalf of, You to manufacture, fabricate, and/or assemble those products identified in Request for Production No. 1, since December 2014, including the location of any and all manufacturing and/or fabrication facilities where such products are/were manufactured, fabricated, and/or assembled.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to identify any and all Third-Party Importers contracted, engaged, retained, instructed, or requested by, or on behalf of, You to import, or enable the importation of,

17

any and all those products identified in Request for Production No. 1, into the United States since December 2014.

## REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to identify any and all lithography and/or metrology systems, other than the ASML Manufacturing Equipment, that are/were used, utilized, installed, implemented, and/or deployed by You and/or any Third-Party Manufacturer for the manufacture, fabrication, and/or assembly of the Infringing Instrumentalities.

## REQUEST FOR PRODUCTION NO. 6:

Documents sufficient to identify any and all APC, FDC, and/or factory automation systems, other than the AMAT Manufacturing Equipment, that are/were used, utilized, installed, implemented, and/or deployed by You and/or Third-Party Manufacturer for the manufacture, fabrication, and/or assembly of the Infringing Instrumentalities.

## REQUEST FOR PRODUCTION NO. 7:

Documents sufficient to identify any and all equipment and/or tool, hardware or software, used in lieu of or in addition to the camLine Manufacturing Equipment if You contend that You and/or any Third-Party Manufacturer do(es) not use, utilize, install, implement, and/or deploy, or are(is) not to limited to such use, utilization, installation, implementation, and/or deployment of, the camLine Manufacturing Equipment for managing, controlling, or configuring Your and/or Third-Party Manufacturer's production automation or manufacturing execution system(s) for the manufacture, fabrication, and/or assembly of the Infringing Instrumentalities.

## REQUEST FOR PRODUCTION NO. 8:

Documents sufficient to identify any and all equipment and/or tool, hardware or software, used in lieu of or in addition to the PDF Manufacturing Equipment if You contend that You

and/or any Third-Party Manufacturer do(es) not use, utilize, install, implement, and/or deploy, or are(is) not to limited to such use, utilization, installation, implementation, and/or deployment of, the PDF Manufacturing Equipment for monitoring, collecting, filtering, controlling, managing, storing and/or configuring semiconductor manufacturing data that is monitored, collected, processed, analyzed, filtered, and/or used for the manufacture, fabrication, and/or assembly of the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 9:**

Documents relating to Your agreement, contract, collaboration, partnership, and/or interactions with any third party, including Third-Party Manufacturers and Equipment Manufacturers, concerning the manufacture, fabrication, and/or assembly of those products identified in Request for Production No. 1, including, without limitation, master service agreements, partnership agreements, development agreements, contract manufacturing agreements, manufacturing supply agreements, supplier agreements, distribution agreements, manufacturing contract service level agreements, and semiconductor purchase agreements.

**REQUEST FOR PRODUCTION NO. 10:**

Documents and Communications between You, Third-Party Manufacturers, and/or Equipment Manufacturers showing the identity and role played by You in the design, development, manufacture, fabrication, assembly, testing, and/or importation of each product identified in Request for Production No. 1, including, without limitation, Your role in directing, selecting, or controlling design specification, operating recipes, error tolerance, measurement accuracy, semiconductor manufacturing processes, location of manufacture, and location to which the Infringing Instrumentalities are/were imported.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to identify any and all applicable technology node(s) for each product identified in Request for Production No. 1 that are/were manufactured, fabricated, and/or assembled by You, Third-Party Manufacturers, and/or Equipment Manufacturers.

**REQUEST FOR PRODUCTION NO. 12:**

Documents relating to, or reflecting, any agreement between You, Third-Party Manufacturers and/or Equipment Manufacturers to be indemnified by, or to indemnify, You, Third-Party Manufacturers and/or Equipment Manufacturers for patent infringement in connection with the manufacture, fabrication, and/or assembly of those products identified in Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to identify all third-party products that have been offered for sale, sold, made, used, or imported within the United States since December 2014, that incorporate, comprise, or include any product identified in Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 14:**

Documents sufficient to identify all customers, distributors, resellers, seller's agents, or independent sales representatives for those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 15:**

Documents sufficient to show Your organizational structure, including, but not limited to, organization charts that show Your affiliates, subsidiaries, or divisions, or entities acting on Your behalf of or under Your direction, that are, or have been, involved in: (a) engineering, design, and research and development; (b) manufacture, fabrication and assembly; (c) exportation;

(d) importation; and (e) marketing, sales and promotion of each of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 16:**

Documents concerning any testing of any of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities, including testing instructions, testing results, studies, reports, notebooks, notes, videos, focus group reports, and/or memoranda.

**REQUEST FOR PRODUCTION NO. 17:**

Documents relating to the market for any of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities, including, without limitation, all Documents concerning: (a) identification and characteristics of the market(s) in which the Infringing Instrumentalities are sold, including without limitation third party products that incorporate, comprise, or include the Infringing Instrumentalities; (b) Your market share and each of Your competitors in any market in which the Infringing Instrumentalities are sold, including, without limitation, identification and description of the demand for the Infringing Instrumentalities; (c) studies, capital plans, investment plans, consumer surveys, advertising campaigns, reports, market surveys, consumer surveys, focus group information, press release, market analyses, or forecast of customer demand or market shares in any market in which the Infringing Instrumentalities are sold; (d) Your decision to develop the market or otherwise enter the market in which the Infringing Instrumentalities are sold; (e) advantages of the Infringing Instrumentalities over other products in the markets in which the Infringing Instrumentalities are sold; and (f) the market and customer demand, need, or market potential or desirability of the Infringing Instrumentalities.

21

**REQUEST FOR PRODUCTION NO. 18:**

Documents relating to forecasts or projections of market size or market share for those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 19:**

Documents related to any technical support (including any technical support emails), online support (including through the technical support forums and customer support center available on Your website), and/or customer services You, or any third party contracted by, for, or on behalf of, You, provides for those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify Your accounting methods for revenues, cost allocation, and profits for those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities, including accounting procedures manuals and charts of accounts.

**REQUEST FOR PRODUCTION NO. 21:**

Documents relating to Your internal and external financial statements, profitability studies and reports, gross-margin studies and reports, and turnover studies and reports for each of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities, since December 2014.

**REQUEST FOR PRODUCTION NO. 22:**

Documents relating to Your profit and margin information, including gross profits, operating profits, net profits, and profits before taxes, for those products identified in Request

for Production No. 1 including, but not limited to, the Infringing Instrumentalities since 2014, broken down by quarter and by U.S. versus worldwide sales and revenue, including documents sufficient to explain any acronyms or terminology employed by Your accounting system.

## REQUEST FOR PRODUCTION NO. 23:

Documents relating to Your sales and revenue information for those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities since December 2014, broken down by quarter and by U.S. versus worldwide sales and revenue, including documents sufficient to explain any acronyms or terminology employed by Your accounting system.

## REQUEST FOR PRODUCTION NO. 24

Documents and Communications relating to patent royalties actually or customarily paid in the industry involving or relating to any of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

## REQUEST FOR PRODUCTION NO. 25

Documents concerning or reflecting royalties paid by, or to, You for a patent license involving any of those products identified Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities, including all license agreements, covenants not to sue, royalty agreements, settlement agreements, technology transfer, authorization-to-use agreements and/or any other agreements, wherein You licensed any right or interest in any of the Infringing Instrumentalities; and documents sufficient to identify with particularity: (i) the person with whom the agreement was made; (ii) the technology licensed; (iii) the license rate;

(iv) the amounts of money paid, annually or quarterly, and in total; and (v) any parties and Persons with knowledge of such licenses or agreements.

**REQUEST FOR PRODUCTION NO. 26:**

For each of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities, all materials maintained on Your web site relating to those instrumentalities, including current and archival copies.

**REQUEST FOR PRODUCTION NO. 27:**

Documents relating to whether any of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities or component thereof was, or was not, made or adapted for use in any third-party product, including, without limitation, Your awareness thereof.

**REQUEST FOR PRODUCTION NO. 28:**

Documents sufficient to show the date of Your first awareness of each of the Asserted Patents, including Documents identifying the date, circumstances, and Person(s) through which You first learned of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 29:**

Documents and Communications relating to actions that You took upon becoming aware of the existence of the Asserted Patents, including, without limitation, Documents and non-privileged Communications relating to any assessments or analyses made relating to potential infringement of the Asserted Patents by those products identified in Request to Production No. 1 and the validity or enforceability of the Asserted Patents, and Your Communications with Third-Party Manufacturers and/or Equipment Manufacturers regarding the manufacture, fabrication,

and/or assembly of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 30:**

Documents and Communications between You and Other Defendants, including any joint defense agreement and/or common interest agreement.

**REQUEST FOR PRODUCTION NO. 31:**

Documents and Communications relied upon by You in the preparation of any discovery response served in this lawsuit or any response or supplemental response to any interrogatory, request for admission, or other discovery request served in this lawsuit.

**REQUEST FOR PRODUCTION NO. 32:**

Documents and Communications relating to Ocean, the Asserted Patents, the named inventors on any of the Asserted Patents, or this Action.

**REQUEST FOR PRODUCTION NO. 33:**

All English translations of any foreign language documents produced in response to these Requests for Production to the extent that such English translation is in Your possession, custody, or control, including translations prepared for use in this litigation.

**REQUEST FOR PRODUCTION NO. 34:**

Documents and Communications relating to identifying or describing Your past and present procedures and policies for generating, maintaining, retaining, and disposing of documents, whether maintained in paper form or by other storage methods, such as microfilm or electronically.

**REQUEST FOR PRODUCTION NO. 35**

All board of director minutes and presentations by You discussing Ocean, this Action, Third-Party Manufacturers, Equipment Manufacturers, any of the named inventors of the Asserted Patents, or any of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 36**

Documents and Communications relating to how customers value any of the Infringing Instrumentalities, Third-Party Manufacturers, and/or Equipment Manufacturers, including any studies, surveys, market analyses, or valuations relating to any features of those products identified in Request for Production No. 1 including, but not limited to, the Infringing Instrumentalities.

**REQUEST FOR PRODUCTION NO. 37**

Documents and Communications received by You from any third party as part of this litigation, that relate to this litigation, and/or that are responsive to any outstanding request for production served on You, including, but not limited to, any Documents received pursuant to a subpoena.

**REQUEST FOR PRODUCTION NO. 38**

Documents related to Your contentions that the Asserted Patents, or any claims therein, are invalid or unenforceable, including any alleged prior art.

**REQUEST FOR PRODUCTION NO. 39**

Documents related to any contention by You that Your infringement of the Asserted Patents is not willful and that enhanced damages should not be awarded, including any opinion of counsel that You intend to rely on in support of Your contention.

**REQUEST FOR PRODUCTION NO. 40**

Documents and Things related to this litigation that were provided to, reviewed by, or considered by any expert who will testify or provide an expert report for, or on behalf of, You in this litigation.

**REQUEST FOR PRODUCTION NO. 41**

Documents that You intend to rely upon at trial, in support of any motion, or to present to the Court for any purpose in this litigation.

**REQUEST FOR PRODUCTION NO. 42:**

Documents and Communications relating to the facts alleged in any complaint, answer, or counter-claim in this Action.

Dated: December 23, 2021

DEVLIN LAW FIRM LLC

By: */s/ Alex Chan*
Timothy Devlin
tdevlin@devlinlawfirm.com
Alex Chan
achan@devlinlawfirm.com
1526 Gilpin Ave.
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff Ocean*
*Semiconductor LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2021, I caused the foregoing to be served on all ECF-registered counsel of record.

*/s/ Alex Chan*

Alex Chan