# EXHIBIT 9



1526 Gilpin Avenue
Wilmington, Delaware 19806
United States of America
Tel: 302-449-9010
Fax: 302-353-4251
www.devlinlawfirm.com

December 13, 2021

Tyler R. Bowen
Perkins Coie LLP
2901 N. Central Avenue
Suite 2000
Phoenix, Arizona 85012-2788
Email: TBowen@perkinscoie.com

Re:   *Ocean Semiconductor LLC v. STMicroelectronics, Inc.*, No. 6:20-cv-1215-ADA (W.D. Tex.)

Dear Mr. Bowen,

I am writing in response to STMicroelectronics's ("STMicro") correspondence of October 26, 2021 ("Correspondence") regarding Ocean's Preliminary Infringement Contentions served on July 2, 2021 ("PICs"). STMicro's Correspondence was in response to Ocean's September 8, 2021 letter (Ocean's Response), which, in turn, responded to STMicro's letter of August 11, 2021 ("August Correspondence").

I.      **'651 patent**

As noted in Ocean's Response, as a general matter, STMicro's alleged concerns with respect to Ocean's PICs as to the '651 Patent are not directed to whether Ocean has provided sufficient notice of its infringement theories, but rather to arguments about the sufficiency of Ocean's infringement evidence. STMicro again does not dispute that it is on notice of Ocean's infringement theories. STMicro also does not distinguish the case law cited in Ocean's Response, holding that, at this stage, notice of the infringement theories is sufficient. *See, e.g., Motion Games, LLC v. Nintendo Co., Ltd.*, No. 6:12-cv-878, 2015 WL 1774448, at *2 (E. D. Tex. Apr. 16, 2015) ("Infringement contentions are not intended to act as a forum for argument about the substantive issues but rather serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim"); *see also Pisony v. Commando Constrs., Inc.*, No. 6:17-cv-00055-ADA, 2020 U.S. Dist. LEXIS 210013, at *4 (W.D. Tex. Nov. 10, 2020) ("Proper infringement contentions provide notice of the accusing party's specific theories of infringement") (citations omitted). Given this, STMicro's purported non-infringement

theories are better reserved for any potential motion for summary judgment. Nevertheless, in an effort to avoid further argument, Ocean will address STMicro's alleged concerns.

Regarding STMicro's assertion that "Ocean has failed to identify a single TWINSCAN tool (or more generally, any single tool) that allegedly performs each claimed step of the asserted claims," this topic was already addressed in Ocean's Response. *See* Ocean's Response at 5 ("This is incorrect. For example, as depicted below and in the PICs, the TWINSCAN tool and the YieldStar tool work as a single system to perform the claimed steps. (Appendix A1 at 48.) Hence, Ocean has sufficiently demonstrated that "the YieldStar is used together with the TWINSCAN"). Nothing in the claims requires, and STMicro identifies nothing requiring, that two tools working as a single system are insufficient to read on the claims of the '651 patent. Additionally, given that the asserted claims are method claims, there is no requirement that all steps be performed by a single tool, nor has STMicro cited any caselaw that limits infringement to a "single tool."

The Correspondence states that "it is illogical to mix and match disparate tools (and stages) to allege infringement." But what is "illogical" is actually STMicro's theory that only focuses on a single claim element (i.e., wafer stage) when the asserted claims cover multiple claim elements, some of which can occur in other tools. This is particularly true where the specification explicitly states that not all tools have a process chamber. *See, e.g.,* '651 patent, at 15-20. STMicro's impermissible attempt to limit infringement to a single tool is contrary to the intrinsic record.

STMicro goes on to re-allege that specific constrictions of certain phrases throughout the '651 patent somehow render Ocean's PICs insufficient. These contentions either have already been decided by the Court or are currently pending before the Court. Nevertheless, Ocean will re-address them in turn.

    a. **Process Chamber and Wafer Positioning and Processing After Stage Adjustment Based on Measured Across-Wafer Variations**

As the Court has already issued a ruling on the construction of this term, STMicro's argument with respect to "process chamber" and "wafer positioning and processing after stage adjustment based on measured across-wafer variations" is moot. Ocean reserves its right to appeal the Court's construction on this term.

    b. **Pneumatic cylinders**

In its claim construction order, the Court has given this term its plain and ordinary meaning, rejecting STMicro's proposed construction of "a cylindrical device that uses pressurized air or other gas to move a shaft of the device in a straight line." In the Order, the Court also noted with caution that no party can present to the jury that this term is limited to providing pneumatic force only—a position Defendants had taken consistently

during the claim construction briefing. In view of this Order, STMicro's contention that this term does not cover electromagnetic actuators (even assuming *arguendo* that Lorentz actuators are one such type) falls flat.

### c. Deposition/etching chambers/processes

To the extent that STMicro argues for a specific construction for the terms "deposition/etching chambers/processes," STMicro failed to raise this as a term requiring the Court's attention during claim construction. STMicro's claim construction arguments are therefore untimely and do not require a response.

Even so, STMicro has failed to address why the ASML document cited by Ocean (Correspondence at 2; s*ee* Ocean's Response at 3 ("ASML's own documentation . . . reflects that 'etch control,' for example, is an integrated part of the '[c]omputational lithography' to achieve '[s]canner control'")) is wrong. (*See also* PICs, Appendix A1 at 24-25.) Contrary to STMicro's contention, this ASML document intimately ties these two processes together.

The same is true for deposition, where "context data" from deposition (and etching), for example, is used for lithography "[c]orrections." (*Id.* at 24.) ASML also describes the use of TWINSCAN to deposit semiconductor materials onto the wafers. (*Id.* at 27). STMicro should first review all items of evidence provided during the exchange of PICs, particularly those documents cited in Ocean's Response, and then provide specific rebuttals rather than continuing with its broad, conclusory, and unsupported assertions.

Ocean's Response also addressed STMicro's alleged concern that "[t]here is no written description support" showing that the deposition or etching chamber need not be embedded or integrated with the same system or machine as the one that performs the method of claim 19, and provided extensive support. (*See* Ocean's Response at 3.)

### d. Ball and Socket Connection

To the extent that STMicro now argues for a specific construction for the term "ball and socket connection," STMicro failed to raise this as a term requiring the Court's attention during claim construction. STMicro's claim construction arguments are therefore untimely and do not require a response at this time.

Also, like the terms discussed above, STMicro ignores Ocean's cited evidence and fails to establish why the cited evidence is wrong. Specifically, STMicro has not even attempted to explain why it maintains the erroneous assertion that the identified movement is purportedly "horizontal" despite clear evidence showing movement in *x*, *y*, ***and*** *z* directions.

STMicro's disagreement boils down to an argument that it purportedly does not infringe because "a linear motor is not the alleged 'pneumatic cylinder.'" Because there

is no dispute that STMicro has notice as to how Ocean believes that STMicro infringes (or else STMicro would not be able to cobble together a non-infringement theory, albeit an unfounded one), nothing more is required from Ocean.

    e. **<u>Wafer positioning after stage adjustment</u>**

STMicro contends without citation that the Position Control article does not support the proposition that the stage is raised, lowered, or tilted without a wafer on the stage but otherwise fails to provide any explanation as to why Ocean's contention is wrong or why the Position Control article does not support Ocean's contention. A generic conclusion that it is so does not make it so. As there is no dispute that STMicro is on sufficient notice as to how Ocean believes that STMicro infringes, nothing more is required from Ocean.

    f. **<u>Wafer positioning and processing after stage adjustment based on measured across-wafer variations</u>**

To the extent that STMicro now argues for a specific construction for the term "wafer positioning and processing after stage adjustment based on measured across-wafer variations," STMicro failed to raise this as a term requiring the Court's attention during claim construction. STMicro's claim construction arguments are, therefore, untimely and do not require a response.

Nevertheless, and as already discussed in Ocean's Response, "claim 31 does not recite this order or the timing as to when the wafer must be placed on the stage; instead, claim 31 only specifies the order between 'performing said process operation" and "said plane of said wafer stage has been adjusted.' As such, contrary to STMicro's contention, the wafer can be positioned on the stage before or after the stage is adjusted." (Ocean's Response at 4-5.) STMicro is thus incorrect that claims 31-32 and 34-37 "dictate[] an order of operation." Further, as stated above, Ocean has also already addressed STMicro's concern that Ocean's PICs do not show that "the claimed steps are performed by any single TWINSCAN tool." (*See* Section I.a; *see also* Ocean's Response at 6 ("Ocean's PICs offer several examples of a process tool, including, without limitation, the TWINSCAN and YieldStar tools, as well as the etch/deposition/CMP tools. (Appendix A1 at 46-47.)").)

**II.**    **<u>'330 Patent</u>**

Ocean has sufficiently identified certain models of the YieldStar systems as being used to manufacture the accused products and STMicro's Correspondence does not challenge that those systems can be used in an infringing manner. Instead, STMicro now argues that the PICs are deficient because they do not offer sufficient evidence that the YieldStar systems are actually used in that infringing manner. (Correspondence at 3, *citing* 35 U.S.C. § 271(g).) The § 271(g) issues, however, have already been thoroughly briefed to the Court in two co-pending cases. *See Ocean Semiconductor LLC v. Renesas*

Devlin Law Firm
December 13, 2021
Page 5 of 11

*Electronics Corp. and Renesas Electronics America, Inc.,* 6:20-cv-01213, Dkt. 15 (W.D. Tex. April 26, 2021); *Ocean Semiconductor LLC v. Western Digital Technologies, Inc.,* 6:20-cv-01216, Dkt. 12 (W.D. Tex. Mar. 12, 2021).) Ocean incorporates here its arguments and evidence discussed there showing that the Infringing Instrumentalities are "made by" the Accused Tools as articulated in its oppositions to those Motions to Dismiss filed in those co-pending action as if fully set forth herein. *See Ocean Semiconductor LLC v. Renesas Electronics Corp. and Renesas Electronics America, Inc.,* 6:20-cv-01213, Dkt. 27 (W.D. Tex. May 26, 2021); *Ocean Semiconductor LLC v. Western Digital Technologies, Inc.,* 6:20-cv-01216, Dkt. 19 (W.D. Tex. Mar. 26, 2021).)

Just as importantly, STMicro's current complaint is ***not*** a concern with the sufficiency of notice provided by the PICs, but rather appears to be more a concern with the amount of evidence offered in support of the PICs. This, however, is not the appropriate time for that debate, particularly as discovery has just opened and much of the evidence is in STMicro's and/or a third party's control.

Further, Ocean's Response amply addressed STMicro's concern that "Ocean's Infringement Contentions fail to show that any fabrication facility uses any specific model of the YieldStar tool to make the accused devices." (Correspondence at 3; *see* Ocean's Response at 7-8 ("there is no factual basis to support the notion that these models perform differently with respect to the alleged functionalities.").) Ocean reiterates that STMicro "has cited no evidence indicating that any of the YieldStar 'models' function or perform in different ways in connection with the claimed methods." (Ocean's Response at 7.) STMicro's argument that these facts are supported by "snippets of information" fails to recognize that each fact is sufficiently supported by publicly available evidence, which Ocean intends to supplement throughout discovery. In the meantime, STMicro is again urged to review all of the evidence cited in Ocean's PICs, including those documents cited in Ocean's Response.

Similarly, STMicro's concern with regard to the claimed "grating structure" is not related to any purported lack of notice; instead, STMicro's dispute is that the cited evidence points to wafers used for "experiments." (Correspondence at 3.) Whether the cited evidence points to "experiments" (as STMicro contends) as opposed to the actual semiconductor manufacture, there is no dispute that STMicro is on notice as to how Oceans contends the grating structure is used to manufacture the accused products, in an "experimental" wafer or otherwise. To that end, STMicro's assertion contradicts ASML's own publications showing the use of these gratings by the YieldStar systems. (*See* PICs, Appendix A9, at 9 (*citing* ASML's own website at https://www.asml.com/en/news/stories/2020/the-future-of-metrology-is-powered-by-algorithms that discusses the extensive use of gratings in the YieldStar systems).) STMicro's assertion that "Ocean's contentions provide no evidence to support this assertion" blatantly ignores the abundant citations in both Ocean's Response and the PICs. (Ocean's Response at 3; *see also* PICs, Appendix A9 at 7, 9, and 42-43.)

### III.    '402 Patent

STMicro, once again, admits that its concern in connection with the '402 patent is one that relates to "Ocean's burden to prove infringement." This is not the proper forum to litigate whether STMicro actually infringes or whether Ocean has met its burden to demonstrate that infringement. Ocean's upcoming expert report on infringement will lay out all evidence demonstrating STMicro's act of infringement but there can be no dispute that STMicro has been given notice as to how Ocean contends that it infringes the '402 patent. STMicro might not agree with Ocean's infringement theories but STMicro's disagreement on the ultimate issue is not a proper basis for asserting that Ocean's PICs are deficient.

STMicro has not even attempted to address any of the evidence cited in Ocean's Response demonstrating the performance of certain claim limitations. Instead, it shifts its focus to an entirely new theory—that Ocean somehow "failed to specify what builds, or versions, of the identified software systems are accused." (Correspondence at 4.) But Ocean's PICs have already offered a plethora of citations demonstrating how the E3, Exensio, and LineWorks systems meet these limitations (i.e., all of which are used to "build" the accused products). (Ocean's Response at 8.) STMicro has, again, not explained why Ocean's cited evidence is inadequate, nor why such evidence does not put STMicro on notice as to Ocean's infringement theories.

STMicro is again mistaken that the voluminous evidence produced with the PICs proving infringement is a "hodge-podge of references." (Correspondence at 4.) Rather, these documents are a structured collection describing the full capabilities of the offending tools. Also, even if Ocean's evidence points to various papers in support of its infringement theories in the manner alleged in STMicro's Correspondence, STMicro has yet to point out which of the claim elements are not disclosed in these documents and why.

Finally, as noted above, Ocean's PICs have offered a plethora of citations demonstrating how the E3, Exensio, and LineWorks systems meet these limitations. (Ocean's Response at 8.) STMicro's statement that "[t]here is no attempt to show that any of the third-party software systems has been used in conjunction with any single ST Inc. accused product" is therefore incorrect. (Correspondence at 4.)

### IV.    '538 patent

STMicro's argument as to this patent is closely analogous to the one discussed above with respect to the '330 patent, and Ocean's response is the same. Ocean has sufficiently identified certain models of the E3, Exensio, and LineWorks systems as being used to manufacture the accused products and STMicro's Correspondence does not challenge that those systems can be used in an infringing manner. Instead, STMicro now argues that the PICs are deficient because they do not offer sufficient evidence that those systems are actually used in that infringing manner. (Correspondence at 4-5, *citing* 35

U.S.C. § 271(g).)  The § 271(g) issues, however, have already been thoroughly briefed to the Court.  Ocean therefore incorporates herein its arguments articulated in its opposition to STMicro's Motions to Dismiss.  *Ocean Semiconductor LLC v. STMicroelectronics, Inc.,* 6:20-cv-01215, Dkts. 19 and 35 (W.D. Tex.).

Just as importantly, STMicro's current complaint is once again ***not*** a concern with the sufficiency of notice provided by the PICs, but rather appears to be more a concern with the amount of evidence offered in support of the PICs.  This, however, is not the appropriate time for that debate, particularly as discovery has just opened and much of the evidence is in STMicro's and/or a third party's control.  Certainly, Ocean has presented "a colorable infringement theory in its contentions" as STMicro describes the legal threshold.  (STMicro's citation to *Technology Props. Ltd. LLC v. Samsung Electronics Co.*, 114 F. Supp. 3d 842, 851-852 (N.D. Cal. 2015) is inapposite as there the plaintiff offered "bare assertion[s] that a PHOSITA could locate the element in the accused instrumentality" and failed to perform any analysis of information that was reasonably available to it.)

STMicro complains that Ocean has not met its burden on the issue of infringement, which purportedly "includes conveying a fully supported infringement theory in its Infringement Contentions," and Ocean is therefore not entitled to discovery.  (Correspondence at 5.)  First, Ocean is unaware of any caselaw in this District (or any district for that matter) requiring a plaintiff to present even more evidence at the contentions stage than it already has when such additional evidence is not publicly available and is within the control of the defendant and/or its vendors.  If STMicro does not believe that Ocean is entitled to discovery because of STMicro's misguided assertion that Ocean has not carried such a "burden," STMicro is free to seek judicial relief.  If, on the other hand, STMicro intends to ignore its obligations to produce discovery and to properly respond to Ocean's discovery requests, Ocean will likely seek to recover attorneys' fees and costs in connection with its filing of any motion to compel STMicro to produce that discovery and for STMicro's refusal to abide by its discovery obligations.  Please confirm whether or not STMicro intends to withhold discovery in this litigation.  If so, please let us know of STMicro's availability for a meet and confer during the next week so that Ocean can seek judicial relief through the Court's discovery dispute process.

In all events, STMicro appears to have ignored Ocean's citations to the abundant documentary evidence demonstrating STMicro's infringement.  (Ocean's Response at 9.)  STMicro cannot, on the one hand, ignore this evidence while, on the other hand, asserting that Ocean somehow has not met its burden of proof.

Finally, STMicro states, again with no citations or support, that "a patent holder must show that those disclosures [PICs] describe the same version of the software and therefore relate to the operation of the same system."  (Correspondence at 5.)  STMicro cites no case (and Ocean is unaware of any case) requiring, such a showing of proof.  Ocean's PICs show that "third-party software can potentially perform certain functions." (Ocean's Response at 9.)  At this stage of litigation, this is more than sufficient.

Devlin Law Firm
December 13, 2021
Page 8 of 11

## V.    <u>'691 Patent</u>

STMicro's assertion that "Ocean fails to identify any system that was configured to use the identified capabilities in the manufacturing of the accused devices" is incorrect. As stated in Ocean's Response and PICs, the offending E3 system allows engineers to "analyze sensor data from manufacturing equipment, detect out-of-norm conditions and relate them to problem with tools." (*See, e.g.*, Appendix A10 at 3.) STMicro's concern that Ocean has not "present[ed] evidence that ST Inc. infringes each claim limitation" (Correspondence at 5) has already been addressed in Ocean's Response. (*See* Ocean's Response at 9-13.)

STMicro's citation to *ConnecTel, LLC v. Cisco Sys.*, 391 F. Supp.2d 526, 527-528 (E.D. Tex. 2005), only highlights that Ocean has met its burden. There, ConnecTel's PICs: (a) only provided four generic charts for the over 100 accused products; (b) the charts simply mimicked the claim language; (c) nowhere stated where any elements of the asserted claims could be found in the accused infringing products; and (d) included large numbers of cites to product manuals and third-party publications with no specific identification of where any elements of the asserted claims were found. Thus, the Court there found that "[b]ecause of these deficiencies, Cisco is unable to crystalize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction." Here, on the other hand, none of those deficiencies are present and STMicro clearly has sufficient notice to "crystallize is non-infringement and invalidity theories" and never claimed to have been hindered in claim construction.

STMicro also asserts that the offending E3 system does not require that metrology data is collected from a plurality of tools because the E3 system permits that "collected metrology data may be used in the analysis of a plurality of tools." (Correspondence at 5-6.) In essence, STMicro admits that the offending E3 system is capable of collecting metrology data from a plurality of tools, while at the same time arguing that this is insufficient to read on the claims of the '691 patent. That the offending E3 system is capable of performing the claimed methods, and that STMicro knows that its accused products are manufactured using the offending E3 system, is more than sufficient to provide STMicro with notice as to Ocean's infringement theories. If STMicro is in possession of evidence proving that its use of the offending E3 system does not involve collecting metrology data from a plurality of tools, STMicro has a duty to disclose such evidence to Ocean. F.R.Civ.P. Rule 26(a)(1)(A)(ii).

STMicro then complains that "Ocean cites no evidence indicating any modification of metrology data." First, there is no requirement in the claims of the '691 patent that the metrology data be "modified." Nor is there any factual support for the notion that filtering metrology data requires modification of such data. STMicro's concern that Ocean does not provide evidence showing how the offending tools "filter" is nonetheless wrong. For example, STMicro states that Ocean's contentions allegedly "do not demonstrate how ranking of sensor data, identification of root causes in fault detection, or 'supervised' and 'unsupervised' models involve 'filtering'" because the

figure cited by Ocean "never refers to 'filtering.'"  (Correspondence at 6.)  This ignores Ocean's explanation in its Response that "the metrology data can be filtered using the 'VM model' in order to provide 'wafer-to-wafer' control."  (Ocean's Response at 11.)  That the figure does not mention the specific word "filtering" is of no moment because the figure unequivocally demonstrates that the FD outputs are tuned in order to "provide models that predict metrology values for a process."  (*See* PICs, Appendix A10 at 10.)  STMicro's contention that Ocean "provides no evidence of how the VM model work" is incorrect.  In either instance, STMicro has notice as to how it infringes (e.g., in no less than four different ways that are identified in the PICs).

In that regard, it is worth noting that STMicro has yet to address the other three examples discussed in Ocean's Response and PICs—examples discussing how this limitation is met.  (*See* Ocean's Response at 10.)  Should STMicro later offer non-conclusory technical arguments on why these three examples do not show "filtering," Ocean reserves the right to address such arguments.

As to the Exensio system, STMicro's Correspondence now puts forth a new theory—that STMicro purportedly lacks notice as to how it infringes—that was never raised in its August Correspondence.  Specifically, STMicro now contends that there is no evidence as to how "semantic models," "machine learning," and "multiple algorithms" perform any processing.  (Correspondence at 6.)  But Ocean's PICs explicitly explain how these are performed.  (*See* PICs, Appendix A12 at 9 ("As an example, the Exensio platform uses semantic modeling to filter the metrology data (e.g., by cleaning, aligning, and interpreting the data) to address, for example, a particular process control activity (e.g., aligning events in fabrication with wafer data to answer process-related questions such as 'which wafers were processed with the new batch of resist'"); *see also id.* at 10 ("As another example, the Exensio platform uses "multiple data types," "machine learning" and "multiple algorithms" as well as "Spatial Outlier Ensemble," "Test Outlier Ensemble," "Process Exceptions," "SYL SBL STL SPL," "Equipment Variance," "Reliability Indicators" and "Signature Library" to filter the metrology data based on the collection purpose data:").)  Ocean's PICs also include diagrams explicitly showing how filtering is performed (e.g., "[T]he Exensio platform uses machine learning and multiple algorithms to filter the metrology data based on the identification data and the collection purpose data . . . Here are example images provided by the Exensio platform showing wafer maps of various wafers and their respective wafer lots, indicating that the metrology data is filtered based on the identification data (e.g., wafer # and lot #) and the collection purpose data (e.g., process control such as yield).").  (*See* PICs, Appendix A12, at 11-12, 19.)

As to the E3 system, STMicro argues for the first time that Ocean's infringement contentions also do not show the claimed "process control activity."  Just like the Exensio system, STMicro complains that Ocean's PICs do not "specify any purported 'process control activity' that changes the operation of a tool" on the basis that "determin[ing] whether to downgrade or scrap," "identif[ying] invisible defects," "optimiz[ing] system performance," and "allow[ing for] quick actions" are not purportedly linked to any

process control activity. (Correspondence at 6-7.) As STMicro has failed to offer any technical reason as to why these activities are not linked to process control activities such that STMicro lacks notice as to how it infringes, Ocean is unable to address STMicro's concern beyond the plethora of evidentiary citations in Ocean's PICs and Ocean's Response. Ocean reserves the right to address this issue once STMicro provides more than just a conclusion as to why it does not agree with Ocean's cited evidence.

Turning to the camLine's LineWorks system, STMicro faults Ocean for not provid[ing] evidence of the claimed 'filtering.'" (Correspondence at 6.) Ocean's PICs explicitly state how filtering is done (e.g., "For example, the camLine system filters the metrology data by 'link[ing] the metrology results to the substrates, the production process, and other results. . . . As another example, the camLine system performs trend analysis based on high-performance data analytics algorithms so that it necessarily filters the metrology data based on collection purpose data in order to obtain the trend analysis.'" (*See* PICs, Appendix A11, at 7.) As such, Ocean disagrees with STMicro's assertion that Ocean has not provided any evidence in support of its infringement contentions.

## VI. The '305 and '248 Patents

STMicro's Correspondence again simply repeats arguments made above as to other patents, such as those already before the Court in STMicro's Motion to Dismiss.

Further, STMicro is mistaken that the voluminous evidence produced with the PICs proving infringement is an "assortment of generic references." (Correspondence at 7.) Rather, these documents are a structured collection describing the full capabilities of the Accused Tools and how those tools perform the elements of the asserted claims. STMicro's identification of a single limitation that may be missing from a single reference is proof of nothing. A claim of patent infringement is not required to be proven by a single reference. The full collection of documents produced to STMicro sufficiently supports Ocean's claims and provides well more than a "colorable theory of infringement."

## VII. The '097 Patent

STMicro's argument as to this patent is closely analogous to the one discussed above with respect to the '538 and '330 patents, and Ocean's response is likewise analogous. Whether the claimed methods are/were actually deployed in STMicro's production lines to manufacture the accused products is ultimately a matter of fact discovery beyond the good faith preliminary presentation already given. Moreover, the § 271(g) issues have already been thoroughly briefed to the Court, and Ocean incorporates herein its arguments articulated in its opposition to STMicro's Motions to Dismiss. *Ocean Semiconductor LLC v. STMicroelectronics, Inc.*, 6:20-cv-01215, Dkts. 19 and 35 (W.D. Tex.).

   Further, STMicro is mistaken that the voluminous evidence produced with the PICs proving infringement is "a patchwork of unrelated, generic references." (Correspondence at 7.)  As with the other Asserted Patents, these documents are a structured collection describing the full capabilities of the Accused Tools and how those tools perform the elements of the asserted claims.  A claim of patent infringement is not required to be proven by a single reference.  The full collection of documents produced to STMicro sufficiently supports Ocean's claims and provides sufficient notice to STMicro as to Ocean's infringement theories to justify fact discovery.  For example, while STMicro mistakenly states that Ocean "has provided no evidence that ST Inc. performs the claimed isotropic etch step," evidence of this step actually is provided in the PICs. (*See, e.g.,* Appendix A16 at 15 (citing, as evidence regarding the isotropic etching step, Yoshio Nishi and Robert Doering, *Handbook of Semiconductor Manufacturing Technology*, at 1061 (2017) and S. Barnola et al., *Plasma etching & integration challenges using alternative patterning techniques for 11nm node & beyond*, 9054 Proc. SPIE (2014).)

   Thus, as before, STMicro's current complaint is **not** a concern with the sufficiency of the notice provided by the PICs, but rather appears to be more a concern with the amount of evidence offered.  Given the appropriate notice given, this is not the appropriate time for that debate, particularly as discovery has just opened and much of the evidence is in STMicro's and/or a third party's control.  Certainly, Ocean has presented "a colorable infringement theory in its contentions" as STMicro describes the legal threshold.

   Finally, for the same reasons discussed above with regard to the '691 patent infringement contentions, STMicro's citation to the *ConnecTel* case is inapposite.  None of the PIC deficiencies present in that case are present here and it cannot be reasonably disputed that STMicro has sufficient notice to "crystallize is non-infringement and invalidity theories" and also never claimed to have been hindered in claim construction.

*   *   *

   For at least these reasons, Ocean declines STMicro's invitation to dismiss Ocean's allegations relating to the various asserted patents.  Ocean, however, remains committed to evaluating any additional evidence from STMicro, promptly and in good faith, that addresses any of the foregoing.

   Ocean trusts that it has addressed all of STMicro's concerns.  Should it be necessary, Ocean is available to meet and confer with STMicro to discuss any of the foregoing issues.

                  Very truly yours,

                   */s/ Alex Chan*
                   Alex Chan